*Ohre Emmet Leyva*
NAME

*Bm4998*
PRISON IDENTIFICATION/BOOKING NO.

*3342 Lime Street*
ADDRESS OR PLACE OF CONFINEMENT

*Riverside CA 92501*

Note:     It is your responsibility to notify the Clerk of Court in writing of any
change of address. If represented by an attorney, provide his or her
name, address, telephone and facsimile numbers, and e-mail address.

FILED

2023 MAY 24   PM 12: 33

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

*Fee Due*  BY: *(AB)*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

*Ohre Emmet Leyva*

FULL NAME (Include name under which you were convicted )

Petitioner,

v.

*Riverside County Superior Court*

NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED
PERSON HAVING CUSTODY OF PETITIONER

Respondent.

CASE NUMBER:

**ED CV** 23 - 00937-*AB (SHK)*
CV

To be supplied by the Clerk of the United States District Court

☐ _____ **AMENDED**

**PETITION FOR WRIT OF HABEAS CORPUS
BY A PERSON IN STATE CUSTODY
28 U.S.C. § 2254**

PLACE/COUNTY OF CONVICTION *Riverside County*
PREVIOUSLY FILED, RELATED CASES IN THIS DISTRICT COURT
(List by case number )
CV   *n/a*
CV   *n/a*

## INSTRUCTIONS - PLEASE READ CAREFULLY

1.    To use this form, you must be a person who either is currently serving a sentence under a judgment against you in a California state court, or will be serving a sentence in the future under a judgment against you in a California state court. You are asking for relief from the conviction and/or the sentence. This form is your petition for relief.

2.    In this petition, you may challenge the judgment entered by only one California state court. If you want to challenge judgments entered by more than one California state court, you must file a separate petition for each court.

3.    Make sure the form is typed or neatly handwritten. You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

4.    Answer all the questions. You do not need to cite case law, but you do need to state the federal legal theory and operative facts in support of each ground. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit a legal brief or arguments, you may attach a separate memorandum.

5.    You must include in this petition all the grounds for relief from the conviction and/or sentence that you challenge. You must also state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

6.    You must pay a fee of $5.00. If the fee is paid, your petition will be filed. If you cannot afford the fee, you may ask to proceed in forma pauperis (as a poor person). To do that, you must fill out and sign the declaration of the last two pages of the form. Also, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account at the institution. If your prison account exceeds $25.00, you must pay the filing fee.

7.    When you have completed the form, send the original and two copies to the following address:

     Clerk of the United States District Court for the Central District of California
     United States Courthouse
     ATTN: Intake/Docket Section
     255 East Temple Street, Suite TS-134
     Los Angeles, California 90012

PLEASE COMPLETE THE FOLLOWING (*check appropriate number*):

This petition concerns:
1. ☑ a conviction and/or sentence. _"Habeaus Corpus for REVIEW"_
2. ☑ prison discipline. _Under the care of a Doctor, suffered mild stroke ADHA_
3. ☑ a parole problem. _Please assign Probable cause / evidentiary federal public defender_
4. ☑ other. _Please provide counsel for exhoneration, compensation for_
_suffering physical, mental, emotional injures by being malisciously_
_"STAY" until CA supreme court decision of habeaus corpus._ _prosecuted._

**PETITION**

1. Venue
   a. Place of detention _3342 Lime St, Riverside CA 92501 (on parole)_
   b. Place of conviction and sentence _Southwest - COIS M BYRD Detention Center and_
   _Superior court. 4 yr (doubled up) 5 yr enhancement_

2. Conviction on which the petition is based (*a separate petition must be filed for each conviction being attacked*).
   a. Nature of offenses involved (*include all counts*): _Criminal Threat to Cause GBI / Death_
   _2nd strike and Prior felony conviction of serious offense. Misdemeanor_
   _battery spouse / cohabitant, misdemeanor child abuse / neglect._
   b. Penal or other code section or sections: _PC 667 (a) (i) (o1) and PC 422 (o2)_
   _273, subd (e)(1) and 273a, subd. (b)_

   c. Case number: _SWF1900605_
   d. Date of conviction: _08/22/2020_
   e. Date of sentence: _10/22/2020_
   f. Length of sentence on each count: _2 yrs 2nd strike, 1 yr battery, 1 yr child abuse_
   _5 year enhancement (nickle prior)            (doubled up)_
   g. Plea (*check one*):
      ☑ Not guilty
      ☐ Guilty
      ☐ Nolo contendere
   h. Kind of trial (*check one*):
      ☑ Jury
      ☐ Judge only

3. Did you appeal to the California Court of Appeal from the judgment of conviction?   ☑ Yes  ☐ No _Mandate Probable cause_
   If so, give the following information for your appeal (*and attach a copy of the Court of Appeal decision if available*): _evidentiary counsel_
   a. Case number: _E075948 ("Stop Notice"- premature) E075983_
   b. Grounds raised (*list each*):
      (1) _E075948 - Document of Appeal submitted as evidence of "Stop Notice"_
      (2) _E075983 - Direct Appeal Attorney submits off transcripts only_
      _Used in Trial - assigned by APPELLATE DEFENDERS_

(3) 6th & 14th State | federal ammendment rights violated

(4) Appeal Attorney continues to stick with the Narrative

(5) provided by prosecution without submitting Discovery and

(6) evidentary probablecause used as exhibits in trial

c. Date of decision: ~~8/30~~ 1/3/2022

d. Result   Court affirmed convictions and judgement

4. If you did appeal, did you also file a Petition for Review with the California Supreme Court of the Court of Appeal decision? ☑Yes  ☐No

If so, give the following information *(and attach copies of the Petition for Review and the Supreme Court ruling if available)*:

a. Case number:   S272966

b. Grounds raised *(list each)*:

(1) No grounds raised

(2) Attorney Jeffrey S. Kross refused to submit

(3) tampered falsified police reports and Discovery

(4) used as exhibits in Bi-furcated trial including

(5) DVR BWC BodyCam footage to show a flawed

(6) investigation and malicious prosecution with intent.

c. Date of decision: 03/09/2022

d. Result   I was told my case sits EN BANC (on the bench) with a Remittitur...

5. If you did not appeal:

a. State your reasons   Appeal #E075948 indicates my appeal but was issued a "Stop Notice" although submitted in a timely manner to show how they intently went about maliciously prosecuting me but was dismissed as premature because I hadn't been sentenced yet...

b. Did you seek permission to file a late appeal? ☑Yes  ☐No

6. Have you previously filed any habeas petitions in any state court with respect to this judgment of conviction? ☑Yes  ☐No

If so, give the following information for each such petition *(use additional pages, if necessary, and attach copies of the petitions and the rulings on the petitions if available)*:

a. (1) Name of court: Court of Appeal - State of California Fourth District Division Two

(2) Case number:   E075983 - E075983 al.

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*:   9/2022

(4) Grounds raised (list each):

(a) Presented Tampered Falsified Police report and Discovery

(b) Presented tampered court documents used as exhibits

(c) In trial to intently maliciously prosecute me.

(d) Presented E075948 to show I wasn't present in proceedings

(e) leading up to Limine pre-trial stipulated Calcrims

(f) and evidence codes used to Bi-furcate and convict me

(5) Date of decision: 11/2022  of a 2011 Strike prior

(6) Result Denied with "reason cc: to Conviction along w/ 2nd Strike the Superior court of appeals

(7) Was an evidentiary hearing held?  ☐ Yes  ☒ No

b. (1) Name of court: California Supreme Court - Indigent Habeas Corpus

(2) Case number: S272966  (Sent back w/ HC001)

(3) Date filed (or if mailed, the date the petition was turned over to the prison authorities for mailing): 6/5/2022, 6/18/2022, 8/17/2022.

(4) Grounds raised (list each):

(a) Indigent Habeas Corpus explaining evidentiary

(b) evidence that was not submitted during Appeal

(c) and Review by Appeal Attorney Jeffreys Kross and

(d) asking for a review, counsel, exhonerate,

(e) compensate explaining malischous intent and injuries

(f) incurred as a result of being denied due process and

(5) Date of decision: 3/9/2022  effective counsel throughout

(6) Result En Banc with Remittitur  entire process while (documents to prove what I was told)  maintaining and submitting  proof of innocence.

(7) Was an evidentiary hearing held?  ☐ Yes  ☒ No

c. (1) Name of court: Southwest Justice Center / Superior Court of CA County of Riverside

(2) Case number: SWF1900605

(3) Date filed (or if mailed, the date the petition was turned over to the prison authorities for mailing): 5/2022

(4) Grounds raised (list each):

(a) Indigent habeous Corpus explaining me reaching

(b) out to the Department of Justice submitting same

(c) evidentiary probable cause proof of innocence and

(d) also mentioning appeal # E075948 that was

(e) issued a "Stop Notice" by your court where I appealed

(f) My bi-furcated Jury Trial conviction to exhonerate and dismiss case.

(5) Date of decision: 6/27/22

(6) Result: Refused to acknowledge themselves as Southwest Justice Center / Superior Court of California County of Riverside.

(7) Was an evidentiary hearing held?  ☐ Yes  ☒ No

7.  Did you file a petition for certiorari in the United States Supreme Court?  ☐ Yes  ☒ No

If yes, answer the following:

(1) Docket or case number (if you know): N/a

(2) Result: n/a

(3) Date of result (if you know): n/a

(4) Citation to the case (if you know): n/a

8.  For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than five grounds.  Summarize briefly the <u>facts</u> supporting each ground.  For example, if you are claiming ineffective assistance of counsel, you must state facts specifically setting forth what your attorney did or failed to do.

**CAUTION:**   *Exhaustion Requirement*:  In order to proceed in federal court, you must ordinarily first exhaust your state court remedies with respect to each ground on which you are requesting relief from the federal court.  This means that, prior to seeking relief from the federal court, you first must present <u>all</u> of your grounds to the California Supreme Court.

a.  Ground one: Asking Federal Court for a "STAY" until decision by California Supreme Court

(1) Supporting FACTS: Submitted evidence to prove innocence that I left home after telling Logan Thompson not to talk about my daughter look at the predicament he is in when Jennifer Jimenez report a falsified police report 911 call on 7/25/2019 and later arrested 12/24/2019 of propensatory false allegations.

(2) Did you raise this claim on direct appeal to the California Court of Appeal?  ☐ Yes  ☒ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?  ☐ Yes  ☒ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?  ☐ Yes  ☒ No

b.  Ground two: Evidence of Tampered Police Report, Discovery, Court Documents and testimony to show malicious intent and prosecution

(1) Supporting FACTS: In the following pages you will see all the altered, tampered, falsified evidence used as exhibits in trial to maliciously prosecute me.

You will also see all the agencies I reached out to, to advocate and litigate on my behalf in hopes of getting exhonerated and compensated for suffering physical, mental, emotional injuries as a result.

\# Indigent Habeus Corpus to CA Supreme Court, Appellate Superior, DOJ, FBI, BPH, etc...

(2) Did you raise this claim on direct appeal to the California Court of Appeal? ☐ Yes ☑ No  any

(3) Did you raise this claim in a Petition for Review to the California Supreme Court? ☑ Yes ☐ No  and

(4) Did you raise this claim in a habeas petition to the California Supreme Court? ☑ Yes ☐ No  all!

Sent at same time as this one. Both sent together state & federal.

c. Ground three: Used 2011' strike prior criminal threat to illegally search and seize falsified police reports to create and control Narrative found

(1) Supporting FACTS: Under the Romero Act, SB1393 and throughout preponderance of evidence found in Discovery this case should have been dismissed when they found my innocence to be true about leaving home only to return a month later and subsequently arrested on 12/24/2019 (5 months later again on a falsified police report)

(2) Did you raise this claim on direct appeal to the California Court of Appeal? ☐ Yes ☑ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court? ☑ Yes ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court? ☑ Yes ☐ No

d. Ground four: Officer Puenes initial 4-5 page stolen vehicle report wiped out and a supplemental report shows tampered falsified evidence

(1) Supporting FACTS: I've circled Officer Puenes grammer I believe to be of Filipino descent and english as a second language when Detective Frost and officer Rubio failed to completely erase all of his initial report while tampering with evidence to prove a stolen vehicle report ("V stated she unsure where Teyva would because he is homeless")

(2) Did you raise this claim on direct appeal to the California Court of Appeal? ☐ Yes ☑ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court? ☑ Yes ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court? ☑ Yes ☐ No

e. Ground five: Prosecution suppressed my truth in Discovery and used a statement and a 2011' strike prior to maliciously prosecute me.

(1) Supporting FACTS: I have circled in Discovery the statement "I'm going to kill you nigga" made by Jacob Loya to have officer Freddy Rubio lie under oath and tamper with initial police report on 7/30 (2021) with detective Frost by saying he was told this while wearing BodyCam footage at the scene of report stolen vehicle report

(2) Did you raise this claim on direct appeal to the California Court of Appeal? ☐ Yes ☑ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?  ☑Yes  ☐No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?  ☑Yes  ☐No

9.  If any of the grounds listed in paragraph 8 were not previously presented to the California Supreme Court, state briefly which grounds were not presented, and give your reasons: Body Cam Footage . DUP BWC footage Used as exhibit in trial would show flawed investigation and tampered evidence with intent to maliciously prosecute by denying and suppressing any and all evidence to prove my innocense.

10. Have you previously filed any habeas petitions in any federal court with respect to this judgment of conviction?

☐Yes  ☑No

If so, give the following information for each such petition *(use additional pages, if necessary, and attach copies of the petitions and the rulings on the petitions if available)*:

a.  (1) Name of court: N/A

    (2) Case number: N/A

    (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: N/A

    (4) Grounds raised *(list each)*:

        (a) N/A

        (b)

        (c)

        (d)

        (e)

        (f) N/A

    (5) Date of decision: N/A

    (6) Result N/A

    (7) Was an evidentiary hearing held?  ☐Yes ☑No

b.  (1) Name of court: N/A

    (2) Case number: N/A

    (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: N/A

    (4) Grounds raised *(list each)*:

        (a) N/A

        (b)

        (c)

        (d)

        (e)

        (f) N/A

    (5) Date of decision: N/A

(6) Result _____N/A_____

(7) Was an evidentiary hearing held?    ☐ Yes ☑ No

11. Do you have any petitions now pending (i.e., filed but not yet decided) in any state or federal court with respect to

this judgment of conviction?    ☑ Yes    ☐ No

If so, give the following information *(and attach a copy of the petition if available)*:

(1) Name of court: California Supreme Court

(2) Case number: S272966 (SWF1900605)

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a) No witnesses, no evidence, Bifurcated Trial (limine)

(b) without my permission, not present for pre-trial conferences

(c) denied due process and effective counsel by Deputy Public

(d) Defender Mark C Davis, Direct Appeal Attorney Jeffrey S Kross

(e) by refusing to report altered, tampered, falsified documents

(f) Police report, discovery and DVR Bwc footage (BODYCAM) to show

Flawed investigation and malicious prosecution

12. Are you presently represented by counsel?    ☐ Yes    ☑ No

If so, provide name, address and telephone number: * Please provide counsel for federal

Public defender, under duress, grieving, overwhelmed, physical

mental, emotional and spiritual injuries as a result of evil doing by

the Riverside County Superior Courts (Southwest division)

WHEREFORE, petitioner prays that the Court grant petitioner all relief to which he may be entitled in this proceeding.

_____

*Signature of Attorney (if any)*

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on ___5/23/23___                    _____

*Date*                                              *Signature of Petitioner*

Exhibit P.

Arne leyva 5/23/23

I am Indigent and Innocent and need counsel (fedaal Public Defender) to help me get exhonerated and compensated for Physical, mental emotional injuries, suffered a mildstroke. need civil lawsuit. I am under a Doctors Care and under Diress and need help with probable cause/evidentiary hearing. Please "STAY" in hopes California Supreme Court will overturn Decision. But until then I hope I filled everything out correctly and do not get denied my due Process Thank You kindly Arne Emmett leyva

Arne Emmett leyva   5/23/23

*Indigent... I am Innocent*

(3) _____
(4) _____ Dear Federal Court
(5) _____ I am asking for a "STAY"
(6) _____
c. Date of decision: _____ because I submitted this Federal
d. Result _____ Habeous Corpus at the same time

4. If you did appeal, did you also file a Petition for Review with the California Supreme Court of the Court of Appeal decision?  ☐ Yes  ☐ No

If so, give the following information *(and attach copies of the Petition for Review and the Supreme Court ruling if available)*:

a. Case number: _____ I submitted with the California
b. Grounds raised *(list each)*: _____ Supreme Court for REVIEW / Probable
(1) _____ Cause / evidentiary and counsel
(2) _____
(3) _____ while under DIRESS and under
(4) _____
(5) _____ a Doctors care with the American
(6) _____
c. Date of decision: _____ Disability and Rehabilitation Act. Please
d. Result _____

5. If you did not appeal:
a. State your reasons _____ Provide no counsel to exhonerate
_____ and compensate me for maliscious
_____ Prosecution for a civil lawsuit as well

b. Did you seek permission to file a late appeal?  ☐ Yes  ☐ No

6. Have you previously filed any habeas petitions in any state court with respect to this judgment of conviction?
☐ Yes  ☐ No

If so, give the following information for each such petition *(use additional pages, if necessary, and attach copies of the petitions and the rulings on the petitions if available)*:

a. (1) Name of court: _____ Thank You Kindly - Dhree Emmett
(2) Case number: _____ Luna
(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

5/23/2023

* I have a lot of other proof too!

EXHIBIT: I AM INNOCENT

RECEIVED
JUL 0 5 2022
CLERK SUPREME COURT

6/29/22

(1)

Dear California Supreme Court,

My name is Onre Emmet Jesua, BM4998, case #
1900605, Appeal # E075983 and Police Report ME192060119
and Discovery by Roger LeMasters, Master Investigator III of
the Riverside County Superior Court, "COIS M BYRD" (SWDC)
Southwest Detention Center, 30755 A-Auld Rd, Murrieta CA
92563.   Under Direct Appeal # E075983, Jeffrey S Kross,
Attorney at Law assigned by Appellate Defenders Inc. to
represent me Fourth District Court of Appeal, Division Two,
filed "EN BANC" without reviewing evidence-for probable
cause in his possession to file review of mandate)
prohibition under Bus & PC # 6068(d), Cal Rules of Prof
Conduct 5-200 (b), PC # 132, 133, 134, Boulas v Superior Court
(1986) 188 CA3d 422, also PC # 329, Evidence Code # 952,
Calif Law forms manual 4.2 (2d ed Cal Ceb)

Riverside County Sherriffs Department Chad Bianco
along with Riverside County Superior Court (criminal) 4100
Main St, Riverside CA 92501 under District Attorney Michael
Hestrin and Managing Deputy District Attorney Quinn R Baranski
are contracting with Department of Justice, office of Attorney
General 600 West Broadway, ste 1800, San Diego, CA 92101
to Tributarily Ostracize me and maliciously prosecute me
at "COIS M BYRD" Southwest Detention Center and Superior
Court located at 30755-A Auld Rd, Murrieta CA 92563

Cont'd

Une Equal Portion
6/29/22

using Judges Stephen Gallon, F Paul Dickerson, Kelly L Hansen, John Vineyard and Retired Judge ②
Bonnie Dumanis, along with District Attorney Kimberly Dittrich, Deputy Public Defender Mark C. Davis to violate PC 1538.5 (f)(1)(2)(3), PC 1538.5 (i), Magallan v Superior Court (2011) 192 CA4th, 444; People v Drews (1989) 208 CA3d 1317 1324 Pen C §1585.5 (I) People v Hansel (1992) 1 C 4th 1211 People v Trujillo (1990) 217 CA3d 1219, 1224 Anderson v Superior Court (1988) 206 CA3d 533, 544 People v Ramsey (1988) 203 CA3d 671

I suffered Physical, Emotional and Mental Injuries as well as my livelihood when moving to Menifee CA 92584, master communities built, bought and paid for as a Property Manager under Jennifer Jimenez, the Mother of my Children who has a propensity to file false police reports throughout my entire 3.5 years of being with her and suffering criminal convictions that do not apply and should never be used against me to convict me of crimes I didn't commit and In this case Innocent of by the Preponderance of Evidence in Discovery versus a flawed police report that was all suppressed.

RECEIVED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

**CR-120**

| | | |
|---|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO.: | FOR COURT USE ONLY |
| NAME: Onre Leyva | SEP 16 2020 | |

FIRM NAME:
STREET ADDRESS: 30755-B Auld Road
CITY: Murrieta  STATE: CA  ZIP CODE: 92563
TELEPHONE NO.: (951) 304 5600  FAX NO.:
E-MAIL ADDRESS:
ATTORNEY FOR (name):

SUPERIOR COURT OF CALIFORNIA, COUNTY OF

PEOPLE OF THE STATE OF CALIFORNIA SUPERIOR COURT
VS.  COUNTY OF
Defendant:  RIVERSIDE
Date of birth: 03-01-1972
Cal. Dept. of Corrections and Rehabilitation No. (if any):

| | |
|---|---|
| **NOTICE OF APPEAL—FELONY (DEFENDANT)**<br>(Pen. Code, §§ 1237, 1237.5, 1538.5(m); Cal. Rules of Court, rule 8.304) | CASE NUMBER:<br>SWF1900605 |

**NOTICE**

- **You must file this form in the SUPERIOR COURT WITHIN 60 DAYS after the court rendered the judgment or made the order you are appealing.**
- **IMPORTANT:** If your appeal challenges the validity of a guilty plea, a no-contest plea, or an admission of a probation violation, you must also complete the Request for Certificate of Probable Cause on page 2 of this form. (Pen. Code, § 1237.5.)

1. Defendant appeals from a judgment rendered or an order made by the superior court.
   NAME of defendant: Onre Leyva
   DATE of the order or judgment: 7-16-2020

2. **Complete either item a. or item b. Do not complete both.**

   a. *If this appeal is after entry of a plea of guilty or no contest or an admission of a probation violation, check all that apply:*

   (1) ☐ This appeal is based on the sentence or other matters occurring after the plea that do not affect the validity of the plea. (Cal. Rules of Court, rule 8.304(b).)

   (2) ☐ This appeal is based on the denial of a motion to suppress evidence under Penal Code section 1538.5.

   (3) ☐ This appeal challenges the validity of the plea or admission. *(You must complete the Request for Certificate of Probable Cause on page 2 of this form and submit it to the court for its signature.)*

   (4) ☐ Other basis for this appeal *(you must complete the Request for Certificate of Probable Cause on page 2 of this form and submit it to the court for its signature) (specify):*

   b. *For all other appeals, check one:*

   (1) ☐ This appeal is after a jury or court trial. (Pen. Code, § 1237(a).)

   (2) ☐ This appeal is after a contested violation of probation. (Pen. Code, § 1237(b).) UNDER PENAL CODE 851.5

   (3) ☑ Other *(specify):* REFILE "1109" CODED TRIAL — I WAS NOT PRESENT IN COURT

3. ☑ Defendant requests that the court appoint an attorney for this appeal. Defendant ☑ was ☐ was not *← PLEASE SEE PAGE 2 ←* represented by an appointed attorney in the superior court.

4. Defendant's mailing address is: ☐ same as in attorney box above.
   ☑ as follows: Onre Leyva #201950231
   30755-B Auld Road
   Murrieta, CA 92563

Date: 09-11-2020

Onre Leyva
(TYPE OR PRINT NAME)  ▶  (SIGNATURE OF DEFENDANT OR ATTORNEY)

Page 1 of 2

**NOTICE OF APPEAL—FELONY (DEFENDANT)**
**(Criminal)**

Penal Code, §§ 1237, 1538.5(m);
Cal. Rules of Court, rule 8.304
www.courts.ca.gov

6) During Coded Trial 1) P.D. makes NO OPENING STATEMENT

2) Depicts Me as saying criminal threats

A) PUBLIC DEFENDER 3) Deprives/Suppresses all my evidence
   MARK C DAVIS        including witnesses on my behalf

4) Fails to cross examine witness (Loga-
   Thompson) with my simple truth to
   resolve this case and ensure no
   criminal threats were made. (Instead
   uses witnesses against me)

B) DISTRICT ATTORNEY 1) USES "1109 CODED TRIAL" AND 2011
   KIMBERLY               CRIMINAL THREAT CHARGE AND
   DIETRICH               POLICE OFFICER, MY WITNESSES AND
                          HER EXPERTS AND STIPULATIONS
                          TO SHOW A PROPENSITY TO FIND
   #SCHEDULED FOR         ME GUILTY OF CHARGES, (THE VERY
   SENTENCING OCTOBER     THINGS SHES ACCUSING ME OF, SHE'S
        16th.             USING AGAINST ME = ILLEGAL/
                          INNAPPROPRIATE

C) JUDGE              1) DENIES MARSDEN HEARING - ALLOWS
   BONNIE             2) CODED TRIAL - DECLARED MISTRIAL, ???
   DUMANIS            3) STIPULATES JURY MEMBERS "ACQUIT
                      ??? "GUILTY/NOT GUILTY - EACH CHARGE"

rm 202 Southwest Detention Center   During Deliberations
Superior Court                      Stipulations based on
30755 -D Auld Road                  series of criteria
Murrieta CA 92563                   bewildering, monitored
                                    list, that the jurors,
HELP ME PLEASE &                    save themselves, can't
"UNCONSTITUTIONAL"                  understand!?

RIVERSIDE COUNTY LAW ENFORCEMENT AGENCIES CONFIDENTIALITY ADVISEMENT

## RIVERSIDE COUNTY SHERIFF'S DEPARTMENT

| FILE NUMBER | DATE PREPARED | PAGE NUMBER 1 OF 1 |
|---|---|---|
| ME19 206 0119 | 7-25-19 | |

Pursuant to CA Penal Code Section 293(a) & (e) and/or CA Gov Code §6254 and/or CA Constitution, Article I, Section 28(b)(4), you are informed that your name and address will be a matter of public record unless you request that it not by the election option below.

**Penal Section 293:** An employee of a law enforcement agency who personally receives a report from any person, alleging that the person making the report has been the victim of a sex offense, or was forced to commit an act of prostitution because he or she is a victim of human trafficking, as defined in Section 236.1 or immediate family to victim of human trafficking (HT) shall inform the person that his or her name and address shall become a matter of public record unless they request that it not become a matter of public record, pursuant to §6254 of the Gov Code.

**Gov. Code Section 6254(f)(2)&(3):** The name of a victim of any crime defined by Section 220, 236.1, 261, 261.5, 262, 264, 264.1, 265, 266, 266a, 266b, 266c, 266e, 266f, 266j, 267, 269, 273a, 273d, 273.5, 285, 286, 288, 288a, 288.2, 288.3, 288.5, 288.7, 289, 422.6, 422.7, 422.75, 646.9, 647.6. of the Penal Code may be withheld at the victim's request, or at the request of the victim's parent or guardian if the victim is a minor. When a person is the victim of more than one crime, information disclosing that the person is a victim of a crime defined in any of the sections of the Penal Code set forth in this subdivision may be deleted at the request of the victim, or the victim's parent or guardian if the victim is a minor, in making the report of the crime, or of any crime or incident accompanying the crime, available to the public in compliance with the requirements of this paragraph.

**CA Constitution, Art. 1, Section 28(b)(4):** includes victim's right to prevent the disclosure of confidential information or records.

A *separate form* shall be completed for each victim.

I have read and understand the above paragraphs. I have been informed of my right to have my name and address not become a matter of public record.

Victim/HT Victim's Immediate Family Signature _____ JENNIFER JIMENEZ _____ Date: _7-25-19_
(if the victim is under age 18, a parent or guardian's signature should be obtained.)

Parent/Guardian Signature _____ Date: _____

☐ Law enforcement advised parent or guardian telephonically

Indicate your decision by marking ONE of the following choices listed below:

☒ I **DO NOT** want my name and address to become a matter of public record.

☐ I have no objection to my name and address becoming a matter of public record in this investigation and possible litigation. I understand that by selecting this box, my name and address will become a matter of public record.

Witnessed by [Law Enforcement Employee informing victim/immediate family member (FM)]:

Employee Name: _PUENE_ ID ___4121___ Employee Signature _____

SECTION TO BE COMPLETED BY A LAW ENFORCEMENT EMPLOYEE. In the report(s), this Victim/FM is referred to as V# _01_ or FM# ___

| Last JIMENEZ | First JENNIFER | Middle |
|---|---|---|
| Sex F | Race H | D.O.B. 04-7J   Age 46   Height 5'08   Weight 200 | CDL # A5977796 State CA |
| Home Address 24772 PARADISE MEADOWS RD MENIFEE 92831 | | Home Phone 951-639-7499 |
| Work Address N/A | | Work Phone |
| School (Name & Address) | | |

LE Notices: If the victim(s) or FM of human trafficking victim(s) desire confidentiality, DO NOT place any identifying information on the face sheet or within the report or any supplemental reports regarding the same victim(s)/FM. In the narrative portion of the report, refer to "V1", "V2", "FM1", "FM2" etc.

Records: This form may only be reproduced for the case investigator or the District Attorney, any other reproduction requires a supervisor's approval.

✿ Riverside County Sheriff-Form D 443 (Revised 02/05/2019)

— Jennifer Jimenez is only one being reported.
— Initial report by Puene 4121 (Possibly of Filipino Descent) is a 45 page stolen vehicle report with BodyCam DVR BWC attached.

*No page #*

RIVERSIDE COUNTY LAW ENFORCEMENT AGENCIES CONFIDENTIALITY ADVISEMENT

## RIVERSIDE COUNTY SHERIFF'S DEPARTMENT

| FILE NUMBER | DATE PREPARED | PAGE NUMBER ___ OF ___ |
|---|---|---|
| ME1970601/9 | 7/25/19 | |

Pursuant to CA Penal Code Section 293(a) & (e) and or CA Gov Code §6254 and/or CA Constitution, Article 1, Section 28(b)(4), you are informed that your name and address will be a matter of public record unless you request that it not by the election option below.

**Penal Section 293:** An employee of a law enforcement agency who personally receives a report from any person alleging that the person making the report has been the victim of a sex offense, or was forced to commit an act of prostitution because he or she is a victim of human trafficking, as defined in Section 236.1 or immediate family to victim of human trafficking (HT) shall inform the person that his or her name and address shall become a matter of public record unless they request that it not become a matter of public record, pursuant to §6254 of the Gov Code.

**Gov. Code Section 6254(f)(2)&(3):** The name of a victim of any crime defined by Section 220, 236.1, 261, 261.5, 262, 264, 264.1, 265, 266, 266a, 266b, 266c, 266e, 266f, 266j, 267, 269, 273a, 273d, 273.5, 285, 286, 288, 288a, 288.2, 288.3, 288.5, 288.7, 289, 422.6, 422.7, 422.75, 646.9, 647.6. of the Penal Code may be withheld at the victim's request, or at the request of the victim's parent or guardian if the victim is a minor. When a person is the victim of more than one crime, information disclosing that the person is a victim of a crime defined in any of the sections of the Penal Code set forth in this subdivision may be deleted at the request of the victim, or the victim's parent or guardian if the victim is a minor, in making the report of the crime, or of any crime or incident accompanying the crime, available to the public in compliance with the requirements of this paragraph.

**CA Constitution, Art. 1, Section 28(b)(4):** includes victim's right to prevent the disclosure of confidential information or records.

A *separate form* shall be completed for each victim.

I have read and understand the above paragraphs. I have been informed of my right to have my name and address not become a matter of public record.

Victim/HT Victim's Immediate Family Signature ___JACOB LEYVA___ Date: _07/25/19_
(if the victim is under age 18, a parent or guardian's signature should be obtained.)

Parent/Guardian Signature _____ Date: _____

☐ Law enforcement advised parent or guardian telephonically

**Indicate your decision by marking ONE of the following choices listed below:**

☑ **I DO NOT** want my name and address to become a matter of public record.

☐ I have no objection to my name and address becoming a matter of public record in this investigation and possible litigation. I understand that by selecting this box, my name and address will become a matter of public record.

Witnessed by [Law Enforcement Employee informing victim/immediate family member (FM)]:

Employee Name: _RUBIO_ ID _553B_ Employee Signature _____

SECTION TO BE COMPLETED BY A LAW ENFORCEMENT EMPLOYEE. In the report(s), this Victim/FM is referred to as V# ___ or FM# ___

| Last | LEYVA | First | JACOB | | Middle | | |
|---|---|---|---|---|---|---|---|
| Sex M | Race W | D.O.B 08/22/95 | Age | Height | Weight | CDL # | State CA |
| Home Address | 24772 PARADISE MEADOWS RD MENIFEE 92584 | | | | | Home Phone | 562-445-1467 |
| Work Address | | | | | | Work Phone | |
| School (Name & Address) | | | | | | | |

LE Notices: If the victim(s) or FM of human trafficking victim(s) desire confidentiality, DO NOT place any identifying information on the face sheet or within the report or any supplemental reports regarding the same victim(s)/FM. In the narrative portion of the report, refer to "V1", "V2", "FM1", "FM2" etc.

Records: This form may only be reproduced for the case investigation or the District Attorney, any other reproduction requires a supervisor's approval.

○ Riverside County Sheriff Form D 443 (Revised 02/09/2019)

*Testimony by Retired Judge Bonnie Duncans affirms this*
*Officer Rubio tampers by falsifying testimony in preliminary.*
*On 7/30 (2021) Detective Frost and Officer Rubio write a*
*supplemental report 2 days before going to trial.*

②

# INCIDENT REPORT

| DATE PREPARED: | 072619 | RIVERSIDE COUNTY SHERIFF CA0330000 | ☒ INITIAL | ☐ SUPPLEMENTAL |
|---|---|---|---|---|

| FILE NUMBER | 2 DATE TIME REPORTED | 3 DATE TIME ASSIGNED | 4 DATE/TIME INV START | 5 DATE TIME INV TERM | 6 ADULT ARR | 7 JUV ARR |
|---|---|---|---|---|---|---|
| ME192060119 | 072519  2150 | 072519  2230 | 072519  2241 | 072619  0049 | 0 | 0 |

| 8 OFFENSES - CODE SECTION | CRIME | COUNTS | 9 EDP CODE |
|---|---|---|---|
| 273.5(a)PC | Domestic Battery | 01 | 13K4-F |

| 10 OFFENSES - CODE SECTION (Add or Change to) | CRIME | COUNTS | 11 EDP CODE |
|---|---|---|---|
| 207(a)PC | Kidnapping | 03 | 23K1-F |

| 12 OFFENSES - CODE SECTION (Add or Change to) | CRIME | COUNTS | 13 EDP CODE |
|---|---|---|---|
| 215(a)PC | Carjacking | 01 | 12G5-F |

| 14 LOCATION OF OCCURRENCE | 15 REP DIST | 16 OCCURRED ON | DATE/TIME | 17 OR BETWEEN | DATE/TIME |
|---|---|---|---|---|---|
| 24772 Paradise Meadows Dr Menifee, Ca 92584 | 506D | 072519 | 2150 | | |

| 18 BUSINESS NAME | 19 BUSINESS PHONE | 20 CASE STATUS/ CLEARANCE |
|---|---|---|
| | | Closed/Exceptional |

| 21 WAS THIS INCIDENT RELATED TO MARIJUANA?   ☐ YES   ☒ NO | (If yes, briefly include in narrative or additional details how it was related) |
|---|---|

## VICTIM – REPORTING PARTY – WITNESS – OTHERS:     ☒ SEE ADDITIONAL PERSONS REPORT

| 21 INVL | 22 NAME (Last, First, Middle) | 23 SEX | 25 RACE | 26 DOB | 27 AGE | 28 HT | 29 WT | 30 HAIR | 31 EYES | 32 SKIN |
|---|---|---|---|---|---|---|---|---|---|---|
| V1 | Confidential | | | | | | | | | |

| 33 RESIDENCE ADDRESS | CITY | ZIP | 34 EMAIL ADDRESS | 35 RES PHONE |
|---|---|---|---|---|
| | | | | |

| 36 BUSINESS ADDRESS | CITY | ZIP | 37 EMAIL ADDRESS | 38 BUS PHONE |
|---|---|---|---|---|
| | | | | |

| 39 INVL | 40 NAME (Last, First, Middle) | 41 SEX | 42 RACE | 43 DOB | 44 AGE | 45 HT | 46 WT | 47 HAIR | 48 EYES | 49 SKIN |
|---|---|---|---|---|---|---|---|---|---|---|
| V2 | Confidential | | | | | | | | | |

| 51 RESIDENCE ADDRESS | CITY | ZIP | 51 EMAIL ADDRESS | 52 RES PHONE |
|---|---|---|---|---|
| | | | | |

| 53 BUSINESS ADDRESS | CITY | ZIP | 54 EMAIL ADDRESS | 55 BUS PHONE |
|---|---|---|---|---|
| | | | | |

## SUSPECT:   ☒ ADULT   ☐ JUVENILE     ☐ PAROLE ☐ PROBATION     ☐ SEE ADDITIONAL PERSONS REPORT   ☐ ARRESTED

| 56 SUSP | 57 NAME (Last, First, Middle) | 58 SEX | 59 RACE | 60 DOB | 61 AGE | 62 HT | 63 WT | 64 HAIR | 65 EYES | 66 SKIN |
|---|---|---|---|---|---|---|---|---|---|---|
| S1 | Leyva, Onre | M | H | 050172 | 47 | 510 | 220 | BLK | BRO | |

| 67 DRIVER'S LICENSE NUMBER ID NUMBER | IN POSSESSION YES ☐ NO ☐ | 68 STATE | 69 SOCIAL SECURITY NUMBER | 70 MNI NUMBER | 71 CII NUMBER |
|---|---|---|---|---|---|
| A5724017 | | | | | |

| 72 RESIDENCE ADDRESS | CITY | ZIP | 73 EMAIL ADDRESS | 74 RES PHONE |
|---|---|---|---|---|
| 9563 Dinsdale St | Downey | 90240 | | 562-390-1790 |

| 75 BUSINESS ADDRESS | CITY | ZIP | 76 EMAIL ADDRESS | 77 BUS PHONE |
|---|---|---|---|---|
| | | | | |

| 78 JUVENILE DISPOSITION   ☐ OTHER JURIS   ☐ JUV CRT PROB | ☐ WITHIN DEPT   ☐ DETAINED   ☒ NOT DETAINED |
|---|---|

### GANG DATA

| GANG NAME(S) | 80 TATTOOS/SCARS/MARKS/CLOTHING DESCRIPTION |
|---|---|
| ☐ Member ☐ Associate ☐ Self-Admit ☐ Prior Knowledge | Striped blue/red tank top |
| TATTOOS - SCARS / MARKS | Gray pants |
| ☐ Face ☐ Neck ☐ R. Arm ☐ L. Arm ☐ Hands ☐ Torso ☐ Back ☐ Legs | |

## VEHICLE:     ☒ REFER TO CHP 180 FORM FOR STOLEN, RECOVERED, TOWED OR IMPOUNDED

| 81 INVL | 82 LICENSE | 83 STATE | 84 YEAR | 85 MAKE | 86 MODEL | 87 BODY STYLE | 88 SAL/R/O | AUTO VALUE |
|---|---|---|---|---|---|---|---|---|
| | 51642R2 | CA | 1998 | GMC | Sierra | PK | Code | $ 3500 |

| 89 COLOR/COLOR | 90 VIN # | 91 OTHER IDENTIFIERS | 92 DISPOSITION OF VEHICLE |
|---|---|---|---|
| White | 1GTCS19X1W8510879 | | Stolen |

| 93 REGISTERED OWNER | 94 ADDRESS | CITY | STATE | ZIP | 95 PHONE |
|---|---|---|---|---|---|
| Jennifer Jimenez | 24772 Paradise Meadows Dr | Menifee | CA | 92584 | 951-639-7499 |

| ☒ PROPERTY REPORT ATTACHED FOR STOLEN, RECOVERED OR DAMAGED PROPERTY | 101 DAMAGED PROPERTY VALUE $ |
|---|---|

| REPORTING OFFICER | OFFICER ID | REVIEWED BY DATE | ENTERED BY DATE | ENTERED BY DATE |
|---|---|---|---|---|
| Rubio, F | 5538 | RE-LRS 2019 7/26/19 | | |

| COPIES TO | APR SENT | APR CANCELLED | DOJ-NCIC ENTERED | DOJ-NCIC CANCELLED |
|---|---|---|---|---|
| DA  Inv Frost 7300 | | | 072519/N5699 | |

*[handwritten annotations:]* Make it look like 7/30/19 but Frost got involved 7/30/2020 2 days before going to trial and still haven't received police report or discovery.

Riverside County Sheriff-Incident Report Form A 435 (Rev sec 01-23-2019)

③

*Page that I missed it all*
*report written by officer Prince*

**Incident Report – MO Elements**

File Number   **ME192060119**

RIVERSIDE COUNTY SHERIFF CA0330000

Page: **3**

## IMPORTANT:
Please be sure to check all MO Elements that apply:

☐ Arson
☒ Domestic Violence*
☐ Assault
☐ Robbery
☐ Burglary
☐ Theft

**\*State Required for DV Incidents**
☐ Strangulation
☐ Suffocation

## PROPERTY AFFECTED
☐ AIR   Air Conditioners
☐ APP   Household Appliances
☐ ART   Art Collections, Paintings, Antiques
☐ AUT   Auto Parts & Tires
☐ BLM   Building Materials
☐ BOT   Boat, Boat Motors and Trailers
☐ BYC   Bicycles/Bicycle Parts
☐ CAM   Cameras, Movie Projector
☐ CLO   Clothing, Wigs
☒ COI   Coin Collection
☐ COM   Computer Equipment
☐ CPT   Carpet
☐ CRC   Credit Cards
☐ CUR   Currency
☐ FIR   Firearms
☐ FOD   Food or Food Products
☐ FOS   Food Stamps
☐ FRN   Household Furniture
☐ FUR   Furs
☐ IND   Industrial Equipment (Tractors)
☐ JEW   Jewelry/Precious Metals
☐ LIQ   Liquor and Beer
☐ LIV   Livestock
☐ LWN   Lawn Mowers/Edger
☐ MC   Motorcycles, Minibike
☐ MET   Scrap Metal
☐ MIS   Miscellaneous
☐ MUS   Guitars, Other Instruments
☐ NRC   Narcotics Drugs
☐ OFE   Office Equipment
☐ PHO   Phones
☐ PUR   Purses and Wallets
☐ RAD   Radio, Stereo Equipment
☐ SLV   Silverware
☐ SPD   Sporting Goods
☐ TOB   Tobacco Products
☐ TOL   Tools
☐ TOY   Toys
☐ TVS   Televisions
☐ VCR   Video Cassette Recorder
☐ VEH   Vehicles (Autos/Trucks)
☐ VID   Video Equip. Games

## PHYSICAL EVIDENCE
☐ BL   Blood
☐ CL   Clothing
☐ DC   Documents
☐ FP   Fingerprints
☐ GL   Glass Fragments
☐ HA   Hair
☐ ID   Insulation/Dust
☐ MS   Mud/Soil
☐ OP   Other Prints
☒ PH   Photos
☐ PJ   Projectile (Bullet/Casing)
☐ PS   Paint Samples
☐ SM   Semen
☐ TL   Tool Marks
☐ TT   Tire Tracks
☐ VH   Vehicle
☐ WP   Weapon

## METHOD OF ENTRY
☐ A   Unlocked
☐ B   Pried
☐ C   Broken Glass
☐ D   Channel Locks
☐ E   Slim Jim
☐ F   Body Force
☐ G   Cut Padlock
☐ H   Removed
☐ I   Explosive
☐ J   Vehicle
☐ K   Force
☐ L   No Force
☐ M   Attempt Only
☐ N   Bolt Cutters
☐ O   Brick/Rock/Cement
☐ P   Common Ceiling
☐ Q   Cut Glass
☐ R   Cut Hole
☐ S   Cut Screen
☐ T   Kick Door
☐ U   Lock Punch
☐ V   Saw Drill
☐ W   Hid In Building
☐ X   Lock Box
☐ Y   Pass Key
☐ Z   Doggie Door

## MEANS OF ATTACK
☐ F   Firearm
☐ K   Knife/Other Cutting Inst
☐ O   Other Dangerous Weapon Or 211 by fear
☐ H   Hands/Feet = Felony
Aggravated Assaults require broken bones, internal injuries, stitches, great bodily injury or hospitalization. On 211s great bodily injury is not required

☒ S   Simple Assault / Battery
e.g. minor scrapes, cuts bruises, injuries needing only minor 1st aid or no injuries.

Do not use Simple Assault for 211s Select another choice under Means of Attack

## EXTENT OF INJURY
☐ A   Severe Body Trauma/bruising
☐ B   Burns
☐ C   Complaint of Pain
☐ D   Death
☐ G   Gunshot Wound
☐ H   Broken Bones
☐ K   Knife Wounds/Lacerations
☐ N   No Visible Injury
☐ S   Strangulation/Choking

## POINT OF ENTRY
☐ D   Door
☐ DF   Single Swing
☐ DG   Double Swing
☐ DH   Sliding Door
☐ DI   Overhead Garage
☐ C   Other
☐ OK   Floor
☐ OL   Roof
☐ OM   Wall
☐ ON   Already On Premise
☐ OO   Unknown
☐ OP   Basement
☐ OQ   Ground Level
☐ OR   Upper Level
☐ W   Window
☐ WA   Non-Moveable
☐ WB   Sliding Window
☐ WC   Crank
☐ WD   Louvered/Screen

## ENTRY LOCATION
☐ F   Front
☐ O   Other
☐ R   Rear
☐ S   Side

## HOW WEAPON USED
☐ BRAND   Brandished
☐ COATP   Coat/Shirt Pocket
☐ COVER   Covered
☐ FEET   Kicked Feet
☐ HANDS   Both Hands
☐ HIPHO   Hip Holster
☐ LEFTH   Left Hand
☐ LEGHO   Leg Holster
☐ PANPK   Hand In Pocket
☐ PISWP   Pistol Whipped
☐ PROPK   Front Pocket
☐ PSACK   Sack/Bag
☐ PURSE   Purse
☐ RERPK   Rear Pocket
☐ RIGHH   Right Hand
☐ SHLHO   Shoulder Holster
☐ SHOTS   Shots Fired
☐ WAIST   Waistband
☐ OTHER   Other

## THEFT TYPE
☐ AA   Auto Accessories
☐ BI   Bicycle
☐ CM   Coin Operated Machine
☐ FA   From Auto
☐ FB   From Building
☐ OT   Other
☐ PP   Pick Pocket
☐ PS   Purse Snatch
☐ SL   Shoplift

## TYPE OF PREMISE
☐ 01   Duplex/Fourplex
☐ 02   Apartment Office
☐ 03   Apartment/Condo
☐ 04   Art, Antique Store
☐ 05   Assembly Plant
☐ 06   Auto Parts Sales
☐ 07   Auto Repair Co.
☐ 08   Bar/Lounge/Tavern
☐ 09   Barber Beauty Shop
☐ 10   Bike Trl/Horse Trl
☐ 11   Bank/Savings & Loan
☐ 12   Bowling Alley
☐ 13   Cab Co.
☐ 14   Camera Shop
☐ 15   Casino
☐ 16   Community Center
☐ 17   Cement Co.
☐ 18   Church
☐ 19   Club House
☐ 20   Cleaners
☐ 21   Concession Stand
☐ 22   Construction Co.
☐ 23   Communications
   Sound Equipment
☐ 24   Convenience Store
☐ 25   Construction Site
☐ 26   Convalescent Home
☐ 27   Bakery/Deli
☐ 28   Dealer, Automobile
☐ 29   Department Store
☐ 30   Driveway
☐ 31   Electric Shop
☐ 32   Employment Agency
☐ 33   Farm, Dairy, Ranch
☐ 34   Fast Food Store
☐ 35   Finance Co.
☐ 36   Florist, Nursery
☐ 37   Food Processing Co.
☐ 38   Garage Attached
☐ 39   Garage Detached
☐ 40   Gas Vendor
   Service Station
☐ 41   Golf Course
☐ 42   Gun Shop
☐ 43   Government Facility
☐ 44   Hospital
☐ 45   Hardware Store
☐ 46   Hotel/Motel Office
☐ 47   Hotel/Motel Room
☐ 48   Candy/Ice Cream
☐ 49   Indian Reservation
☐ 50   Jewelry Store
☐ 51   Locksmith
☐ 52   Laundromat
☐ 53   Law Firm
☐ 54   Leather Goods
☐ 55   Liquor Store
☐ 56   Parking Lot
☐ 57   Mower/Bike Shop
☐ 58   Doctor/Dental Office
☐ 59   Medical/Optometrist
☐ 60   Manufacturing Firm
☐ 61   Mobile Home
☐ 62   Misc. Office
☐ 63   Grocery Store
☐ 64   Theater
☐ 65   Music Store
☐ 66   Nursery School
☐ 67   Park/Playground
☐ 68   Other
☐ 69   Public Building
☐ 70   Pet Shop
☐ 71   Pharmacy
☐ 72   Parking Supply
☐ 73   Plumbing Supply
☐ 74   Police Facility
☐ 75   Pool Hall
☐ 76   Post Office
☐ 77   Print Shop
☒ 78   Residence/ House
☐ 79   Rental Store
☐ 80   Restaurant
☐ 81   Retail Store
☐ 82   Salvage Yard
☐ 83   School
☐ 84   Storage Shed
☐ 85   Shopping Center/Mall
☐ 86   Sporting Goods
☐ 87   Barn/Stable
☐ 88   Moving & Storage Co.
☐ 89   Street/Hwy/Alley
☐ 90   Swimming Pool
☐ 91   Trucking Co. Facility/Docks
☐ 92   Trailer Park
☐ 93   Unknown
☐ 94   Upholstery Furniture Repair
☐ 95   Vending Co.
☐ 96   Vending Co.
☐ 97   Vet/Kennels/ Animal Hosp.
☐ 98   Welding Shop/ School
☐ 99   Warehouse

Riverside County Sheriff-Form 424 (Revised 01-26-2018)



# ADDITIONAL PERSONS REPORT
## RIVERSIDE COUNTY SHERIFF CA0330000

FILE NUMBER
ME192060119

PAGE 4

☒ INITIAL      ☐ SUPPLEMENTAL

**VICTIM – REPORTING PARTY – WITNESS – OTHERS:**

| 1. INVL | 2. NAME (Last, First, Middle) | 3. SEX | 4. RACE | 5. DOB | 6. AGE | 7. HT | 8. WT | 9. HAIR | 10. EYES | 11. SKIN |
|---|---|---|---|---|---|---|---|---|---|---|
| V3 | Jimenez, Aubry | F | | 120906 | 12 | | | | | |

| 12. RESIDENCE ADDRESS | CITY | ZIP | 13. EMAIL | 14. RES PHONE |
|---|---|---|---|---|
| 24772 Paradise Meadows Dr | Menifee | 92584 | | |

| 34. BUSINESS ADDRESS | CITY | ZIP | 15. EMAIL | 16. BUS PHONE |
|---|---|---|---|---|
| | | | | |

| 17. INVL | 18. NAME (Last, First, Middle) | 19. SEX | 20. RACE | 21. DOB | 22. AGE | 23. HT | 24. WT | 25. HAIR | 26. EYES | 27. SKIN |
|---|---|---|---|---|---|---|---|---|---|---|
| V4 | Thompson, Logan | M | WHT | 051395 | 24 | | | | | |

| 28. RESIDENCE ADDRESS | CITY | ZIP | 29. EMAIL | 30. RES PHONE |
|---|---|---|---|---|
| 24772 Paradise Meadows Dr | Menifee | 92584 | | 714-331-8143 |

| 31. BUSINESS ADDRESS | CITY | ZIP | 32. EMAIL | 33. BUS PHONE |
|---|---|---|---|---|
| | | | | |

*(handwritten: Only witness to Trial - 1)*

| 34. INVL | 35. NAME (Last, First, Middle) | 36. SEX | 37. RACE | 38. DOB | 39. AGE | 40. HT | 41. WT | 42. HAIR | 43. EYES | 44. SKIN |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

| 45. RESIDENCE ADDRESS | CITY | ZIP | 46. EMAIL | 47. RES PHONE |
|---|---|---|---|---|
| | | | | |

| 48. BUSINESS ADDRESS | CITY | ZIP | 49. EMAIL | 50. BUS PHONE |
|---|---|---|---|---|
| | | | | |

| 51. INVL | 52. NAME (Last, First, Middle) | 53. SEX | 54. RACE | 55. DOB | 56. AGE | 57. HT | 58. WT | 59. HAIR | 60. EYES | 61. SKIN |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

| 62. RESIDENCE ADDRESS | CITY | ZIP | 63. EMAIL | 64. RES PHONE |
|---|---|---|---|---|
| | | | | |

| 65. BUSINESS ADDRESS | CITY | ZIP | 66. EMAIL | 67. BUS PHONE |
|---|---|---|---|---|
| | | | | |

| 68. INVL | 69. NAME (Last, First, Middle) | 70. SEX | 71. RACE | 72. DOB | 73. AGE | 74. HT | 75. WT | 76. HAIR | 77. EYES | 78. SKIN |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

| 79. RESIDENCE ADDRESS | CITY | ZIP | 80. EMAIL | 81. RES PHONE |
|---|---|---|---|---|
| | | | | |

| 82. BUSINESS ADDRESS | CITY | ZIP | 83. EMAIL | 84. BUS PHONE |
|---|---|---|---|---|
| | | | | |

| 85. INVL | 86. NAME (Last, First, Middle) | 87. SEX | 88. RACE | 89. DOB | 90. AGE | 91. HT | 92. WT | 93. HAIR | 94. EYES | 95. SKIN |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

| 96. RESIDENCE ADDRESS | CITY | ZIP | 97. EMAIL | 98. RES PHONE |
|---|---|---|---|---|
| | | | | |

| 99. BUSINESS ADDRESS | CITY | ZIP | 100. EMAIL | 101. BUS PHONE |
|---|---|---|---|---|
| | | | | |

| 102. INVL | 103. NAME (Last, First, Middle) | 104. SEX | 105. RACE | 106. DOB | 107. AGE | 108. HT | 109. WT | 110. HAIR | 111. EYES | 112. SKIN |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

| 113. RESIDENCE ADDRESS | CITY | ZIP | 114. EMAIL | 115. RES PHONE |
|---|---|---|---|---|
| | | | | |

| 116. BUSINESS ADDRESS | CITY | ZIP | 117. EMAIL | 118. BUS PHONE |
|---|---|---|---|---|
| | | | | |

| 119. INVL | 120. NAME (Last, First, Middle) | 121. SEX | 122. RACE | 123. DOB | 124. AGE | 125. HT | 126. WT | 127. HAIR | 128. EYES | 129. SKIN |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

| 130. RESIDENCE ADDRESS | CITY | ZIP | 131. EMAIL | 132. RES PHONE |
|---|---|---|---|---|
| | | | | |

| 133. BUSINESS ADDRESS | CITY | ZIP | 134. EMAIL | 135. BUS PHONE |
|---|---|---|---|---|
| | | | | |

Riverside County Sheriff-Adpers (b) Form 438 (Revised 11-02-2017)

*(handwritten: ⭐ Marcy's law ⭐)*

*(handwritten: Possibly added later when harrassing Logan Thompson to testify.)*



*Leyva, Onre*
*A&S*

*FSC  1-8-20  204*
*PH  1-10-20  201*

1  RON MILLER II
2  Interim Chief Probation Officer |
   Riverside County Probation Department
3  Karen Thompson, Deputy Probation Officer
   30755 Auld Rd., Ste. B
4  Murrieta, CA 92563
5  (951) 696-3169|
6  |
7
8                      **SUPERIOR COURT OF**
9                     **COUNTY OF RIVERSIDE**
10
11  THE PEOPLE OF THE STATE OF CALIFORNIA    | CASE NO. : PRE-ARRAIGNMENT
12                                Plaintiff,  |
13                       v.                   | PRE-TRIAL SERVICES REPORT
14                                            |
15            ONRE LEYVA                      |
16     AKA: ONRE EMMETT LEYVA                 | Dept.: TBD
17                                            | Hearing Date:  12/20/2019
18                               Defendant.   |

19  **Booking Number:**
20  **Arresting Agency:**  RSO Perris                **Bail Amount:** $1,000,000.00
21  **Agency Case Number:** ME193580120              **Agency Opposing O.R.:** Not Specified
22  **Arrest Date/Time:** 12/24/2019; 2237 hours     **Reason for Opposition:** Not Specified
23
24  **Filed Charges (SWF1900605):**
25      1.  459 PC (Burglary), a felony
26      2.  10852(a) VC (Take Vehicle Without Owner Consent), a felony
27      3.  243(e)(1) PC (Battery on Spouse/Person Whom Defendant is Cohabiting with), a
28          misdemeanor
29                                                        (Continued on Page2)
30  **Recommendation:**
31      Release on Own Recognizance is not recommended. According to the booking agency, bail is
32  scheduled at $1,000,000.00.

*Tributarily Ostracized*
*"Human Capito"*

1 of 4
PRE-TRIAL SERVICES REPORT

RCP-465, 10/17

*CDCR Recommendations for*
*Confinement ###*

*Supplemental report*

| FILE NUMBER | | |
|---|---|---|
| ME192060119 | **CONTINUATION PAGE** | Page Number: 5 |

## HISTORY:

Leyva and V1 are currently divorced. Leyva and V1 where married from 1999 to 2003. Leyva and V1 have 3 children together. Leyva has been homeless for several years and is known to frequent the City of Downey. Ca. V1 stated Leyva has been physical with her in the past. V1 cited several incidents including 1998,1999,2007, and 2010.

## INJURIES: *From illegal search and serure of past criminal history..*

V1 did not have any visible injuries and denied medical attention at the scene.

## EVIDENCE: *Very Important*

*Stored in locker in initial report... (see page 9 new property evidence report)*

| Item: | Quantity: | Description: |
|---|---|---|
| 01 | 01 | DVR of BWC footage |

The following was booked into the Perris Station Evidence Locker on 07/27/2019

## DETAILS:

On 07/25/2019, at 2150 hours, I was dispatched to 24772 Paradise Meadows Dr, Menifee, reference a 10851 CVC. The following incident was recorded with my VieVu body camera. I arrived at the location and spoke to the victim who identified herself as V1. *lets see the footage*

V1 told me she and suspect Onre Leyva where having dinner and drinks at Stadium Pizza in Lake Elsinore. V1 stated she was also having dinner with her son V2, daughter Aubry Jimenez, and friend Logan Thompson. Leyva began acting aggressively, screaming and saying random things. V1 decided it was time to leave Stadium Pizza and return home. V1 told everyone to get in the vehicle.

V1 was driving home in a white Nissan Altima. Leyva was in the back-passenger seat behind the driver seat. Leyva began screaming and pulling V1 hair and punching her in the head. V1 pulled over because she felt she would lose control of the vehicle while Leyva was assaulting her. V1 stopped the car and opened the driver side door. Leyva opened his door and exited the vehicle. Leyva grabbed V1, Leyva pulled V1 out of the vehicle knocking her down to the ground.

Leyva got into the driver seat and drove away with Aubry, V2, and Logan still inside the vehicle. V1 used her cell phone to call V2 and find out where Leyva was driving. V1 told me V2 did not answer his cell phone. V1 stated she continued to wait on the side on the road. I asked V1 how Leyva got to Stadium Pizza.

V1 told me, approximately three weeks ago, Leyva made contact with V2. Leyva told V2 about his poor living conditions in Downey. V2 felt bad for Leyva and mentioned it to V1. V1

*Tampered falsified report. NOT FROM DVR BWC BODY CAM FOOTAGE...*

6

| FILE NUMBER | CONTINUATION PAGE | Page Number: 6 |
| --- | --- | --- |
| ME192060119 | | |

*[handwritten top right: Altered/added]*

1  decided to drive to Downey and pick up Leyva from his homeless camp. V1 drove Leyva to her
2  home in Menifee, where Leyva has been staying for approximately three weeks.
3
4  V1 stated after approximately 45 minutes V2 returned to her location in the Altima with Aubry
5  and Logan. V2 told V1 Leyva went inside the residence and took several items. V2 stated Leyva
6  drove away in V1 1998 GMC truck CAL LIC#51642R2. I asked V1 if Leyva had permission to
7  use the vehicle. V1 stated the vehicle belongs to her and she did not give permission to Leyva to
8  drive the vehicle.
9
10  V1 stated when she returned home she discovered Leyva had stolen her coin collection worth
11  approximately $10,000 dollars. Leyva also attempted to steal a piggy bank full of miscellaneous
12  coins but dropped the item in the front yard, which was recovered by V1. I asked V1 if she
13  desired prosecution for taking her vehicle and property. V1 stated she desires prosecution
14  against Leyva for taking her coins and vehicle.
15
16  I spoke to V2 who was at the scene and asked him to talk to me about the incident. The
17  following is a summary of V2's statement. V2 stated everyone was at Stadium Pizza when
18  Leyva began acting aggressive. V1 told everyone to get in the car and began driving home.
19  Leyva began yelling and hitting V1. V1 pulled over and Leyva grabbed her out of the vehicle.
20
21  Leyva began driving the vehicle leaving V1 on the side of the road. V2 told Leyva to stop the
22  car and turn around to pick up V1. Leyva began yelling "I'm gonna kill you nigga." Leyva
23  continued driving ignoring V2's pleas to stop the vehicle. V2 told me he was fearful for his
24  safety and was unsure where Leyva was taking them.
25
26  V2 told me Leyva drove to V1 residence. Leyva entered the residence and went upstairs. Leyva
27  walked out of the residence with V1 coin collection. Leyva got in V1 GMC truck and drove
28  away. After Leyva left the location, V2 drove to V1.
29
30  I spoke to Logan who told me the following. Logan was inside the vehicle and saw Leyva hit V1
31  several times in the head. V1 stopped the vehicle and Leyva pulled V1 out of the driver seat.
32  Leyva drove him to V1 residence. Logan saw Leyva go inside the residence and walk out with
33  V1 coin collection. Leyva got inside V1 GMC truck and drove away. I asked Logan if he was
34  afraid of Leyva. Logan told me he was afraid because Leyva continued to state he was going to
35  kill everyone in the vehicle.
36
37  I asked V1 if she desired an EPO against Leyva and she declined. I asked V1 if she needed
38  medical attention and she refused. I had V1 sign the CHP 180 and entered the vehicle into
39  CLETS as stolen. I attempted to contact Leyva regarding the incident with the phone number V1
40  provided with no success. I asked V1 if she had any idea where Leyva would go. V1 stated she
41  unsure where Leyva would be because he is homeless.
42
43  This report will be forwarded to the Riverside County District Attorney's office for review and
44  prosecution of Onre Emmet Leyva for 273.5(a)PC, Domestic Battery, 207(a)PC, Kidnapping.

Riverside County Sheriff Form C-442 Continuation Page (Revised 3-10-2017)

*[handwritten right margin annotations, top to bottom:]*
property manager never coin collection
my truck - Discovery

Tampered Falsified

From Discovery - Officer Rubio says
and reports later this in Prelims
and is now saying this in his supplemental report supposedly from Body Cam DVR BWC footage

never spoke to Logan. Detective Frost (Rubio)

notice grammer

*[handwritten bottom:]*
Very Important - The only thing left from Officer Puenes initial stolen vehicle report, Perris Sheriffs Department wont give me-

*[handwritten bottom right circled: 7]*

FILE NUMBER
ME192060119

CONTINUATION PAGE

Page Number: _7_

*Altered*

1   215(a)PC. Carjacking. 487 PC. Grand Theft. and 10851(a)CVC. Taking vehicle without owner's
2   consent.
3
4   **CASE STATUS:**
5   Closed Exceptional

Rubio #5538

*Altered*

*Closed Exceptional by officer Pueno as a result of investigation into stolen vehicle report and finding during Bodycam DVR Bwc footage. Where Jennifer Jimenez is the only one reporting according to initial report.*

*- Not able to receive Bodycam nor initial police report by Perris Sheriff's Dept.*



## Riverside County Sheriff's Department

New Property / Evidence Report

| Deputy Name: | Rubio, Freddy | | Deputy ID: 5538 | | Incident Number: | ME192060119 |
|---|---|---|---|---|---|---|
| Evidence Barcode: | Date Entered: | Item Description: | | Mailing Address: | Tickler will be sent: | Entered By (ID): |
| 2170963 | 7/27/2019 | Item Description: DVR OF BWC FOOTAGE. This item is related to the following SUSPECT: LEYVA, ONRE E. | | 9353 DINSDALE ST DOWNEY | 10/25/2019 | 5538 |

- This was initially attached with the initial 4-5 page stolen vehicle report as a form of evidence to backup initial allegations of counts 1,2,3.

- BodyCam DVR BWC footage warn by officer Freddy Rubio who will testify in preliminary what's supposedly in this coverage (Flawed Investigation)

Page 1 of 1

rev 051109 NER





**Riverside County Sheriff's Department**

New Property / Evidence Report

| Deputy Name: | | Rubio, Freddy | | | Deputy ID: 5538 | | Incident Number: | ME192060119 |
|---|---|---|---|---|---|---|---|---|

| Evidence Barcode: | | Date Entered: | Item Description: | | Mailing Address: | Tickler will be sent: | Entered By (ID): |
|---|---|---|---|---|---|---|---|
| 2170963 | | 7/27/2019 | Item Description: DVR OF BWC FOOTAGE. This item is related to the following SUSPECT: LEYVA, ONRE E. | | 9363 DINSDALE ST DOWNEY | 10/25/2019 | 5538 |



Sherriffs Dept Perris CA
951-210-1000

ME192060119

OFFICER: Nora 6577 - Admits but won't
/ANSWERS           give me initial
        - Supplement   report or
behr.com    report    kilz.com   BODYCAM
                                  FOOTAGE

Page 1 of 1

rev 051109 NER

9

DEFENDANT:   Onre LEYVA                                    COURT CASE #:      SWF1900605




### Riverside County Public Defender
### Bureau of Investigations
### Investigation Report

| Defendant: | Onre LEYVA | *does not testify* | Court Case #: | SWF1900605 |
|---|---|---|---|---|
| Attorney: | DPD Mark Davis | | | |
| Investigator: | Roger Lemasters | | Date of Report: | 01/28/2020 |
| Statement of: | Jennifer JIMENEZ, 08/04/1973 | | Interview Type: | In person ☒   Phone ☐ |
| | | | Developed Witness: | (Check if yes) ☐ |
| Contact Info: | 24772 Paradise Meadows Drive Menifee, CA  92584 | | Other Info: | AV; client's ex-wife |

On 01/27/2020 at approximately 1005 hours, I went to 24772 Paradise Meadows Drive in Menifee to speak with Jennifer JIMENEZ as agreed upon in a previous phone call. I identified myself as an investigator with the Riverside County Public Defender's Office, gave her my business card, and explained that I worked with the attorney representing Onre LEYVA on the matter of the 07/25/2019 incident. I asked Jennifer if she was willing to speak with me and she consented. The following is a summary of what she told me.

I asked Jennifer the following (Q)uestions and received the following (A)nswers.

(Q) What happened at the Stadium Pizza and afterward on 07/25/2019?
(A) Nothing really. We just ate pizza. There were no problems until we were on the way home.

(Q) What do think caused Onre's change in behavior?   *Prosecution makes me victim here too.*
(A) Onre drank around 3 beers at Stadium Pizza. Onre cannot handle alcohol. I know 3 beers does not sound like a lot, but it was too much for Onre.

Once in the car, Onre started "talking shit," rambling, and generally being obnoxious. He started yelling and cursing. I didn't want him acting that way in front of my 12-year-old daughter so I stopped the car and told Onre to get out and find his own way home. I got out of the driver's seat and Onre got out of the rear passenger seat. Onre shoved me out of the way so he could get into the driver's seat. I stumbled and fell down, but was not hurt. Onre drove off with my son (Jacob LEYVA), daughter (Aubry JIMENEZ), and my son's friend (Logan THOMAS) in the car. A little while later, Jacob came back and picked me up in my car and we went home.

(Q) How long had Onre been staying at the Paradise Meadows address?
(A) From the middle of March 2019 to July 2019.

(Q) Where did he sleep?
(A) He had a room upstairs.

(Q) Where did he keep his possessions?
(A) In his room.

*— Logan states it was over a trivial comment that was made. Never asked never cross-examined*

*Page 1 of 3*

*— Prosecution will place me in the front seat and have me stopping at a gas station. (So as not to question Logan Thompson about his role and make it seem about Jennifer and I*  ⑩

DEFENDANT:   Onre LEYVA                          COURT CASE #:      SWF1900605

(Q) Did he have a key to any part of the house?
(A) No.  I just never got around to giving him one.

(Q) Did he have permission to come and go as he chose?  If yes, how without a key?
(A) Yes.  He did not leave the house much, so not having a key never became an issue.

(Q) Did he pay any household bills or pay you for any of his expenses?
(A) No.

(Q) Did Onre have permission to drive the car or truck?
(A) Yes.  He drove the truck several times.  He knew where the key was kept and would take it when he needed to use it.

*my work truck*

(Q) Had he ever driven the truck before?
(A) Yes.

(Q) Did he always ask for permission to borrow the truck?
(A) No.

(Q) Had he always brought the vehicle back?
(A) Yes.

(Q) Where did you get the coin collection?
(A) My mother gave it to me.

(Q) Was it part of the marriage's community property?
(A) No.  When I got it, Onre asked it I wanted him to go online and check the value of the coins.  I told him if he did, I would "give him a cut of the sales."  He never looked up the value of the coins though.

(Q) Would you review your statements in the police report with me?
(A) yes.

    The following are changes Jennifer said needed to be made with the police report to make it accurate.
Jennifer told me the officers who responded and took the police report, were very disinterested and uncaring.
The officer who took her, her son's and THOMAS' statement didn't even bother to separate them and interview
them individually but just spoke to them all at the same time.

- Onre did not become aggressive at the Stadium Pizza.
- Jennifer's car is not a Nissan Altima but a Honda Accord.      *Said I punched her numerous*
- Onre did not intentionally pull Jennifer's hair.  He was sitting behind her in the car and grabbed the top *times and pulled her out of the*
  of her seat and in doing so, accidentally grabbed her hair.
- Onre did not punch Jennifer's head; it was more of a slap and it did not hurt, but it was annoying and
  distracting.
- Onre did not pull Jennifer out of the car, she got out on her own and she was out of the car before Onre
  got out of the car.
- Onre did not knock Jennifer to the ground.  He pushed her and she stumbled and fell but was not injured.

                                                                    *car and threw her into*
                              Page 2 of 3                           *a ditch. . .*

                                                                         ⑪

DEFENDANT:   Onre LEYVA                    COURT CASE #:    SWF1900605

- Jennifer told the officer she specifically did not give Onre permission to drive the truck; he didn't need her permission as he had driven it before without getting permission.

(Q) Is there is anything further they wish to add or change.
(A) Jennifer said Onre pawned the coin collection and bought a car with the money.  She told me Onre apologized and gave the car he purchased to Jennifer.  Jennifer also told me Onre gave her $800, the money he had left from pawning the coins.  Jennifer said he told her he used some of the money to live off of. Jennifer told me she does not desire any restitution for the items Onre took.

(Q) What would you like to see happen with this case?
(A) Since I probably can't request the charges to be dropped; I want nothing to do with Onre.  He needs to leave me alone and I don't want him around.  I don't want him to go to prison, but it would be good for him to get alcohol and drug treatment.

I thanked Jennifer for her time and concluded the interview.

My truth revealed simply telling logan no need to disrespect my daughter and driving home getting my belongings and leaving in my work truck.
All revealed in Discovery and mentioned by all 3 witnesses Jennifer, Jacob, Logan.

(12)

DEFENDANT:  Onre LEYVA                                    COURT CASE #:    SWF1900605




### Riverside County Public Defender
### Bureau of Investigations
### Investigation Report

| Defendant: | Onre LEYVA | Court Case #: | SWF1900605 |
|---|---|---|---|
| Attorney: | DPD Mark Davis | | |
| Investigator: | Roger Lemasters | Date of Report: | 01/28/2020 |
| Statement of: | Jennifer JIMENEZ, 08/04/1973 | Interview Type: | In person ☒  Phone ☐ |
| | | Developed Witness: | (Check if yes) ☐ |
| Contact Info: | 24772 Paradise Meadows Drive<br>Menifee, CA  92584<br>951-474-7499 | Other Info: | AV; client's ex-wife |

On 02/24/2020 at approximately 1450 hours, I called Jennifer JIMENEZ on the phone. I identified myself as an investigator with the Riverside County Public Defender's Office and reminded Jennifer we had spoken previously on 01/27/2020. I reminded her that I worked with the attorney representing Onre LEYVA on the matter of the 07/25/2019 incident. I told Jennifer I had a couple of more questions I would like to ask her and asked if it was OK for us to speak on the phone or did she prefer speaking in person again. She said she did not mind speaking with me on the phone. The following is a summary of what she told me.

I asked Jennifer if Onre had worked for her as her property manager and at first she said no because she thought I was referring to her house. She then thought about my question and told me she owned properties in Palm Springs and Los Angeles County which she rents. When Onre came to live with her, she had asked him to collect rent on the properties twice a month and he made phone calls to repair professionals to make repairs on the properties. Jennifer told me, "I guess then, he was the property manager."

I asked Jennifer if she paid Onre for this work and she said she did not.

I asked Jennifer what agreement she had made with Onre regarding the coin collection her mother had given her. Jennifer told me she did not remember the specific agreement if there was an agreement at all. She told me she and Onre had discussed the selling of the coins and if Onre did the research to find the value and sold the coins, she would give him a portion of the sales.

I asked Jennifer is she felt Onre had stolen the coins for her. She responded, "He did take them, but he did uphold his end of the agreement by giving me a portion of the sales." I asked her if any of the coins were returned to her and she said, yes.

I thanked Jennifer for her time and conclude the interview.

- Coin collection given to me as a form of payment for being her Property Manager.

- My work truck used to drive for work and pleasure. I bought and paid for.

Page 1 of 1

⑬

DEFENDANT:   Onre LEYVA                                    COURT CASE #:      SWF1900605



### Riverside County Public Defender
### Bureau of Investigations
### Investigation Report



| Defendant: | Onre LEYVA | Court Case #: | SWF1900605 |
|---|---|---|---|
| Attorney: | DPD Mark Davis | | |
| Investigator: | Roger Lemasters | Date of Report: | 01/28/2020 |
| Statement of: | Jacob LEYVA, 08/22/1995 | Interview Type: | In person ☒  Phone ☐ |
| | | Developed Witness: | (Check if yes) ☐ |
| Contact Info: | 24772 Paradise Meadows Drive Menifee, CA  92584 562-445-1467 | Other Info: | AV; client's son |

On 01/27/2020 at approximately 1030 hours, I was at 24772 Paradise Meadows Drive in Menifee and asked to speak with Jacob LEYVA.  I identified myself as an investigator with the Riverside County Public Defender's Office, gave him my business card, and explained that I worked with the attorney representing Onre LEYVA on the matter of the 07/25/2019 incident.  I asked Jacob if he was willing to speak with me and he consented.  The following is a summary of what he told me.

I asked Jacob the following (Q)uestions and received the following (A)nswers.

(Q) What happened at the Stadium Pizza and afterward on 07/25/2019?
(A) Nothing happened at Stadium Pizza.

(Q) What happened when you got in the car to go home?
(A) We were about 3 minutes after leaving Stadium Pizza when my dad took offense at something Logan (THOMAS) said and started yelling and cussing.  They (Logan and my dad) kept arguing and yelling and my mother pulled over the car and got out.  She told my dad to get out of the car and he did.  My dad pushed my mom and she fell in the dirt.  My dad got in the car and drove off leaving my mom there.  He stopped at a gas station and told Logan to get out of the car but Logan refused.  My dad drove back to the house.  He went upstairs to his room and I picked up the second set of keys for my mom's car.  I saw my dad come downstairs with a drawer in his hands and I couldn't see what was in the drawer.  He took the keys for the truck and left in the truck.  I took my mom's car and went and picked her up and we came back to the house and called the cops.

(Q) Did your father ever threaten you or cause you to be afraid?
(A) He never threatened me.  I was only afraid when I did not know where my father was taking us.  I was not afraid when I realized he was taking us home.   *silent driving home.*

(Q) How long had Onre been staying at the Paradise Meadows address?
(A) About 3 months.

*- This is what makes Discovery falsified tampered*
(Q) Where did he sleep?
*Evidence too cause Roger LeMasters wont testify*
(A) Upstairs in his room.
*even in Preliminaries.*

*Prosecution will use this* Page 1 of 2
*In trial but Roger LeMasters will never testify!*

(14)

DEFENDANT:   Onre LEYVA                                    COURT CASE #:        SWF1900605

(Q) Where did he keep his possessions?
(A) In his room.

(Q) Did he have a key to any part of the house?
(A) No.

(Q) Did he have permission to come and go as he chose?
(A) Yes.

(Q) Did he pay any household bills or pay you for any of his expenses?
(A) I don't think so.

(Q) Did Onre have permission to drive the car or truck?
(A) No, he didn't.

(Q) Had he ever driven the truck before?
(A) Yes.

(Q) Did he always ask for permission to borrow the truck?
(A) I think so.

(Q) Had he always brought the vehicle back?
(A) Yes.

(Q) Would you review your statement in the police report with me to ensure its accuracy?
(A) Yes.

The following are the changes Jacob stated needed to be made in the police report to make it accurate.
- Onre did not start acting crazy at Stadium Pizza.  It wasn't until they were in the car going home.
- Onre did not pull Jennifer out of the driver's seat; she got out on her own.
- Jacob did not see Onre hit Jennifer and did not tell the officer this.
- Onre yelled something like "I'm going to kill you nigga," to Logan, because he was still mad at him.
- Jacob did not follow his father upstairs, Jacob just got the 2nd set of keys to his mother's car.
- Jacob did not see the coin collection in Onre's possession; he only saw the drawer Onre was carrying when he left the house.

(Q) Is there is anything further you wish to add or change?
(A) No.

(Q) What would you like to see happen with this case?
(A) I don't know.  I don't want my dad to go to prison.

*[handwritten annotations:]*

*This is the statement used by Officer Rubio during preliminaries that he testifies was told to him at the time of him showing up and writes in his report.*

*☆ False ☆*

*Dismiss, Exhonerate compensate!*

Page 2 of 2

*(15)*

DEFENDANT:   Onre LEYVA                                    COURT CASE #:      SWF1900605



### Riverside County Public Defender
### Bureau of Investigations
### Investigation Report



| Defendant: | Onre LEYVA | Court Case #: | SWF1900605 |
|---|---|---|---|
| Attorney: | DPD Mark Davis | | |
| Investigator: | Roger Lemasters | Date of Report: | 01/29/2020 |
| Statement of: | Logan W. THOMPSON, 05/13/1995 | Interview Type: | In person ☐  Phone ☒ |
| | | Developed Witness: | (Check if yes) ☐ |
| Contact Info: | 3416 Alpha Ave. El Paso, TX 79915 714-331-8143 | Other Info: | Witness |

On 01/28/2020 at approximately 1525 hours, Logan THOMPSON returned a phone call to my office in response to a voice message I had left on his phone. I identified myself as an investigator with the Riverside County Public Defender's Office and explained that I worked with the attorney representing Onre LEYVA on the matter of the 07/25/2019 incident. I asked Logan if he was willing to speak with me on the phone about the incident and he consented. The following is a summary of what he told me.

I asked Logan ho long he has known Onre and he said probably less than 10 years. He told me Onre is the father of his friend, Jacob LEYVA. I asked Logan approximately how many times he had interacted with Onre and he said, hundreds. I asked Logan if he knew Onre well and he said he did.

I asked Logan to tell me what happened the night of 07/25/2019.

Logan told me they (Jennifer JIMENEZ, Jacob LEYVA, Aubry JIMENEZ, Onre LEYVA, and Logan) went to a restaurant. He told me the 4 adults (Aubry is 12 years old) consumed about 3 pitchers of beer. Logan thought Onre probably had the most.

They left the restaurant and were headed home when he (Logan) and Onre got into an argument. I asked Logan what the argument was about and he said he did not remember; it was over some trivial comment which was taken the wrong way. *Never asked nor cross examined by Mar LC Davis:*

Logan said Onre started getting physical. I asked Logan what he meant. Logan said Onre "put his hands on Jennifer." Lofan said Jennifer was having difficulty maintaining control of the vehicle so she pulled over and stopped the car. Logan said Jennifer and Onre both got out of the car and went to the rear of the car out of Logan's eyesight. Logan told me he did not see what happened while they were at the rear of the car.

Onre got into the driver's seat and drove away, leaving Jennifer behind. Logan said he did not know where Onre was taking them. At that point, Logan said he did not feel safe.

Onre stopped at a gas station and told Logan to get out of the car. Jacob told Logan not to get out of the car and told Logan, if he got out, he (Jacob) and Aubry would also get out with him; they were going to stay together.



DEFENDANT:   Onre LEYVA                                    COURT CASE #:        SWF1900605

They all stayed in the car and Onre drove them back home.  Once there, Onre ran into the house and upstairs.  Jacob followed Onre into the house.  Logan and Aubry stayed in the car.

A short time later, Onre exited the house carrying an armful of possessions and got into the truck and drove away.  Jacob also came out of the house and drove back to pick Jennifer up.

I asked Logan if Onre ever threatened him that night.  Logan said, "Yes, empty threats like, 'I'm going to kick your ass.'"  I asked Logan why he characterized the threats as "empty."  Logan said he knew Onre would not put his hand on him.  I asked Logan if Onre had ever done anything physical to him and he said, no.  I asked Logan if he had ever witnessed Onre put his hands on anyone and he said, no, "I've only heard stories."

I asked Logan if he had anything else he wanted to add.  Logan said, "I think Onre has demons he needs to exercise."

I asked Logan if he was willing to come to court and testify to what he had just told me.  He responded, "No, I don't want to get involved in this family matter."

I thanked Logan for his time and concluded the interview.

So my response to Logan prompted Jennifer to Pull over the car and because I couldn't even have an opinion I left home. Drove straight home, gathered some belongings and left in my work truck. Innocence proven in Discovery Preponderance of evidence revealed but suppressed and Mark C Davis P.D. hands over all evidence to Prosecution to do as they may offering no defense (due process or effective counsel) at any time during any and all proceedings.

- In Police report they said Logan Thompson Said I was going to kill everyone in the vehicle (why doesn't Rubio testify to this during preliminary?)

(17)



# RIVERSIDE COUNTY DISTRICT ATTORNEY
## BUREAU OF INVESTIGATION

### INVESTIGATOR'S REPORT

| REPORT MADE BY:<br>James McDonald | DATE:<br>February 26, 2020 | CHARGE:<br>CPC 459 | COURT #:<br>SWF1900605 |
|---|---|---|---|
| DEFENDANT:<br>Onre Leyva | | COMPLAINANT:<br>People of the State of California | |
| WITNESS: | | VICTIM: | |

**Witness interviewed:**

Jimenez, Jennifer (8-4-73)

**Narrative:**

I interviewed Jimenez by telephone on Wednesday February 26, 2020. I recorded the interview using a digital audio recorder. I later downloaded the recording from the recorder to a digital file maintained by the Bureau of Investigation. The following is a summary of the interview. — ONLY THING JAMES MCDONALD TESTIFIES TOO: 8/19/22

I first called Jiminez and asked if she would be willing look at a photograph and identify the person depicted in the photo. I sent her a Riverside County Sheriff's Department jail booking photograph of Leyva that was taken on November 25, 2019 (booking #201950231) She identified the person on the photograph as Onre Leyva and said that this was the same Onre Leyva she was referring to when she talked to deputies in July.

PRELIMINARY HEARINGS - ASKED FOR DISMISSAL (Based on) the Truth

Besides James McDonald, Officer Rubio (5538) was coached by D.A. Kimberly Dittrich to state and add under oath that he was told that I said Inflammatory Statements that Judge Paul Dickerson adds 2 additional counts of criminal threats based off Discovery (No One Else Testifies)

* Perponderance of Evidence in my favor *

Onre E. Leyva 8/19/22

1 of 1

18

*[handwritten annotations: "- Supposed Active Warrant ? when arrested on 12/24/19", "Compare to Whats submitted In Minutes in Transcripts", "Date Stamps !"]*

**CASH BOND**
RECOMMENDED:
$1,000,000.00

Warrant:

MICHAEL A. HESTRIN
DISTRICT ATTORNEY

AGENCY#: ME192060119/RSDP

**FILED**
Superior Court of California
County of Riverside
**09/26/2019**
KRISTEN OSTAPOVICH

**SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE**
(Southwest)

**SWF1900605**

THE PEOPLE OF THE STATE OF CALIFORNIA,

Plaintiff,

v.

ONRE LEYVA
DOB:

Defendant.

D.A.# 385425

CASE NO.
**FELONY COMPLAINT**

## COUNT 1

The undersigned, under penalty of perjury upon information and belief, declares:  That the above named defendant ONRE LEYVA committed a violation of Penal Code section 459, a felony, in that on or about 7/25/2019, in the County of Riverside, State of California, the defendant did willfully and unlawfully enter a certain building, to wit, an inhabited dwelling house, located at _____, with intent to commit theft and a felony. [2/4/6 prison]

It is further alleged that, except in an unusual case where the interest of justice would best be served within the meaning of California Rule of Court 4.413 subdivision (c), probation shall not be granted pursuant to Penal Code section 462, subdivision (a).

## COUNT 2

That the above named defendant ONRE LEYVA committed a violation of Vehicle Code section 10851, subdivision (a), a FELONY, in that on or about 7/25/2019, in the County of Riverside, State of California, the defendant did willfully and unlawfully drive or take a certain vehicle, to wit, a _____, the property of another, without the consent of and with intent to deprive the owner of title to and possession of said vehicle.  [16/2/3]

## COUNT 3

That the above named defendant ONRE LEYVA committed a violation of Penal Code section 236, a felony, in that on or about 7/25/2019, in the County of Riverside, State of California, the defendant did willfully and unlawfully, by violence, menace, fraud, and deceit, violate the personal liberty of JOHN DOE (JL).  [16/2/3]

*[handwritten annotation at bottom: "Head Criminal Defense Attorney Michael Hestrin will submit Altered documents along with the courts."]*

Case #SWF1900605                    Filing Date 01/08/2020

### 1370 NOTICE

The People hereby notify defendant and defense counsel that the People intend to proceed under the provisions of Evidence Code section 1370 should the victim become unavailable at the time of trial.

### MARSY'S LAW

Information contained in the reports being distributed as discovery in this case may contain confidential information protected by Marsy's Law and the amendments to the California Constitution Section 28.  Any victim(s) in any above referenced charge(s) is entitled to be free from intimidation, harassment, and abuse.  It is unlawful for defendant(s), defense counsel, and any other person acting on behalf of the defendant(s) to use any information contained in the reports to locate or harass any victim(s) or the victim(s)'s family or to disclose any information that is otherwise privileged and confidential by law.  Additionally, it is a misdemeanor violation of California Penal Code § 1054.2a(3) to disclose the address and telephone number of a victim or witness to a defendant, defendant's family member or anyone else.  Note exceptions in California Penal Code § 1054.2a(a) and (2).

I declare under penalty of perjury upon information and belief under the laws of the State of California that the foregoing is true and correct.

Michael A. Hestrin
District Attorney

Dated: December 31, 2019

By: Quinn R. Baranski
Deputy District Attorney

IT

3

Case #SWF1900605

Filing Date 09/26/2019

## MARSY'S LAW

Information contained in the reports being distributed as discovery in this case may contain confidential information protected by Marsy's Law and the amendments to the California Constitution Section 28. Any victim(s) in any above referenced charge(s) is entitled to be free from intimidation, harassment, and abuse. It is unlawful for defendant(s), defense counsel, and any other person acting on behalf of the defendant(s) to use any information contained in the reports to locate or harass any victim(s) or the victim(s)'s family or to disclose any information that is otherwise privileged and confidential by law. Additionally, it is a misdemeanor violation of California Penal Code § 1054.2a(3) to disclose the address and telephone number of a victim or witness to a defendant, defendant's family member or anyone else. Note exceptions in California Penal Code § 1054.2a(a) and (2).

## DISCOVERY REQUEST

Pursuant to Penal Code section 1054.5, subdivision (b), the People are hereby informally requesting that defense counsel provide discovery to the People as required by Penal Code section 1054.3.

I declare under penalty of perjury upon information and belief under the laws of the State of California that the foregoing is true and correct.

Michael A. Hestrin
District Attorney

Dated: September 26, 2019

By: Kimberly R. Dittrich
Deputy District Attorney

lpz

## INCIDENT REPORT

**DATE PREPARED:** 072619 | RIVERSIDE COUNTY SHERIFF CA0330000 | ☒ INITIAL ☐ SUPPLEMENTAL

| 1 FILE NUMBER | 2 DATE/TIME REPORTED | 3 DATE/TIME ASSIGNED | 4 DATE/TIME INV START | 5 DATE/TIME INV TERM | 6 ADULT ARR | 7 JUV ARR |
|---|---|---|---|---|---|---|
| ME192060119 | 072519   2150 | 072519   2230 | 072519   2241 | 072619   0049 | 0 | 0 |

| 8 OFFENSES - CODE SECTION | CRIME | | COUNTS | 9 EDP CODE |
|---|---|---|---|---|
| 273.5(a)PC | Domestic Battery | | 01 | 13K4-F |
| 10 OFFENSES - CODE SECTION (Add or Change to) | CRIME | | COUNTS | 11 EDP CODE |
| 207(a)PC | Kidnapping | | 03 | 23K1-F |
| 12 OFFENSES - CODE SECTION (Add or Change to) | CRIME | | COUNTS | 13 EDP CODE |
| 215(a)PC | Carjacking | | 01 | 12G5-F |

| 14 LOCATION OF OCCURRENCE | 15 REP DIST | 16 OCCURRED ON- | DATE/TIME | 17 OR BETWEEN | DATE/TIME |
|---|---|---|---|---|---|
| 24772 Paradise Meadows Dr Menifee, Ca 92584 | 506D | 072519 | 2150 | | |

| 18 BUSINESS NAME | 19 BUSINESS PHONE | 20 CASE STATUS/ CLEARANCE |
|---|---|---|
| | | Closed/Exceptional |

**21. WAS THIS INCIDENT RELATED TO MARIJUANA?** ☐ YES ☒ NO   (If yes, briefly include in narrative or additional details how it was related)

---

### VICTIM – REPORTING PARTY – WITNESS – OTHERS:   ☒ SEE ADDITIONAL PERSONS REPORT

| 22 INVL | 23 NAME (Last, First, Middle) | | 24 SEX | 25 RACE | 26 DOB | 27 AGE | 28 HT | 29 WT | 30 HAIR | 31 EYES | 32 SKIN |
|---|---|---|---|---|---|---|---|---|---|---|---|
| V1 | Confidential | | | | | | | | | | |
| 33 RESIDENCE ADDRESS | | CITY | | ZIP | | 34 EMAIL ADDRESS | | | | 35 RES PHONE | |
| 36 BUSINESS ADDRESS | | CITY | | ZIP | | 37 EMAIL ADDRESS | | | | 38 BUS PHONE | |

| 39 INVL | 40 NAME (Last, First, Middle) | | 41 SEX | 42 RACE | 43 DOB | 44 AGE | 45 HT | 46 WT | 47 HAIR | 48 EYES | 49 SKIN |
|---|---|---|---|---|---|---|---|---|---|---|---|
| V2 | Confidential | | | | | | | | | | |
| 50 RESIDENCE ADDRESS | | CITY | | ZIP | | 51 EMAIL ADDRESS | | | | 52 RES PHONE | |
| 53 BUSINESS ADDRESS | | CITY | | ZIP | | 54 EMAIL ADDRESS | | | | 55 BUS PHONE | |

---

### SUSPECT:   ☒ ADULT ☐ JUVENILE      ☐ PAROLE ☐ PROBATION      ☐ SEE ADDITIONAL PERSONS REPORT ☐ ARRESTED

| 56 SUS# | 57 NAME (Last, First, Middle) | | | 58 SEX | 59 RACE | 60 DOB | 61 AGE | 62 HT | 63 WT | 64 HAIR | 65 EYES | 66 SKIN |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| S1 | Leyva, Onre | | | | | | | | < | | | |

| 67 DRIVER'S LICENSE NUMBER / ID NUMBER | IN POSSESSION YES ☐ NO ☐ | 68 STATE | 69 SOCIAL SECURITY NUMBER | 70 MNI NUMBER | 71 CII NUMBER |
|---|---|---|---|---|---|

| 72 RESIDENCE ADDRESS | | CITY | | ZIP | | 73 EMAIL ADDRESS | | 74 RES PHONE |
|---|---|---|---|---|---|---|---|---|
| 75 BUSINESS ADDRESS | | CITY | | ZIP | | 76 EMAIL ADDRESS | | 77 BUS PHONE |

| 78 | JUVENILE DISPOSITION ☐ OTHER JURIS. ☐ JUV. CRT. PROB ☐ WITHIN DEPT. ☐ DETAINED ☐ NOT DETAINED |
|---|---|

| 79 | **GANG DATA** | 80 | TATTOOS/SCARS/MARKS/CLOTHING DESCRIPTION |
|---|---|---|---|
| | GANG NAME(S): | | Striped blue/red tank top<br>Gray pants |
| | ☐ Member ☐ Associate ☐ Self-Admit ☐ Prior Knowledge | | |
| | TATTOOS / SCARS / MARKS<br>☐ Face ☐ Neck ☐ R. Arm ☐ L. Arm ☐ Hands ☐ Torso ☐ Back ☐ Legs | | |

---

### VEHICLE:   ☒ REFER TO CHP 180 FORM FOR STOLEN, RECOVERED, TOWED OR IMPOUNDED

| 81 INVL | 82 LICENSE | 83 STATE | 84 YEAR | 85 MAKE | 86 MODEL | 87 BODY STYLE | 88 S/L/R/O Code | AUTO VALUE |
|---|---|---|---|---|---|---|---|---|
| 89 COLOR/COLOR | 90 VIN # | | | | 91 OTHER IDENTIFIERS | | 92 DISPOSITION OF VEHICLE | |
| 93 REGISTERED OWNER | 94 ADDRESS | | CITY | STATE | ZIP | 95 PHONE | | |
| Jennifer Jimenez | | | | | | | | |

**☒ PROPERTY REPORT ATTACHED FOR STOLEN, RECOVERED OR DAMAGED PROPERTY**   | 101 DAMAGED PROPERTY VALUE $

| REPORTING OFFICER | OFFICER ID | REVIEWED BY/DATE | ENTERED BY/DATE | ENTERED BY/DATE |
|---|---|---|---|---|
| Rubio, F | 5538 | RELATS 2019 7/26/19 | | |
| COPIES TO | | APR SENT: | APR CANCELLED: | DOJ-NCIC ENTERED | DOJ-NCIC CANCELLED |
| DA Inv Frost 7/30/ | | | | 072519/N5699 | |

Riverside County Sheriff-Incident Report Form A 435 (Revised 01-23-2018)

*Transcript Minutes!*

**CASH BOND**
RECOMMENDED:
$1,000,000.00
Warrant:

MICHAEL A. HESTRIN
DISTRICT ATTORNEY

AGENCY#: ME192060119/RSDP

**FILED**
Superior Court of California
County of Riverside
**09/26/2019**
KRISTEN OSTAPOVICH

SWF1900605

SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE
(Southwest)

THE PEOPLE OF THE STATE OF CALIFORNIA,

Plaintiff, | D.A.# 385425

v.

ONRE LEYVA
DOB: 3/1/1972

CASE NO.
FELONY COMPLAINT

*Altering date stamps!*

Defendant.

COUNT 1

The undersigned, under penalty of perjury upon information and belief, declares: That the above named defendant ONRE LEYVA committed a violation of Penal Code section 459, a felony, in that on or about 7/25/2019, in the County of Riverside, State of California, the defendant did willfully and unlawfully enter a certain building, to wit, an inhabited dwelling house, located at 24772 PARADISE MEADOWS RD, MENIFEE, with intent to commit theft and a felony. [2/4/6 prison]

It is further alleged that, except in an unusual case where the interest of justice would best be served within the meaning of California Rule of Court 4.413 subdivision (c), probation shall not be granted pursuant to Penal Code section 462, subdivision (a).

COUNT 2

That the above named defendant ONRE LEYVA committed a violation of Vehicle Code section 10851, subdivision (a), a FELONY, in that on or about 7/25/2019, in the County of Riverside, State of California, the defendant did willfully and unlawfully drive or take a certain vehicle, to wit, a LIC 51642R2, 1998 GMC, the property of another, without the consent of and with intent to deprive the owner of title to and possession of said vehicle. [16/2/3]

COUNT 3

That the above named defendant ONRE LEYVA committed a violation of Penal Code section 236, a felony, in that on or about 7/25/2019, in the County of Riverside, State of California, the defendant did willfully and unlawfully, by violence, menace, fraud, and deceit, violate the personal liberty of JOHN DOE (JL). [16/2/3]

Case #SWF1900605                    Filing Date 09/26/2019

## COUNT 4

That the above named defendant ONRE LEYVA committed a violation of Penal Code section 243, subdivision (e)(1), a misdemeanor, in that on or about 7/25/2019, in the County of Riverside, State of California, the defendant did willfully and unlawfully commit battery upon the person of JANE DOE (JJ), a spouse, person with whom the defendant is cohabitating, person who is the parent of defendant's child, non- cohabitating former spouse, fiance, fiancee, and a person with whom the defendant currently has, or previously had, a dating relationship. [1yr.]

### 1109 NOTICE

Pursuant to section 1109 of the Evidence Code, evidence of the defendant's commission of other acts of domestic violence may be admissible at trial in a criminal action in which the defendant is/are accused of an offense involving domestic violence. The People hereby give notice of the People's intent to admit evidence of prior acts of domestic violence pursuant to Evidence Code section 1109. These incidents include the prior incident(s) described in the police report, chronological report, and/or tapes already provided, and other alleged incidents of abuse, which will be provided as they are obtained by the prosecution.

### 1370 NOTICE

The People hereby notify defendant and defense counsel that the People intend to proceed under the provisions of Evidence Code section 1370 should the victim become unavailable at the time of trial.

### STRIKE PRIORS – 667(C) & (E)(2)(A) AND 1170.12(C)(2)(A)

It is further alleged that prior to the commission of the offense(s) charged herein the defendant, ONRE LEYVA, was convicted of two or more serious and violent felonies, within the meaning of Penal Code sections 667, subdivisions (c) and (e)(2)(A), and 1170.12, subdivision (c)(2)(a), to wit:

FIRST PRIOR, a conviction on or about 6/1/2011 in the Superior Court of the State of California, for the County of LOS ANGELES, for the crime of THREATS TO INJURE, in violation of Penal Code section 422, and

SECOND PRIOR, a conviction on or about 6/26/1995 in the Superior Court of the State of California, for the County of LOS ANGELES, for the crime of THREATS TO INJURE, in violation of Penal Code section 422.

It is further alleged that probation shall not be granted nor shall the execution and imposition of any sentence be suspended pursuant to Penal Code section 667 subdivision (c)(2).

Case #SWF1900605                         Filing Date 09/26/2019

## MARSY'S LAW

Information contained in the reports being distributed as discovery in this case may contain confidential information protected by Marsy's Law and the amendments to the California Constitution Section 28. Any victim(s) in any above referenced charge(s) is entitled to be free from intimidation, harassment, and abuse. It is unlawful for defendant(s), defense counsel, and any other person acting on behalf of the defendant(s) to use any information contained in the reports to locate or harass any victim(s) or the victim(s)'s family or to disclose any information that is otherwise privileged and confidential by law. Additionally, it is a misdemeanor violation of California Penal Code § 1054.2a(3) to disclose the address and telephone number of a victim or witness to a defendant, defendant's family member or anyone else. Note exceptions in California Penal Code § 1054.2a(a) and (2).

## DISCOVERY REQUEST

Pursuant to Penal Code section 1054.5, subdivision (b), the People are hereby informally requesting that defense counsel provide discovery to the People as required by Penal Code section 1054.3.

I declare under penalty of perjury upon information and belief under the laws of the State of California that the foregoing is true and correct.

                                                    Michael A. Hestrin
                                                    District Attorney

Dated: September 26, 2019


lpz                                                 By: Kimberly R. Dittrich
                                                    Deputy District Attorney

Superior Court of California, County of Riverside,
www.riverside.courts.ca.gov RC
4100 MAIN ST.
Riverside, CA 92501


People of the State of California
                  Vs.                    CASE NO.  SWF1900605
      ONRE LEYVA


                        MINUTE ORDER

========================================================
 Hearing set re: Setting of Trial Dates
 Date: 06/08/20      Time:   12:00 AM     Dept/Div: S304
========================================================
 Charges: 1) 459 PC, 1) 459 PC, 2) 10851(A) VC, 2) 10851(A) VC, 3) 236 PC
 3) 422 PC, 4) 243(E)(1) PC, 4) 422 PC, 5) 422 PC, 5) 236 PC, 6) 422 PC, 6)
 236 PC
 7) 243(E)(1) PC, 8) M273A(B) PC, 999) 667(A)(1) PC, 999) 667(A)(1) PC,
 999) 667(A)(1) PC
 999) 667(A)(1) PC

--------------------------------------------------------

 Honorable Judge Kelly L. Hansen, Presiding
 Courtroom Assistant: S. Holder
 Defendant is not present.
 Court reporter was not present for the following proceedings:
 Pursuant to general orders re: implementation of emergency relief
 authorized pursuant to Government Code section 68115, general orders re:
 implementation of statewide orders signed by the Chief Justice, and the
 statewide order made by the Chief Justice on March 23, 2020 -
 the court finds good cause to continue this matter
 Trial Readiness Conference set for 07/16/2020 at 9:00 in Department S201.
 Jury Trial set for 07/30/2020 at 9:00 in Department S201.
 Last day for trial to commence is 08/10/2020.
 Defendant is ordered to be present.
 Clerk to give notice.
 - - Custody Status/Information - -
 Remains remanded to custody of Riverside Sheriff.
 Bail to Remain as fixed.
 Hearing on 07/28/2020 at 8:30 for JT is Vacated.
 Hearing on 6/29/20 at 8:30 for TRC is vacated.
 Save Minute Order to case.
 Minute Order printed to Southwest Detention Center
 Minute Order printed to Southwest Detention Center

*not present or these two days while in Limine preparing for trial, without my consent and misleading magistrate*

CR099

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE | FOR COURT USE ONLY |
|---|---|

STREET ADDRESS: 30755-D AULD ROAD STE 1226

MAILING ADDRESS:

CITY AND ZIP CODE: MURRIETA, CA 92563

BRANCH NAME:

PEOPLE OF THE STATE OF CALIFORNIA

vs.

DEFENDANT:   ONRE LEYVA
9363 DINSDALE ST
DOWNEY, CA 90240



F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

JUN 1 1 2020

WMS   M. Hobdy

CASE NUMBER

SWF1900605

### NOTICE OF APPEARANCE INFORMATION

| Date | Time | Department |
|---|---|---|
| 7/16/2020 | 9:00 AM | S201 |

Please be advised that your matter was continued and a court appearance will be necessary on the new court date reflected above. Only parties and their attorneys will be allowed into the court facility on the day of the hearing; all other members of the public will not be permitted to enter the building.

Pursuant to the General Order [2020-21] of the Presiding Judge, all persons entering a courthouse shall, at all times, wear a face covering and maintain six feet of physical distance from all other persons. We are also requesting that you **please bring a pen with you to court.**

**NOTE:** The Sheriff's Department will turn away anyone not wearing a face covering prior to security screening.

For more information on the court's response to the Coronavirus, go to www.riverside.courts.ca.gov and click on the red


Interpreter services are available upon request. If you need an interpreter, please complete and submit the online Interpreter Request Form (www.riverside.courts.ca.gov/interpreter/form_IN007.pdf) or contact the clerk's office and verbally request an interpreter. All requests must be made in advance with as much notice as possible, and prior to the hearing date in order to secure an interpreter.


Assistive listening systems, computer-assisted real time captioning, or sign language interpreter services are available upon request if at least 5 days notice is provided. Contact the Office of the ADA Coordinator by calling (951) 777-3023 or TDD (951) 777-3769 between 8:00 am and 4:30 pm or by emailing ADA@riverside.courts.ca.gov to request an accommodation. A *Request for Accommodations by Persons With Disabilities and Order* (form MC-410) must be submitted when requesting an accommodation. (Civil Code section 54.8.)

### CERTIFICATE OF MAILING

I certify that I am currently employed by the Superior Court of California, County of Riverside, and that I am not a party to this action or proceeding. In my capacity, I am familiar with the practices and procedures used in connection with the mailing of correspondence. Such correspondence is deposited in the outgoing mail of the Superior Court. Outgoing mail is delivered to and mailed by the United States Postal Service, postage prepaid, the same day in the ordinary course of business. I certify that I served a copy of the foregoing Notice of Appearance Information on this date, by depositing said copy as stated above.

Date: 06/11/20

MOENA E HOBDY

Deputy Clerk

Page 1 of 1

Riverside Superior Court
CR099 (Rev. 06/04/20)
Reprint: MU

NOTICE OF APPEARANCE INFORMATION

*placed in minutes*
*instead of my appearance*



**SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE**

STREET ADDRESS:  30755-D AULD ROAD STE 1226

MAILING ADDRESS:

CITY AND ZIP CODE:  MURRIETA, CA 92563

BRANCH NAME:

CR099

FOR COURT USE ONLY

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

JUN 1 1 2020

ALYSIA MERLO

**PEOPLE OF THE STATE OF CALIFORNIA**

vs.

DEFENDANT:  ONRE LEYVA
9363 DINSDALE ST
DOWNEY, CA 90240

CASE NUMBER:

SWF1900605

**NOTICE OF APPEARANCE INFORMATION**

| Date  7/30/20 | Time  9:00 | Department  S201 |
|---|---|---|

Please be advised that your matter was continued and a court appearance will be necessary on the new court date reflected above. Only parties and their attorneys will be allowed into the court facility on the day of the hearing; all other members of the public will not be permitted to enter the building.

Pursuant to the General Order [2020-21] of the Presiding Judge, all persons entering a courthouse shall, at all times, wear a face covering and maintain six feet of physical distance from all other persons. We are also requesting that you **please bring a pen with you to court.**

**NOTE:** The Sheriff's Department will turn away anyone not wearing a face covering prior to security screening.

For more information on the court's response to the Coronavirus, go to www.riverside.courts.ca.gov and click on the red



Interpreter services are available upon request.  If you need an interpreter, please complete and submit the online Interpreter Request Form (www.riverside.courts.ca.gov/Interpreter/form_IN007.pdf) or contact the clerk's office and verbally request an interpreter. All requests must be made in advance with as much notice as possible, and prior to the hearing date in order to secure an interpreter.

Assistive listening systems, computer-assisted real time captioning, or sign language interpreter services are available upon request if at least 5 days notice is provided.  Contact the Office of the ADA Coordinator by calling (951) 777-3023 or TDD (951) 777-3769 between 8:00 am and 4:30 pm or by emailing ADA@riverside.courts.ca.gov to request an accommodation.  A *Request for Accommodations by Persons With Disabilities and Order* (form MC-410) must be submitted when requesting an accommodation.  (Civil Code section 54.8.)

**CERTIFICATE OF MAILING**

I certify that I am currently employed by the Superior Court of California, County of Riverside, and that I am not a party to this action or proceeding. In my capacity, I am familiar with the practices and procedures used in connection with the mailing of correspondence. Such correspondence is deposited in the outgoing mail of the Superior Court. Outgoing mail is delivered to and mailed by the United States Postal Service, postage prepaid, the same day in the ordinary course of business. I certify that I served a copy of the foregoing Notice of Appearance Information on this date, by depositing said copy as stated above.

Date: 06/11/20

ALYSIA MERLO

Deputy Clerk

Page 1 of 1

Riverside Superior Court
CR099 [Rev. 06/04/20]
Reprint: MU

**NOTICE OF APPEARANCE INFORMATION**

77

*[handwritten: Hears peoples trial briefs and motions in limine (NOT WHAT WAS PRESENTED IN PRELIMS ANY NEW QUESTIONING WHETHER HE IS GOING TO TRY THE CASE. PASSES IT ONTO RETIRED JUDGE]*

Superior Court of California, County of Riverside,
www.riverside.courts.ca.gov RC
4100 MAIN ST.
Riverside, CA 92501

People of the State of California
                    Vs.                    CASE NO.  SWF1900605
          ONRE LEYVA

                        MINUTE ORDER

====================================================================
Trial Readiness Conference
Date: 07/16/20    Time:   12:00 AM    Dept/Div: S201
====================================================================
Charges:  1) 459 PC, 1) 459 PC, 2) 10851(A) VC, 2) 10851(A) VC, 3) 236 PC
3) 422 PC, 4) 243(E)(1) PC, 4) 422 PC, 5) 422 PC, 5) 236 PC, 6) 422 PC, 6)
236 PC
7) 243(E)(1) PC, 8) M273A(B) PC, 999) 667(A)(1) PC, 999) 667(A)(1) PC,
999) 667(A)(1) PC
999) 667(A)(1) PC

--------------------------------------------------------------------

Honorable Judge F. Paul Dickerson, Presiding
Courtroom Assistant: J. Rachman
Court Reporter: O. Schaaf
People represented by Deputy District Attorney: Kim Dittrich.
Defendant represented by DPD Mark Davis.
Defendant Present.
At 9:49 the following proceedings were held:
Hearing on 07/30/2020 at 9:00 for JT in Dept. S201 is Confirmed.
Time estimate for jury trial 10 day(s).
Last day for trial to commence is 08/11/2020.
Defendant ordered to return on any and all future hearing dates.
- - Custody Status/Information - -
Remains remanded to custody of Riverside Sheriff.
Bail to Remain as fixed.
Minute Order printed to Southwest Detention Center
Save Minute Order to case.

*[handwritten: -not present]*

*[handwritten: Then going before Judge Paul F Dickerson Deputy Public Defender!! w Mark C Davis will have a video conference using criminal intimidation to try and get me to plea!]*

Superior Court of California, County of Riverside,
www.riverside.courts.ca.gov RC
4100 MAIN ST.
Riverside, CA 92501


People of the State of California
            Vs.                    CASE NO.  SWF1900605
        ONRE LEYVA

                    MINUTE ORDER
===================================================================
Jury Trial
Date: 07/30/20      Time:   12:00 AM   Dept/Div: S201
===================================================================
Charges: 1) 459 PC, 1) 459 PC, 2) 10851(A) VC, 2) 10851(A) VC, 3) 236 PC
3) 422 PC, 4) 243(E)(1) PC, 4) 422 PC, 5) 422 PC, 5) 236 PC, 6) 422 PC, 6)
236 PC
7) 243(E)(1) PC, 8) M273A(B) PC, 999) 667(A)(1) PC, 999) 667(A)(1) PC,
999) 667(A)(1) PC
999) 667(A)(1) PC

-------------------------------------------------------------------
Honorable Judge F. Paul Dickerson, Presiding
Courtroom Assistant: J. Rachman
Court Reporter: O. Schaaf
People represented by Deputy District Attorney: Kim Dittrich.
Defendant represented by DPD Mark Davis.
Defendant Present.
At 10:56 the following proceedings were held:
Jury Trial Trails to 08/03/2020 at 9:00 in Dept. S201
Last day for trial to commence is 08/11/2020.
Defendant ordered to return on any and all future hearing dates.
- - Custody Status/Information - -
Remains remanded to custody of Riverside Sheriff.
Bail to Remain as fixed.
Minute Order printed to Southwest Detention Center
Save Minute Order to case.

*[handwritten: Not present and Judge Paul F Dickerson is going to pass the case on to Retired Judge Bonnie Dumanis Why!]*

Superior Court of California, County of Riverside,
www.riverside.courts.ca.gov RC
4100 MAIN ST.
Riverside, CA 92501


People of the State of California
Vs.                      CASE NO.   SWF1900605
ONRE LEYVA

MINUTE ORDER

================================================================
  Jury Trial Trailing
  Date: 08/03/20      Time:    12:00 AM    Dept/Div: S201
================================================================
Charges:  1) 459 PC, 1) 459 PC, 2) 10851(A) VC, 2) 10851(A) VC, 3) 236 PC
3) 422 PC, 4) 243(E)(1) PC, 4) 422 PC, 5) 422 PC, 5) 236 PC, 6) 422 PC, 6)
236 PC
7) 243(E)(1) PC, 8) M273A(B) PC, 999) 667(A)(1) PC, 999) 667(A)(1) PC,
999) 667(A)(1) PC
999) 667(A)(1) PC

----------------------------------------------------------------

Honorable Judge F. Paul Dickerson, Presiding
Courtroom Assistant: J. Rachman
Court Reporter: O. Schaaf
People represented by Deputy District Attorney: Kimberly Dittrich.
Defendant represented by DPD Mark Davis.
Defendant Present.
At 9:21 the following proceedings were held:
All parties announce ready for Trial.
MATTER REASSIGNED TO DEPT S202.
Jury Trial set for 08/03/2020 at 9:30 in Department S202.
Time estimate for jury trial 10 day(s).
Last day for trial to commence is 08/11/2020.
Defendant ordered to return on any and all future hearing dates.
- - Custody Status/Information - -
Remains remanded to custody of Riverside Sheriff.
Save Minute Order to case.

Superior Court of California, County of Riverside,
www.riverside.courts.ca.gov RC
4100 MAIN ST.
Riverside, CA 92501

People of the State of California
Vs.                           CASE NO.   SWF1900605
ONRE LEYVA

MINUTE ORDER

===========================================================================
 Jury Trial
 Date: 08/03/20     Time:   12:00 AM    Dept/Div: S202
===========================================================================
 Charges:  1) 459 PC, 1) 459 PC, 2) 10851(A) VC, 2) 10851(A) VC, 3) 236 PC
 3) 422 PC, 4) 243(E)(1) PC, 4) 422 PC, 5) 422 PC, 5) 236 PC, 6) 422 PC, 6)
 236 PC
 7) 243(E)(1) PC, 8) M273A(B) PC, 999) 667(A)(1) PC, 999) 667(A)(1) PC,
 999) 667(A)(1) PC
 999) 667(A)(1) PC

---------------------------------------------------------------------------

 Honorable Judge Bonnie Dumanis, Presiding
 Courtroom Assistant: N Baltazar
 Court Reporter: O. Hutcheson
 People represented by Deputy District Attorney: Kim Dittrich.
 Defendant represented by DPD Mark Davis.
 Defendant Present.
 Court and Counsel Confer regarding: unreported in chamber conference held.

 At 11:39 the following proceedings were held:
 Court has read and considered all moving documents filed.
 Arguments
 and Rulings as stated on the record.
 Motion in Limine re: The Defendants prior Act under EC 1109 is called for
 hearing.
 Defense oppose.
 Motion/Petition granted.
 Court's rulings are stated on the record.
 Motion In Limine re: II. Expert Testimony Regarding DV is Admissible is
 called for hearing.
 Motion/Petition granted.
 Oral motion by Defense Re dress out order is called for hearing
 Motion/Petition granted.
 Counsels and defendant ordered to return at 14:00.
 Court in recess at 12:10.
 Save Minute Order to case.
 At 15:37 the following proceedings were held:
 All parties previously present are again Present in Court.
 Defendant Present.
 Defendant addresses the court re: Marsden.
 Save Minute Order to case.
 Jury Trial (In-Progress) adjourned to 08/04/2020 at 9:00 Dept S202

Mark C Davis - we have no case!.
Judge Bonnie Dumanis - need witnesses
Allows LIMINE without my
Permission

- Compare to supplemental report.
- Slight subtle changes
- Altered report from Police report

**Circumstances of the Offense:**

Agency: Riverside County Sheriff's Department

Report Number: ME192060119

     The Court, having heard testimony in trial, is familiar with the circumstances surrounding the offense. The following is a summary of the available crime reports and may not accurately reflect testimony and evidence brought forth during trial.

     On July 25, 2019, at 9:50 p.m., a deputy with the Riverside County Sheriff's Department was dispatched to _____ , within Riverside County in reference to a vehicle being taken without the owner's consent. Upon arrival, the deputy contacted the victim, Jane Doe (J.J.), and the following is a summary of her statement:

     Jane Doe (J.J.) said was having dinner and drinks at Stadium Pizza in the City of Lake Elsinore, with her son John Doe (J.L.), daughter Jane Doe (A.J.), friend John Doe (L.T.), and Onre Leyva, later identified as the defendant. The defendant began to act aggressively by screaming and saying random things. Jane Doe (J.J.) decided it was time to go home and told everyone to get in the vehicle.

     As Jane Doe (J.J.) was driving home, the defendant was sitting in the back-passenger seat behind the driver seat. The defendant began screaming, pulling Jane Doe's (J.J.) hair, and punching her in the head. Jane Doe (J.J.) pulled over because she felt she would lose control of the vehicle while the defendant assaulted her. Jane Doe (J.J.) stopped the vehicle and opened the driver side door. The defendant also opened his door and exited the vehicle. The defendant grabbed Jane Doe (J.J.) and pulled her out of the vehicle, knocking her to the ground. The defendant got into the driver's seat and drove away with John Doe (J.L.), Jane Doe (A.J.), and John Doe (L.T.) still inside the vehicle. Jane Doe (J.J.) attempted to contact John Doe (J.L.) via phone after being left on the side of the road, but was unsuccessful.

     Jane Doe (J.J.) indicated that after approximately 45 minutes, John Doe (J.L.) returned to her location with Jane Doe (A.J.) and John Doe (L.T.) in the vehicle she was previously driving. John Doe (J.L.) told Jane Doe (J.J.) the defendant took several items from the residence and drove away in Jane Doe's (J.J.) _____ Jane Doe (J.J.) told the deputy the truck belongs to her and she did not give the defendant permission to drive it. Jane Doe desired prosecution against the defendant for taking her vehicle. Jane Doe (J.J.) declined both medical attention and the issuance of an Emergency Protective Order (EPO).

     Jane Doe (J.J.) said approximately three weeks prior, the defendant made contact with John Doe (J.L.) and told him about his poor living conditions in Downey, CA. John Doe (J.L.) felt bad for the

1  defendant and mentioned it to Jane Doe (J.J.), who decided to drive to Downey and pick up the
2  defendant from his homeless camp. Jane Doe (J.J.) drove the defendant to her home in Menifee, where
3  he had been staying for approximately three weeks. Jane Doe (J.J.) and the defendant have three
4  children together. They were married from 1999 to 2003 and are currently divorced. The defendant has
5  been homeless for several years. Jane Doe (J.J.) said the defendant has been physical with her various
6  times in the past.

7       The deputy spoke to John Doe (J.L.), who provided a similar account of the incident. John Doe
8  (J.L.) said the defendant behaved aggressively at Stadium Pizza and as they were driving home, the
9  defendant began yelling and hitting Jane Doe (J.J.). He said the defendant pulled Jane Doe (J.J.) out of
10 the vehicle and drove them away, leaving Jane Doe (J.J.) on the side of the road. The defendant drove
11 them to Jane Doe's (J.J.) residence where he took Jane Doe's (J.J.) GMC truck and drove away.

12      The deputy spoke to John Doe (L.T.), who provided a similar account of the incident. John Doe
13 (L.T.) said he saw the defendant hit Jane Doe (J.J.) several times in the head when he was inside the
14 vehicle. John Doe (L.T.) said the defendant pulled Jane Doe (J.J.) out of the vehicle and drove them to
15 her residence where he took her GMC truck and drove away. John Doe (L.T.) was afraid of the
16 defendant because he continued to say he was going to kill everyone in the vehicle. The deputy
17 attempted to contact the defendant via phone but was unsuccessful.

18      On August 12, 2019, Jane Doe (J.J.) reported to police that John Doe (L.T.) informed her that her
19 GMC truck had been left parked and locked in front of her residence. John Doe (L.T.) did not see who
20 dropped off the vehicle. Deputies were unable to obtain any evidence from the vehicle.

21      An arrest warrant was signed by the Honorable Judge Gallon on October 4, 2019, and the
22 defendant was arrested on December 24, 2019.

23

24 **Criminal Record:**

25 CII: A08531309                FBI: 606165XA4              OLN: A5724017 (Valid)

26 CDC: AH08617                  DJJ/CYA: N/A

27      The following criminal history information was acquired from Riverside, San Bernardino,
28 Orange, San Diego County Superior Courts, Riverside County Probation, local law enforcement, DMV,
29 CII, and FBI records.

30
31
32

*Very important because in Discovery they were afraid because they didn't know where I was taking them until I got to the house. Shows silence by me on the way home.*

RCP-113, 06/17              PROBATION OFFICER'S SENTENCING RECOMMENDATION

Court of Appeal, Fourth Appellate District, Division Two
Kevin J. Lane, Clerk/Executive Officer
Electronically FILED on 12/7/2022 by S. DeLeon, Deputy Clerk

COURT OF APPEAL -- STATE OF CALIFORNIA
FOURTH DISTRICT
DIVISION TWO

## ORDER

In re ONRE EMMET LEYVA

on Habeas Corpus.

E079769

(Super.Ct.No. SWF1900605)

The County of Riverside

THE COURT

The petition for writ of habeas corpus is DENIED.

SLOUGH
Acting P. J.

Panel: Slough
Raphael
Menetrez

cc:    See attached list

EXHIBIT A · I AM INNOCENT                    Chire Leyva BM4448
                                                                8/9/22  ①

Dear Court of Appeal, 4th Appellate District, Division 2
          . Thank you so very much for your response to
my inquiry about appeal # E075948. On that appeal
after being denied my Marsden Hearing and given a Bi-furcated
unfair trial, I pleaded on that form on front and back that
the evidence exhibited in a falsified tampered Police
report and Discovery was used to falsify testimony and
suppress evidence and to deny me my Due Process and
Effective Counsel for a Dismissal during Preliminary
Hearings when they knew I was telling the truth by
conversations and letters I had expressed to them while
maintaining my Innocence throughout this entire process
          Officer Freddy Rubio (5538) acting outside
his jurisdiction was called to a Stolen Vehicle Report and
I left home on 7/25/2019 because I was being mentally
and emotionally abused by Jennifer Jimenez my ex-wife,
so when she asked me not to say anything to offend Logan
Thompson that night I said why would I do that. It turns
out they'd be talking about my daughter that night and
on the way home I said no need to disrespect my
daughter like that, look at the predicament you're in.
Jennifer pulled the car over, opened up my back door

PLEASE SHOW THIS TO HIGHER UP, OR LET ME SEE IT FREE TO
OTHERS                    ACTING P.J.                    6/9/22

and asked me to get out, where I replied, you mean
I can't even have an opinion, so when I refused, she
went to the back of the car to call the police and that's
when I hopped in the front seat and left her on the
side of the road for the first time during our 35 years
of me falling victim to Domestic Violence all my falsified
police reports and allegations and criminal convictions
given my criminal history. I want to put a stop once
and for all to being the scapegoat for other peoples actions.

        In the following pages you will find why I believe
the evidence speaks for itself and this is why it was never
~~shown~~ shown or given to me until (7/30) (a key date at the
bottom of the report by DA FROST with no year because
officer freddy Rubio (5538) was asked to add to that report
days before going to trial with Retired Judge Bonnie Dumanis
because Judge F Paul Dickerson did not want to try this case
because in Preliminary Hearings he allowed a flawed investiga-
to be used to coach officer Freddy Rubio (5538) to falsify testimo-
that a criminal threat was made when Body Cam DVR Bwc
footage limits his report to a Stolen Vehicle Report, Kidnap,
Domestic Violence, exceptional (closed, placed in locker unti
added too by Discovery and falsified for D.A. Kimberly

PLEASE SHOULD THERE ACCIDENTLY BE INCITED
OTHERS                                    ACTING P.J.                    Conceja BM 4998
                                                                          8/9/22        ③

Dittrich to change the Narrative and make me out to
look violent and Tributarily Tax me, Ostracize Me,
(a form of evil) to cause criminal intimidation and
overwhelming amount of grief at the advisement of
Deputy Public Defender Mark Davis and D.A. Michael
Hestrin.) Everybody got their hands on this case and
so I continue to cry help with the Department of
Justice and State Bar so I can be re-imbursed and
settled for Physical, Mental, Emotional, livehood,
losing my loved ones and incarceration. Using
Calcrims and Evidence Codes to Stipulate Jury Instructions
bewilder me until this day when declared a Mistrial,
I was sentenced to 9 (nine) years (4+5 yr enhancement
where I believe Senate Bill 1393 should have never allowed it
        Riverside County Superior Court used Domestic
Vidence, coercion, witness tampering, falsified police
reports and Discoveries de Tributarily Ostracize Me
and victimize me to undergo a mild stroke while placin
my life in danger by incarcerating me. (I wasted you've
heard of being taxed, while you're being taxed now, you don't
want to play ball with the D.A., then you'll be sitting in prison

PLEASE HAND TO JUDGE ASSIGNED OR OTHERS _____ ACTING P.J. Dave Leyva BMI4468 8/9/22 ④
appealing your case.)

Your Honor of the 4th Appellate District, Division 2, I believe this is why appeal# E075948 had "StopNotice" assigned by appeal# E075983 because Direct Appeal Attorney Jeffrey S Kross was assigned exclusively to court appointed criminal cases for the last 30 years for a reason. To only be able to go off Trial Transcripts when Police Report/Discovery was suppressed but yet used as exhibits to change the Narrative to convict me of crimes I should be exhonerated for and re-imbursed for my time and suffering Physical, Mental, Emotional, livelihood, Family, mild Stroke and who know what else has come out of this other than missappropriation of county and State Funds and Violations of State and Federal Ammendment Rights so honestly deserved. Please Rectify this Situation on my behalf and settle case SWF1900605, Appeal# E075983 (S272996 En Banc) Sincerely yours,
- Dave F. Leyva 8/9/22 X Gene S. Leyva ☹

ONRE LEYVA #2019S023|
30155-B AULD ROAD
MURRIETA CA 92563

SN BERNARDINO CA 923

14 SEP 2020 PM 7

Barn Swallow

RECEIVED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

SEP 16 2020

APPEALS

SUPERIOR COURT
4050 MAIN STREET
RIVERSIDE CA 92501

ATTN: LEGAL MAIL (CR-120 APPEAL FORM. IN ISTANTLY)
92502-9202250 FILLED OUT COMPLETELY

SUPREME COURT
FILED

Court of Appeal, Fourth Appellate District, Division Two - No. E075983    MAR - 9 2022

Jorge Navarrete Clerk

S272996

Deputy

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

THE PEOPLE, Plaintiff and Respondent,

v.

ONRE LEYVA, Defendant and Appellant.

The petition for review is denied.

CANTIL-SAKAUYE

*Chief Justice*

Under the American Disability and Rehabilitation
Act. I am under distress and wish court to
appoint counsel for Probable cause evidentiary
Ohve Leyva                                      hearing
                                                thank you
                                                Kindly

DECLARATION OF _____ SUPPORTING HIS/HER

MOTION FOR SUBSTITUTION OF COUNSEL

I, _____, HEREBY DECLARE:

1.)  That I am the defendant/declarent in the within cause of action and I am a lay person untrained in the law;

2.)  That declarent is represented by counsel who has failed and/or refused to provide adequate representation in the within cause of action;

3.)  That due to conflicts which exist between declarent and counsel, declarent can not and will not receive adequate representation by counsel of record in the within cause of action;

4.)  That at the hearing on this motion declarent will provide the necessary evidence to support the claim herein alleged;

5.)  That due to the lack of adequate representation by counsel, declarent has suffered prejudice such as to justify dismissal of charges currently pending, or in the alternative to enjoy the substitution of counsel;

6.)  That in addition to any evidence presented in support of this motion at the evidentiary hearing on the within matter, declarent does hereby incorporate by reference each and every statement following which has the box preceding same marked:

☑        (a)  Counsel has failed and/or refused to confer with declarent concerning the preparation of the defense;

☑        (b)  Counsel has failed and/or refused to communicate with declarent;

-3-

☑ (c)  Counsel did fail and/or refused to subpoena witnesses favorable to the defense and deprived declarant of the testimony critical to the defense;

☑ (d)  Counsel has failed and/or refused to perform and/or to have performed investigation(s) critical and necessary to the defense;

☑ (e)  Counsel has failed and/or refused to present/ prepare an affirmative defense at declarent's preliminary hearing;

☑ (f)  Counsel has failed and/or refused to secure and present expert witness(es) critical to the defense;

☑ (g)  Counsel has failed and/or refused to prepare and file motion(s) critical to the defense;

☑ (h)  Counsel has failed and/or refused to impeach prosecution witness(es);

☑ (i)  Counsel has failed and/or refused to present evidence at motion/writ hearings critical to defense;

☑ (j)  Counsel has failed and/or refused to declare prejudice and/or conflict against declarant and due to said failure has taken on the role of a surrogate prosecutor against declarant's interest;

-4-

(k)   Other. Violation of State / Federal
6th and 14th commendment
rights to effective counsel and
due process. Please provide.
Counsel. I'm Under Diress!

DATED 5/23/23                    _____
                                      DEFENDANT
                                Anne Leyva

I am not well and suffered a
mild stroke while being maliciously
prosecuted by the Riverside Superior Court.

No. E075983

IN THE SUPREME COURT

FOR THE STATE OF CALIFORNIA

---

PEOPLE OF THE STATE OF CALIFORNIA,
*Plaintiff and Respondent,*

v.

ONRE LEYVA,
*Defendant and Appellant.*

---

Appeal from the Superior Court of California
County of Riverside No. SWF1900605
Honorable Bonnie Dumanis, Judge

---

**PETITION FOR REVIEW
TO EXHAUST STATE REMEDIES**

---

TO THE HONORABLE TANI CANTIL-SAKAUYE, CHIEF
JUSTICE, AND THE HONORABLE JUSTICES OF THE
SUPREME COURT:

Pursuant to Rule 8.508, California Rules of Court, appellant Onre Leyva hereby petitions this court to grant review from the unpublished opinion filed by Division Two of the Fourth District Court of Appeal in the above entitled appeal on January 3, 2022. (The Court of Appeal's opinion is attached hereto as an appendix.) This case presents no grounds for review under Rule 8.500(b), California Rules of Court, and the petition is filed solely to exhaust state remedies for federal habeas corpus purposes.

Appellant did not file a petition for rehearing.

**STATEMENT OF THE UNDERLYING PROCEEDINGS**

Appellant Onre Leyva was charged in an information, filed on February 28, 2020, with first degree burglary (Pen. Code, §

*Jeffrey S Kross all along knew how he was going to approach direct appeal and when seeing evidence of police report and discovery refuses to write review.*

459) [count 1][1]; unlawfully driving or taking a vehicle (Veh. Code, § 10851, subd. (a)) [count 2]; making criminal threats (§ 422) against, respectively, Jacob Leyva and Logan Thompson [counts 3 & 4]; falsely imprisoning (§ 236), respectively, Jacob Leyva and Logan Thompson [counts 5 & 6]; misdemeanor battery against Jennifer J., a spouse/cohabitant (§ 273, subd. (e)(1)) [count 7]; and misdemeanor child abuse/neglect of A.J. (§ 273a, subd. (b)) [count 8]. The information alleged that appellant had prior serious felony convictions for violating section 422 in 1995 and 2011 for purposes of the three strikes laws (§§ 667, subd. (c), (e) & 1170.12, subd. (c) and section 667, subdivision (a)(1). (Clerk's Transcript on Appeal, vol. 1 of 1 ["CT"], pp. 19-22.)

Jury trial began on August 4, 2020 and the court granted the People's motion to dismiss the 1995 serious felony conviction allegation. (CT 102.)

On August 14, 2020, the jury acquitted appellant on counts 1, 3, 5, and 6, convicted him on counts 4, 7, and 8, and hung on count 2 and the lesser included offense of count 6. In a bifurcated court trial, the court found appellant's 2011 prior conviction true. (CT 143-145, 149-157.)

The court sentenced appellant to nine years in state prison on October 22, 2020, consisting of the middle term of two years on count 4 (§ 422), doubled to four years, plus five years pursuant to section 667, subdivision (a)(1). The court imposed concurrent 365-day and 180-day terms on counts 7 and 8, awarded appellant presentence credit for 304 actual days and 304 days local conduct credits, waived all fines, fees, and assessments, and granted the People's motion to dismiss count 2. (CT 267-268, 295-296.)

The Court of Appeal filed an unpublished opinion on

---

1. Unless otherwise designated, further statutory references are to the Penal Code.

January 3, 2022 and affirmed the judgment.  (See Opinion at appendix.)

## STATEMENT OF FACTUAL AND
## LEGAL BASES OF CLAIMS

### I.  Appellant's Conviction For Making A Criminal Threat Was Not Supported By Sufficient Evidence, In Violation Of His Constitutional Rights To Due Process.

The court instructed the jury that to convict appellant of making a criminal threat under section 422, the People had to prove, as relevant (1) appellant willfully threatened to unlawfully kill or unlawfully cause great bodily injury to Logan Thompson; (2) appellant made the threat orally; (3) appellant intended that his statement be understood as a threat to Thompson; (4) the threat was so clear, immediate, unconditional, and specific that it communicated to Thompson a serious intention and immediate prospect that the threat would be carried out; (5) the threat actually caused Thompson to be in sustained fear for his safety; and (6) Thompson had fear that was reasonable under the circumstances.  (CALCRIM No. 1300; CT 208; see also *People v. Toledo* (2001) 26 Cal.4th 221, 227-228 [listing elements of offense].)

This court has held: "With respect to the requirement that a threat be 'so unequivocal, unconditional, immediate, and specific as to convey to the person threatened a gravity of purpose and an immediate prospect of execution of the threat,' we['ve] explained . . . that the word 'so' in section 422 meant that ' "unequivocality, unconditionality, immediacy and specificity are not absolutely mandated, but must be sufficiently present in the threat and surrounding circumstances . . . ." ' " (*In re George T.* (2004) 33 Cal.4th 620, 635.)

"While [section 422] requires the threat to convey ' "a gravity of purpose and an immediate prospect of execution of the

6

- All this over a trivial conflict that was made.
- LOOK AT ALL THIS DOMESTIC VIOLENCE EXTREMISM PUT ON BY PROSECUTION AND COUNSEL. HELP :(

## INTRODUCTION

After getting into an argument with his ex-wife in the car with his two children and his son's friend, appellant hit his ex-wife in the head, pulled her out of the car after she parked, and left her on the side of the road. He then drove erratically with the three passengers inside the car and threatened to kill them. He was convicted of domestic abuse, criminal threats, and child endangerment. The trial court sentenced him to nine years in state prison.

On appeal, appellant argues his convictions for making a criminal threat and child endangerment should be reversed because they were not supported by sufficient evidence. Appellant's claims should be rejected. The convictions are amply supported by substantial evidence because appellant threatened to kill the occupants of the car while driving erratically after having abused his ex-wife and abandoning her on the side of the road. Under those circumstances, appellant committed a criminal threat against his son's friend and endangered his daughter by causing her mental suffering in a criminally negligent manner.

Appellant also contends that the court incorrectly instructed the jury that it could consider domestic violence propensity evidence for counts relating to his son's friend, who did not qualify as a victim of domestic violence. Appellant forfeited this claim by stipulating to the instruction. On the merits, the jury was properly instructed because the charged crimes involved domestic violence and his son's friend was present for those

7

ocument received by the CA 4th District Court of Appeal Division 2.

No. E075983

IN THE COURT OF APPEAL FOR THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT, DIVISION TWO

—————————

PEOPLE OF THE STATE OF CALIFORNIA,
*Plaintiff and Respondent,*

v.

ONRE LEYVA,
*Defendant and Appellant.*

—————————

Appeal from the Superior Court of California
County of Riverside No. SWF1900605
Honorable Bonnie Dumanis, Judge

—————————

## APPELLANT'S OPENING BRIEF

—————————

### STATEMENT OF APPEALABILITY

This appeal is from a judgment after a jury trial that finally disposes of all issues between the parties and is authorized by Penal Code section 1237, subdivision (a).[1]

### INTRODUCTION

Driving home after a dinner out with his ex-wife Jennifer, with whom he had been living at the time, and other family members, as well as with family friend Logan Thompson, appellant Onre Leyva got into an argument with Jennifer. After a physical altercation outside Jennifer's car, appellant got into the car and drove away, leaving Jennifer on the side of the road. As he was driving back to their house, appellant began blurting

—————————

1. All further statutory references are to the Penal Code, unless otherwise indicated.

out threats to kill everyone in the car.  He made these statements as if he were just thinking out loud, and did not direct them at any particular person.  Because these statements were not sufficiently clear, immediate, unconditional, or specific, they did not qualify as criminal threats for which appellant was convicted of violating section 422.

Moreover, the court erroneously instructed the jury that it could consider the proven facts of appellant's prior domestic violence-related convictions as proving it was likely that appellant made a criminal threat to Logan Thompson, who was not a current victim of domestic violence as statutorily defined.

Finally, the prosecution failed to present sufficient evidence to support a conviction for misdemeanor child abuse with respect to appellant's minor daughter A.J., who was in the car during the incident but who did not testify.

## STATEMENT OF THE CASE

Appellant Onre Leyva was charged in an information, filed on February 28, 2020, with first degree burglary (§ 459) [count 1]; unlawfully driving or taking a vehicle (Veh. Code, § 10851, subd. (a)) [count 2]; making criminal threats (§ 422) against, respectively, Jacob Leyva and Logan Thompson [counts 3 & 4]; falsely imprisoning (§ 236), respectively, Jacob Leyva and Logan Thompson [counts 5 & 6]; misdemeanor battery against Jennifer J., a spouse/cohabitant (§ 273, subd. (e)(1)) [count 7]; and misdemeanor child abuse/neglect of A.J. (§ 273a, subd. (b)) [count 8].  The information alleged that appellant had prior serious felony convictions for violating section 422 in 1995 and 2011 for purposes of the three strikes laws (§§ 667, subd. (c), (e) & 1170.12, subd. (c)) and section 667, subdivision (a)(1).  (Clerk's Transcript on Appeal, vol. 1 of 1 ["CT"], pp. 19-22.)

Jury trial began on August 4, 2020 and the court granted the People's motion to dismiss the 1995 serious felony conviction

CHRONOLOGICAL INDEX OF WITNESSES

PLAINTIFF'S WITNESSES                                    PAGE  VOLUME

THOMPSON, LOGAN WILLIAM
     Direct Examination by Ms. Dittrich            120    1
     Cross-Examination by Mr. Davis                166    1
     Redirect Examination by Ms. Dittrich          188    1
     Recross-Examination by Mr. Davis              189    1
     Examination by the Court                      190    1

LAMBERTA, LINDSAYP
     Direct Examination by Ms. Dittrich            194    1

DERILO, ROBERTA
     Direct Examination by Ms. Dittrich            208    1
     Cross-Examination by Mr. Davis                219    1

RUBIO, FREDDY
     Direct Examination by Ms. Dittrich            224    1
     Cross-Examination by Mr. Davis                234    1
     Redirect Examination by Ms. Dittrich          238    1
     Recross-Examination by Mr. Davis              239    1
     Further Redirect Examination by Ms. Dittrich  241    1
     Further Recross Examination by Mr. Davis      242    1

VERA, PEDRO
     Direct Examination by Ms. Dittrich            243    1

RICE, FRANK
     Direct Examination by Ms. Dittrich            247    1

CORNETT, ROBERT
     Direct Examination by Ms. Dittrich            279    2
     Cross-Examination by Mr. Davis                304    2
     Redirect Examination by Ms. Dittrich          311    2
     Recross-Examination by Mr. Davis              313    2
     Further Redirect Examination by Ms. Dittrich  316    2
     Further Recross Examination by Mr. Davis      316    2

INDEX OF EXHIBITS

|  |  | ID | | EVD | |
|---|---|---|---|---|---|
| **PLAINTIFF'S EXHIBITS** |  | PG | VOL | PG | VOL |
| 1 | 911 Call by Jennifer Jiminez | 31 | 1 | 0 | 0 |
| 1A | Transcript of Exhibit 1 | 31 | 1 | 0 | 0 |
| 3 | Google Earth Photo | 128 | 1 | 321 | 2 |
| 4 | Photo of White Nissan Altima | 132 | 1 | 321 | 2 |
| 5 | Photo of Receipt from Ed's Coins | 217 | 1 | 321 | 2 |
| 6 | Photo of Receipt from Ed's Coins | 221 | 1 | 321 | 2 |
| 7 | Google Map from Stadium Pizza | 147 | 1 | 321 | 2 |
| 8 | Domestic Violence Resources | 287 | 2 | 321 | 2 |
| 9 | Power and Control Chart | 299 | 2 | 321 | 2 |
| 10 | Defendant's Certified Booking Photo | 122 | 1 | 321 | 2 |
| 11 | Photo of Jennifer Jiminez | 123 | 1 | 321 | 2 |
| 12 | Photo of Jacob Leyva | 120 | 1 | 321 | 2 |
| 13 | Photo of Logan Thompson | 228 | 1 | 321 | 2 |
| 15 | Vehicle Report CHP 180 | 231 | 1 | 321 | 2 |
| 15A | Vehicle Report CHP 180 | 86 | 1 | 0 | 0 |
| 17 | Certified Prior Packet | 0 | 0 | 443 | 2 |
| 18 | 969b Packet ~ *Nevada case* | 0 | 0 | 443 | 2 |
| 21 | Still Shot of Body-Worn Camera | 152 | 1 | 321 | 2 |
| 22 | Still Shot of Body-Worn Camera | 161 | 1 | 321 | 2 |
| 23 | Still Shot of Body-Worn Camera | 151 | 1 | 321 | 2 |
| 24 | Still Shot of Body-Worn Camera | 151 | 1 | 321 | 2 |
| 25 | Still Shot of Body-Worn Camera | 125 | 1 | 321 | 2 |
| 26 | 911 Call by J. Jiminez Redacted | 203 | 1 | 321 | 2 |
| 26A | Transcript of Exhibit 26 | 203 | 1 | 322 | 2 |

|  |  | ID | | EVD | |
|---|---|---|---|---|---|
| **COURT'S EXHIBITS** |  | PG | VOL | PG | VOL |
| 1 | Stipulation of Facts Re Priors | 207 | 1 | 321 | 2 |
| 2 | Stipulation of Facts Owner of Truck | 206 | 1 | 321 | 2 |
| 3 | Stipulation of Facts Re 911 Call | 198 | 1 | 321 | 2 |
| 4 | Stipulation of Facts Value of Truck | 277 | 2 | 321 | 2 |

~ 969 B Packet used to keep me in Prison for 3 years. Deny my Prop 57 non-violent eligibility parole date (11/27/2020) and release me 1/17/2021

~ Counselor submits inneffective communication falsified police reports and takes away my exceptional conduct

```
 1    Okay.
 2              THE DEFENDANT:  Onre Emmet Leyva.
 3              THE COURT:  Spell those.
 4              THE DEFENDANT:  O-n-r-e, E-m-m-e-t, L-e-y-v, as in
 5    victor, -a.
 6              THE COURT:  Okay.  Now, why don't you start from the
 7    beginning.  Okay.
 8              THE DEFENDANT:  Okay.  So, in the beginning, I wrote
 9    Mark Davis a letter after being told he would be my public
10    attorney from the public defender who initially had let me
11    know during my arraignment who it would be.
12              And he mentioned the Nevada case; and, in that
13    Nevada case, I was found not guilty on these supposed charges
14    that are being presented under the 1109 to go ahead and allow
15    the admissibility of what it is, Your Honor, that you allow to
16    take place during trial.
17              And, um, and also I also gave -- he asked me to give
18    him a month to do his discovery because he was busy with other
19    cases.  And I said, okay, that would be fine, but I don't want
20    to waive anymore time for a speedy trial; because, basically,
21    I told him these were all false allegations and false
22    accusations.
23              And, upon his discovery, he comes to me and he tells
24    me that they don't want to have nothing to do with the case,
25    that --
26              THE COURT:  Who is "they"?  Who is "they"?
27              THE DEFENDANT:  Jennifer Jimenez.
28              Because he went and told her, "Mr. Leyva says he was
```

1    your property manager," and he goes on to say -- she says, I

2    guess.  And he says, "What do you mean you guess?"  And she

3    tells him that she don't want to have nothing to do with the

4    case.

5        Now, him and Roger Lamasters, who is private

6    investigator number three for the public defender's office,

7    comes to me and tells me, "You must be talking to her."

8        I said, "I don't even have voice recognition set

9    up."  — *Criminal intimidation later by P.O. Mark Davis*

10        "She's on your side."  *(video conference around 7/31/20)*
                                                           *8/1/20*

11        She doesn't come to the preliminary hearing, and

12    they have a -- they go back to the judge's chambers where they

13    allow two more criminal threat charges to be added to the

14    initial charges under the fact that, um, when they interviewed

15    Jacob, Jacob says something to the effect that I said

16    something of a criminal threat.

17        But, even though that was allowed, my public

18    defender states for the record that the residential burglary

19    and the two added charges don't apply.  And, for whatever

20    reasons, he felt that that was the case, and I also thought

21    that was the case as well.

22        So, basically, I have been writing him letters, and

23    I've been proactive with my case.  He's been -- I feel he's

24    been running the DA's agenda as far as the way he speaks to

25    me.  He talks down to me, and, basically, like, he tells me

26    that, you know, I'm polite and I'm well spoken, and to do this

27    for myself as far as, you know, making sure that I'm giving

28    him all the information necessary for him to, um, defend me to

SUPERIOR COURT OF CALIFORNIA

COUNTY OF RIVERSIDE


PEOPLE OF THE STATE OF CALIFORNIA,  )
                    PLAINTIFF,  )
                    )
           VS.  )        CASE NO. SWF1900605
                    )
ONRE LEYVA,  )
                    )
              DEFENDANT.  )
_____  )


REPORTER'S SEALED TRANSCRIPT OF MARSDEN HEARING

BEFORE THE HONORABLE BONNIE DUMANIS

August 3 and 4, 2020


APPEARANCES:

For the Defendant:          OFFICE OF THE PUBLIC DEFENDER
                            BY:  MARK DAVIS
                            30755-D Auld Road, Second Floor
                            Murrieta, California 92563


The Defendant:              ONRE LEYVA


Reported by:                OLIVIA JILL HUTCHESON, CSR 12967

1    the fullest of his ability and mine.

2         And so I have -- I have written him three or four

3    letters giving him all the information needed to -- from the

4    very start, Your Honor, to be able to, um, have all the

5    evidence needed on my behalf so that when this does go to

6    trial, which I've been asking him to file for a dismissal

7    because of the false allegations involved -- false accusations

8    that he found to be true during the preliminary process, but

9    yet still has yet to file for a dismissal, or even the *Romero*

10   act on the criminal threat with the strike that I had in 2011,

11   which was more than eight years ago, where I underwent

12   five years of parole, and I was literally in a federally

13   subsidized program, where I was programmed for three years,

14   and then moved to an additional two-year program.  So I was

15   stretched out on parole for five years programming.

16        And, basically, I'm saying all that to say that he's

17   been telling me that he wants me to undergo some mental

18   evaluation, this, that, and the other.

19        And, basically, I've just been working with him,

20   trying to make sure that everything that is in those letters,

21   um, is part of my defense.  And seven months later, he is

22   telling me that basically all he has --

23        He hasn't even shown me the discovery.  He's just

24   been giving me tidbits after basically just telling me

25   basically what the DA wants to do with this case.

26        So I haven't really been able to have a normal

27   conversation with him.  And, when I do, he takes it

28   offensively, as if, like, I'm trying to --

1     He says, "Have you ever been taxed?  Well, you're

2   being taxed now."

3          THE COURT:  Taxed?  T-a-x?

4          THE DEFENDANT:  Yeah.  Tax.  T-a-x.

5          "Well, you're being taxed now.  And, since you don't

6   want to play ball with the DA, this is why this is happening

7   to you."  *— Tributarily Ostracized - Aformofevil.*

8          And, basically, he tells me things like, well, when

9   you're appealing your case, while you're sitting in prison,

10   then you can worry about this, that, and the other.

11          And I'm basically just --

12          THE COURT:  Okay.  So --

13          THE DEFENDANT:  Simple things.

14          THE COURT:  I got it, I think.  I got the picture,

15   and I'm going to ask him about these things.

16          What I want to know is are you asking for a new

17   attorney?  What are you asking me?

18          THE DEFENDANT:  Well --

19          THE COURT:  Are you asking for more time to talk to

20   him?                  *Allows stipulations and Limine w/o my perm-*

21          THE DEFENDANT:  Yeah.  The fact that, you know, this          *ission*

22   1109 has been admissible really, really concerns me.  Because

23   now he's telling me that our line of defense ties in with

24   that.  And, you know, it's like --

25          And then none of my evidence, the simple stuff like,

26   you know, having the keys to the house, talking -- getting

27   people together to show that I was living at the home, that I

28   was doing all the property management, things that I was

```
 1   doing.

 2             Also, just simply calling GEICO, and letting them

 3   know that I was on the insurance policy to be able to drive

 4   the cars.  And so the unlawful detainment, the residential

 5   burglary, and the theft of the vehicle, basically those

 6   charges don't apply under -- you know, if I have evidence to

 7   prove this.  And that evidence --

 8             THE COURT:  Okay.  Let me stop you.  Okay.  I

 9   understand what you're saying.

10             What do you want to happen?

11             MR. LEYVA̶DAVIS:  Well, I would like to be assured that

12   everything that I've been asking, that all the evidence be,

13   you know, ready, so when we do go to trial that I have a

14   strong case.

15             Roger Lamasters bowed out gracefully during the

16   preliminary hearing.  I don't know why.  He said he didn't

17   want to have nothing to do with the case either.

18             THE COURT:  Let me stop you.        Denied Marsden

19             You can ask for a new lawyer if that's what you

20   would like.  I'll allow you to talk -- we can have your lawyer

21   answer some of these questions.  But just because you don't

22   like the strategy of your attorney isn't a good reason to have

23   the Court give you another attorney.  Okay.

24             Please understand, if we do do that -- and I'll wait

25   till he talks, too, because I need to hear all of that

26   information -- if it was granted, then we have to set a new

27   trial date, which means it will be continued again.  Okay.

28             So I think I got it.  You've been writing to him.
```

I wanted a Court appointed Public Defender

And should have been appointed one.

*Judge assuming me a fair trial presence. He has without a reasonable doubt*

1  You don't think he's answered you, basically, or done what *when*
2  you've wanted.  You think that he's been condescending, that *she*
3  he hasn't objected to the new charges about Jacob.  You don't *already*
4  think he's doing things in order to attack your case, to prove *Knows*
5  that you are -- that these charges aren't justified. *It's in*
6         He wants you to get a mental evaluation.  He hasn't *LIMINE*
7  shared the discovery, and he didn't file a *Romero* charge -- a *AND THAT*
8  *Romero* dismissal or dismissal on any of the charges. *How she*
9         Let me just stop you and tell you, on the *Romero* *Do Allow was*
10 charge, a *Romero* is for sentencing purposes.  Doesn't have to *THE CASE*
11 do with trial.  The jury doesn't even know about that in the *TO BE*
12 trial, so that's off the table.
13        But, as far as all these other things, I'll let him
14 address them, if you can do it quickly, Mr. Davis, because we *PROSECUTED*
15 have to let the defendant go at 4 o'clock. *FOR A*
16        MR. DAVIS:  I understand. *CONVICTION*
17        You know, I am somewhat limited to what I can
18 respond to.  I know what I keep hearing from a lot of my
19 clients is the issues relating to discovery.  And, for most of
20 my clients, I am happy to --
21        THE COURT:  Can the court reporter hear?
22        MR. DAVIS:  Sorry.
23        In Mr. Leyva's case, we're here for trial.  I've
24 been working on it a lot.  I have a trial binder with a lot of
25 discovery.  I cannot right now stop everything and take the
26 time to redact and get him all that paperwork.  I'm happy to
27 do it another date.  I told him he'll get a complete
28 transcript of his record on appeal if he is convicted. *WOW!*

1          I have shared with him discovery.  As he is sitting

2     here right now, he's seen defense investigation.  I've

3     reviewed the police reports.  He was present for the

4     preliminary hearing.

5          I always do my best to provide discovery to my

6     clients, but I also have duties, as trial counsel, to be

7     prepared for trial.  And, at some point, and we're on the eve

8     of picking a jury, I'm not going to stop everything I'm doing

9     to make copies for my client.  I have a mountain of work to be

10    prepared in Mr. Leyva's case, and I'm doing my best to be

11    prepared.  I'm doing my best to represent him.

12         All our interactions have not been completely

13    peaceful and harmonious.  It has been difficult because of the

14    COVID-19 situation, but I have made multiple -- we've had

15    correspondence.  I visited him through the jail visiting

16    system through the -- which is the only way we're allowed to

17    do right now, video conferencing.  I have visited him in

18    person prior to COVID.  *8/1/2020  criminal intimidation when not present on 7/16 and 7/30*

19         THE COURT:  There is more specific stuff so

20         MR. DAVIS:  I can address anything.

21         THE COURT:  I think I'm going to just stop for

22    today.  *That video conference will reflect criminal intimidation*

23         MR. DAVIS:  Absolutely.  *(ushered by Michael A Hestrin*

24         THE COURT:  And I actually forgot to swear you in as  *"Will")*

25    well, so I'll do that tomorrow.

26         MR. DAVIS:  Understood.

27         THE COURT:  And you can answer some of these things,

28    and we'll address those.

```
 1              Mr. --                    Retired Judge Bonnie Dumanis

 2              I don't know why I have a hard time remembering.

 3              THE DEFENDANT:  Leyva.     allowing Prosecution

 4              THE COURT:  Leyva.          to try this case in LIMINE

 5              THE DEFENDANT:  Yes, ma'am.   Bifurcated! ?

 6              THE COURT:  Okay.  I keep writing it down.

 7              Mr. Leyva, what we've done today, I just want to let

 8    you know, is we've gone over some questionnaires that were

 9    filled out by jurors to see who has a financial hardship or a

10    hardship concerning the case, and that's what we are going to

11    go over now before you raise this issue.    Mark Davis asking them

12              If it's okay with you, what I would like to do -- we  if they're ok with me.

13    have some jurors that are hanging on now that we agreed would   saying

14    be released because of a hardship.  Do you mind if we release   "I'm

15    those people so that we can move forward?  We'll have them --   going

16              We'll start tomorrow morning with the motion, but     to kill

17    if --

18              Is that all right with you, sir?                      you nigga"

19              THE DEFENDANT:  Yes, ma'am.                           (unbelievable)

20              They will not be chosen anyways to serve as trial     That

21    jurors; right?                                                  was

22              THE COURT:  Right.  So we don't -- we don't want      my

23    them to come back --                                            defense

24              THE DEFENDANT:  Right.  That's fine with me, Your

25    Honor.

26              THE COURT:  -- and waste their time.                  no witness

27              Is that all right with you?                           no opening

28              THE DEFENDANT:  Yes, ma'am.                           statement
                                                                      nothing!
```

```
1              THE COURT:  Okay.
2         Can you text the prosecutor --
3         MR. DAVIS:  Absolutely.
4         THE COURT:  -- to get the prosecutor in?
5         So I'm going to suspend for the moment the *Marsden*
6    hearing.  We'll seal this part of the hearing.  We'll start up
7    again in the morning.
8              And I'm going to go over that one more time because
9    this is -- this is a sealed record -- about going forward on a
10   financial hardship, okay, for the hardships.  All right.
11             THE DEFENDANT:  Okay.
12               (Proceedings resume in open court.)
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
```

```
 1              THE COURT:  First, I'd like you to state your name
 2    and spell it for the record.
 3              MR. DAVIS:  Oh, Mark, M-a-r-k, C, Davis, M-a-r-k, C,
 4    D-a-v-i-s, deputy public defender, County of Riverside.
 5              THE COURT:  Okay.  Before you say some things for
 6    the record, I want to just summarize what Mr. Leyva said
 7    yesterday and then we will move to the next step.
 8              So, Mr. Leyva, what I heard you saying summarized,
 9    okay, is that your attorney is not doing what you want.  He's
10    not following your strategy.  He -- you don't like the way he
11    talks to you; although, he says you were polite and well
12    spoken.  And you are concerned about -- you don't like it
13    because he was asking for an evaluation, and you feel like
14    he's in -- he's doing what the DA wants, and he's not --
15    you're not happy with the team.
16              That about sums it up; right?
17              THE DEFENDANT:  I'd also like to add some further --
18    after thinking about it further last night, I would like to
19    add some other things as well that during our conversation
20    yesterday have been brought to my attention regarding his
21    discovery, and the findings and facts that he believes are --
22    is factual information but did not talk to me about it.  And
23    come to find out that that is not factual information at all,
24    but yet he's prepared to move forward in jury proceedings with
25    this information that has no bearing in my case, as far as,
26    you know, in my best interest, as far as the information, how
27    he plans on using it during trial.
28              THE COURT:  Okay.  I'm going to let him talk first.
```

1    questions so that we can make this as succinct and efficient

2    as possible.

3           Can you tell me what you have done to prepare for

4    this case?

5           MR. DAVIS:  Yes, Your Honor.

6           I want to -- can I just start by, sort of, a gesture

7    of goodwill to my client, and also this is relevant to the

8    *Marsden* motion.

9           My client had complained regarding not receiving

10   discovery, and I realized that I had not given him all of his

11   discovery.  I've been prioritizing trial prep.  Making copies

12   of discovery is time consuming.  I have to make multiple

13   copies using a blackout highlighter to do so.  It takes time,

14   and it's not something I prioritize.

15          With that in mind, I realized that was one of

16   Mr. Leyva's concerns that he raised, so I did this morning

17   make copies, which the deputy is allowing me to give to

18   Mr. Leyva, with redacted copies of the information, all of the

19   police reports, all of the defense investigation, which

20   includes four different witness statements; also, a copy of

21   the preliminary hearing transcript.

22          And I believe that my duty to provide discovery is

23   based on a standard of reasonableness.  Obviously, this is not

24   every single document associated with the case, but I do

25   believe that, in providing what I have, that meets the

26   standard of reasonableness while also balancing my need to use

27   my time to prepare for trial.

28          With respect to what I've done for Mr. Leyva, I do

1   keep very detailed notes regarding every action I take on a

2   case.

3              THE COURT:  I don't want you to go through every

4   action, though.

5              MR. DAVIS:  Of course not.  I understand.

6              I'm pulling those up right now, though, just in

7   order to refresh my memory to make sure that I'm providing

8   accurate information to the Court and for any future issues

9   that may arise from these proceedings.

10             I received the case in January of 2020.  It's a

11  three strikes case.  I read the reports, summarized the

12  reports, reviewed the priors, reviewed the rap sheet.  I --

13  within a week, I had submitted an investigation request

14  recognizing the seriousness of the case, that we needed to

15  have an investigator assigned.  I specifically requested an

16  investigator with significant experience in handling serious

17  and violent felonies who had the experience to start

18  interviewing witnesses and conducting other investigation in

19  the case.  That occurred within a week of me receiving the

20  case.

21             I met with Mr. Leyva within a few weeks for an

22  extended jail visit -- that was in late January -- for over

23  90 minutes.  That was back when we were still allowed to go to

24  the jail.

25             It should be noted for the record that right now our

26  jail visits are limited to 15-minute video conferences.  But,

27  back in January, I was able to meet with Mr. Leyva for over

28  90 minutes, reviewed the investigation progress we had so far,

1  explained that we were getting the supplemental discovery

2  which I requested from the DA.

3          THE COURT:  Did you go over the discovery at that

4  time with --

5          MR. DAVIS:  Absolutely.  I went over -- the police

6  report in this case is not particularly long.  I went over the

7  police report line by line, as I always do, which is my

8  practice with clients.  If it is a particularly long police

9  report, I'll summarize them, but in this case I would have

10 read it line by line because it's a very short report.

11         There was, based on my recollection, extended

12 discussion with the prosecutor regarding the potential

13 resolution.  The prosecutor, Ms. Dittrich, had -- given the

14 fact that it was a three strikes case, based on the facts and

15 circumstances, had inclined to offer Delancey Street, which is

16 a two-year residential rehabilitation program.

17         Based on my training and experience as a felony

18 attorney, based on looking at this as a three strikes case, I

19 felt that that was a very favorable outcome.  And I felt that

20 it was my duty, as a competent attorney, to spend significant

21 time with my client discussing that.

22         Prior to the preliminary hearing, I sat with my

23 client for another approximately 30 minutes, and this time I

24 brought my investigator.  I wanted my investigator to be

25 present in order to explain directly to my client some of the

26 issues that he had discovered and to give his perspective to

27 the client, to Mr. Leyva, regarding best course of action.

28         At that point, despite all we could do, it became

OLIVIA JILL HUTCHESON, CSR

1    I did continue, however, to correspond both with the
2    prosecutor regarding discovery issues, as well as with
3    Mr. Leyva via letter, as well as video conference.   In
4    addition, I received letters from Mr. Leyva, and I acted on
5    his requests.
6            And, according to my notes, in June of this year, I
7    submitted, based on Mr. Leyva's correspondence, a supplemental
8    investigation request to interview additional witnesses.   And
9    at that point that is when we had the witness, which is now
10   listed in my trial brief, that is the witness Roberta Derilo
11   who works for Ed's Coins.   Her proposed testimony, of
12   course -- I don't think it's a big secret.   This has all been
13   clearly articulated, I think, previously and disclosed to the
14   DA -- is that about a month prior to the incident, on
15   June 24th, Mr. Leyva went to Ed's Coins.   She is an employee
16   there.   She purchased 76 quarters for about $150 from the
17   defendant.   She had a receipt.   She believes that that receipt
18   was for some quarters, and the date was for July 25th, of
19   2019, and that is her proposed testimony.
20           Now, I can't go into, really, I think, the strategic
21   or tactical reasons for offering that testimony, but there is,
22   again, according to the information I've been given by
23   Mr. Leyva, a tactical, strategic reason for offering that
24   testimony.
25           I do intend to enter a stipulation regarding that
26   testimony, however, again, due to tactical strategic reasons.
27   If Mr. Leyva -- and I know just prior to this hearing he had
28   mentioned that he feels very strongly against now using this

✱ Ineffective Counsel and due process ✱

1  testimony and/or stipulation. I don't have to do that.

2  However, I have been informed that the prosecutor would then

3  be calling this witness since I have disclosed this witness,

4  again with Mr. Leyva's consent, knowledge, and direction.

*never agreed*

5          So my view at this point, just to, kind of, wrap

6  up -- and I appreciate the Court's indulgence in allowing me

7  to clearly articulate what's occurred so far on the case, but

8  just to, sort of, summarize where we are, defense counsel's

9  duties, especially the public defender's duties, are very

10 complex right now. They always have been, but they're

11 particularly complex in light of some various supreme court

12 decisions, particularly *McCoy*. However, I don't that that

13 *McCoy* stands for the proposition that I need to do everything

14 that Mr. Leyva tells me at all times and conduct the trial

15 exactly according to his wishes.

16         THE COURT: Let me stop you, Mr. Davis.

17         I know what the law is, and I'll articulate that in

18 any decision. I don't want you to argue one way or another.

19         MR. DAVIS: The point being is that Mr. Leyva has

20 set a goal of fighting this case, of pleading not guilty to

21 the charges, and denying all of the allegations. And making

22 that -- steering the ship, so to speak, or making those

23 tactical, strategic decisions going forward is going to always

24 be challenging, especially when there are, sort of, ongoing

25 disputes or disagreements that Mr. Leyva has.

26         And I don't know, necessarily, how to resolve that,

27 other than to say, I have a duty of effective and zealous

28 advocacy. I have to be effective, and I have to be zealous.

1   that basically, um, you must be talking to them.  I told them

2   I don't even have voice recognition set up.

3           So they said -- um, so they allowed the preliminary

4   hearing to go on, and they allowed these two charges to be

5   added.  They weren't initially in the police report.  So,

6   basically, after the DA and apparently my public defender

7   finding that it was in my favor, that they didn't want to have

8   anything to do with the case.

9           Because when Mr. Mark -- Mr. Davis asked my accuser,

10  "Mr. Leyva says he was your property manager," he goes on to

11  say that she said, "I guess."  And he said, "What do you mean

12  you guess?"

13          That makes the residential burglary community

14  property.  And the fact that I get in the car and drive away

15  and go home, get my stuff, and get in my truck and split, that

16  makes that not --

17          THE COURT:  Okay.  I got that.

18          THE DEFENDANT:  Okay.  I said, well, why don't we

19  just go ahead and dismiss the case then, and why is this --

20          THE COURT:  Sir, I don't want you to tell me what

21  you want to see happen in the case.  Okay.

22          THE DEFENDANT:  Okay.

23          THE COURT:  I want you to tell me anything new.

24          THE DEFENDANT:  Okay.

25          THE COURT:  Because everything you just told me, you

26  told me yesterday.

27          THE DEFENDANT:  So I've been writing him letters,

28  preparing him to be proactive in my case.

```
1          He's been running the DA's agenda on me, and he's
2    been giving me little tidbits as to what's favoring my case,
3    which all has been in my favor, yet the DA still continues to
4    run the agenda as far as this is still going to trial.
5          So I said, "Okay.  Do you have all my witnesses in
6    place?"
7          He has me listen to the 911 calls just Thursday,
8    which I've been asking him for the 911 call because it shows
9    motive that my accuser, basically, in the 911 calls is saying
10   that I'm not living at the house, that I'm some vagabond
11   living on the streets that she's allowing to stay at the home.
12          THE COURT:  Okay.  I don't need the details.
13          So he just did it.  He just did it recently.
14          THE DEFENDANT:  Yes.
15          What's more important is he don't have any witnesses
16   stating that I'm living at the house.  I'm the property
17   manager.  I'm responsible for the well-being and welfare of
18   not only my family, but all parties involved.
19          THE COURT:  Okay.  And are there some witnesses that
20   you --
21          THE DEFENDANT:  Absolutely, Your Honor.
22          THE COURT:  Okay.
23          THE DEFENDANT:  The school teacher, that I'm taking
24   my daughter Aubrey to school back and forth every day.  Okay.
25   Every day I'm taking her to school and picking her up.  This
26   is something simple that shows that I'm living at the home.
27          Because my accuser is saying on December 24th, when
28   they came and got me, that I showed up unexpectedly and I'm
```

1    demanding that I be part of the Christmas Eve festivities.

2            THE COURT:  Okay.  Mr. Leyva, this is not a court

3    trial right now.  Okay.  So you are -- you are basically

4    telling me what you think the theory of the case should be.

5            THE DEFENDANT:  No.  I'm saying he's leaving it up

6    to my accusers to say either/or, and I don't have no witnesses

7    corroborating my defense, which is --

8            THE COURT:  I got that.  Okay.

9            THE DEFENDANT:  Yes.  And that's a big part of my

10   case.

11           THE COURT:  I understand.  I understand really what

12   you're saying is you don't think he's doing what you want him

13   to do.

14           THE DEFENDANT:  And he's been -- he's been --

15           Actually, he's been mentally abusive by -- like, you

16   say the word "condescending," but it goes deeper than that.

17   Because I have not been able to have a normal conversation

18   with this gentleman.  And I wrote him a letter stating how I

19   appreciate, and I'm thankful, and I'm grateful for his due

20   diligence, and all this and that, in the hopes that we would

21   have everything readily prepared.  And the information that

22   he's giving me now is information that has no factual basis

23   when it comes to the way he's going to present my case.

24           THE COURT:  Okay.  Stop.  Okay.  I have given you

25   enough time for you to explain.

26           The purpose of this hearing is to -- not to talk

27   about the facts, basically, of the case, but to tell me in

28   your words what you think is wrong with his representation of

1   you, and you have done that.  Okay.

2        Are you asking to have him fired, basically?

3        THE DEFENDANT:  Yes, ma'am.  I would like a

4   state-appointed, if possible, and I would also like an

5   investigator that --

6        Why Roger Lamasters didn't continue to investigate

7   is beyond me.

8        THE COURT:  I got that.

9        So I just wanted to make sure, because I wasn't

10  clear yesterday, what it is you wanted to happen.

11       THE DEFENDANT:  And I found out he's a deputy public

12  defender, too, which makes him an investigator as well.  So

13  why the investigation is not thoroughly complete and ready for

14  trial is beyond me.  He's had seven months to do this, and

15  I've written him letters, and pretty much in those letters it

16  states everything.  And that's way back from March and June

17  so --

18       THE COURT:  Okay.  I understand that.

19       So let me just explain to you what the Court has to

20  look at in these hearings, and what the duties of the defense

21  attorney are, and what -- some of what was said, and why you

22  are just bringing this motion now.  Okay.

23       So I want to just go over some of the things that

24  happened in this case.  Because I looked at the court minutes.

25  Okay.  So you began by being arraigned on December 30th, right

26  around the first of the year, but in 2019.  You were present

27  on that date.

28       There was a different public defender because they

1    And often that happens because the evidence comes

2  out from the witnesses, and the judge makes a decision.

3  Sometimes they say there is enough evidence.  Sometimes they

4  say there isn't enough evidence.  And so the judge did, and

5  then they set it over to March 11th, for what the next step

6  is, is filing an information, which gets you ready for trial.

7    You were present at that time as well, and, of

8  course, you pled not guilty.  And, on April 16th and May 20th,

9  we were well into the coronavirus, and that's when emergency

10  orders were being made to continue not to have hearings, and

11  so your case was continued, and you were not there for those

12  continuances.  So that would be April 16th and May 20th.  And

13  then on June -- and on May 8th, you were not present.

14    So then there was a hearing on July 16th for a

15  readiness conference, which is a time when -- settlement

16  conferences are the time when attorneys talk to the judge

17  about whether or not there's any settlement, and whether or

18  not there's a need for more time, or if your attorney is ready

19  for setting it for trial.  And you were present at that date,

20  on July 16th.

21    And then, on July 30th, the trial date was set for

22  August 3rd, which is when you began, and you were present

23  again, too.

24    So, first, I want to say that you had plenty of time

25  to raise the issues before today or yesterday.  Because you

26  have been dealing with your attorney Mr. Davis for sometime,

27  and now we are on the beginning of a trial, have a jury ready,

28  and we've had a motion about bringing in the past acts, and

1    because he's talking to you -- he's been very civil in the

2    courtroom.  You may not like the way he talks to you, but he's

3    giving you a lot of his time and attention and trying to do

4    the best he can with making sure your wishes are followed

5    through.  And, again, it doesn't matter whether you agree with

6    everything, and it doesn't always happen.  And it doesn't mean

7    he has to agree with your strategy.

8              And so I believe that he has done all the things

9    that he's required to do.  And you made it clear that you want

10   to go to trial.  He's made it clear that you want to go to

11   trial.  He's ready to go to trial.  He's ready to fight for

12   you.  He has been fighting all along.  And all of the things

13   that you talked about are things that I've explained to you

14   are not reasons for firing your attorney.

15             THE DEFENDANT:  May I say one thing?

16             One of the things that scared me was the 1109.

17   Because, when I was arraigned by the public defender who told

18   me who my public defender was going to be, he mentioned the

19   Nevada case.  And I asked my public defender Mark what he

20   meant by that.  Because, basically, it was a case that I beat

21   in Nevada that were charges similar in this case.  And the DA

22   mentioned those yesterday, and she's saying that whatever she

23   was faxed back from Nevada were convictions.

24             I walked free after eight months of literally

25   almost -- walked free from that courtroom.

26             THE COURT:  So stop there.

27             Your attorney has been clear with the DA, in talking

28   about that with us in chambers, that, unless there's proof of

1    that, then that is something that we can't consider.

2    Although, the allegations, if the victim talks about the

3    allegations, she can talk about that, if I rule that it's

4    admissible, whether you are convicted or not.  That's the law.

5    Okay.  What she can't say is that there was a conviction if

6    there wasn't.       *969 B Packet - no conviction*

7          What that conviction really is mostly of concern is

8    that it makes you a three striker.  It's the -- it makes this

9    case your third serious or violent case, which would mean you

10   would be sentenced to 25 years to life.  But that's the next

11   phase.  Okay.

12         We have to talk about whether or not to do the trial

13   with those convictions as part of it, because they are part of

14   the information.  But usually we don't do them at the trial.

15   We do them after the trial if there's a conviction.  And then

16   you have a right to have a trial by this jury, or you can

17   waive the right to the trial and have me, the judge, decide

18   whether or not the convictions have been proven.

19         So that's the time it would come up later, and those

20   convictions are only for the purpose of sentencing.  Okay.

21         So he really is arguing all the things you are

22   arguing, so you're on the same page, actually.  And so I think

23   that you just misunderstand sometimes some things.

24         And we're all ready to go.  I think that you were

25   concerned about the Court's rulings in limine -- that means at

26   the beginning -- in allowing the evidence in those cases, and

27   I can understand that.  Because that shows a pattern of

28   domestic violence, which is why the Court made the ruling,

*Denied Romero Act and Dismissal upon Discovery!* oel

Preliminary Transcripts

1

CHRONOLOGICAL WITNESS LIST

2

3   PLAINTIFF'S WITNESSES:                                    PAGE:

4   FREDDY RUBIO

5   Direct Examination by Ms. Dittrich                          5
    Cross-Examination by Mr. Davis                             20
6

7   JAMES MCDONALD — Used to change the Narrative. oel

8   Direct Examination by Ms. Dittrich                         27

9   — Discovery by Roger LeMasters of the P.D. office
10  who is Investigator III will not testify to the
11  perponderance of evidence because he knows that
12  D.A. Michael Hestrin / Kimberly Dittrich will have
13  officer Freddy Rubio take ("I'm going to kill you nigga")
14  a statement from discovery made by Jacob Leyva and
15  have him lie on the stand during sworn testimony
16  because I never made any threats nor committed any
17  acts of violence. A trivial comment was made with
18  me protecting the honor of my daughter by telling
19  Logan Thompson "No need to disrespect my daughter
20  look at the predicament your in" and that's all that was
21  said as I went home, grabbed my belongings, got in
22  my work truck and left home only to return a
23  month later and subsequently maliciously prosecuted.

DIANNE M. SINCLAIR, CSR                                         2

1   for John Doe with the initials J.L. on 7-25-19.

2        Also, your Honor, defense counsel and I have worked

3   diligently to try to come to a resolution on this case, so I

4   just wanted to place on the record that the People had not made

5   an offer in this case because it's charged as a life case.

6   However, defense counsel and we both are in agreement that a

7   type of determinate term sentence would be appropriate for this

8   defendant based on his lack of time in prison in the past and

9   his overall criminal history.

10       My understanding is that the defendant has not wanted

11  to make an offer, which the People respect, and have no problem

12  with, but I just wanted to be sure that we had placed on the

13  record we had tried to resolve this case pre-prelim and that is

14  not seeming to be possible at this time.

15       THE COURT:  Okay.  Anything else?

16       MS. DITTRICH:  No. Thank you.

17       THE COURT:  Okay.  And Mr. Davis, are you ready?

18       MR. DAVIS:  I am ready.

19       THE COURT:  Okay.  You can call your first witness.

20       MS. DITTRICH:  Thank you, your Honor.  At this time,

21  the People call Deputy Rubio.

22       THE CLERK:  Do you solemnly state that the evidence you

23  shall give in the matter now pending before the court, shall be

24  the truth, the whole truth and nothing but the truth, so help

25  you God?                  *Discovery will prove my innocence*

26       THE WITNESS:  I do.  *and heresay maliscious prosecution*

27       THE CLERK:  Be seated.  Please -- if you can please  *ael*

28  state your full name and spell both your first and last clearly

1  for the record.

2          THE WITNESS:  It's Freddy Rubio.  F-r-e-d-d-y.  Last is

3  R-u-b-i-o.

4          MR. DITTRICH:  Thank you.

5                          FREDDY RUBIO,

6  called as a witness on behalf of the Plaintiff, was sworn and

7  testified as follows:

8                        DIRECT EXAMINATION

9  BY MS. DITTRICH:

10     Q.   Could you please tell the Court where you're employed?

11     A.   I'm currently employed with the Riverside County

12  Sheriff's Department.

13     Q.   What is your position there?

14     A.   I'm a deputy sheriff.

15     Q.   How long have been so employed?

16     A.   With the department a total -- total of seven years.

17  About seven years, four years sworn.

18     Q.   You've been an officer -- that's a peace officer sworn

19  for four years?

20     A.   That's correct.

21     Q.   Okay.  Prior to becoming a deputy sheriff, did you

22  attend an academy?

23     A.   I did.

24     Q.   During that academy, did you get trained on

25  investigating different types of cases?

26     A.   That's correct.

27     Q.   Did you also get trained on testifying at preliminary

28  hearings?

1     Q.   Did she tell you what had happened earlier that day?

2     A.   She did.

3     Q.   What did she say to you?

4     A.   She said she was out with her kids and one of her kid's

5 friends and her ex-husband, who she identified Onre Leyva, they

6 were having dinner at Stadium Pizza in Lake Elsinore.  At that

7 time, Onre became very aggressive and he started calling her a

8 bitch, started just saying random things to her, so she decided

9 it was time to go.  So she told everybody, "Let's get in the car

10 and let's go."  They got in the car.  As they were driving --

11    Q.   Hold on one second.  I'm going to back you up just a

12 moment.  Okay.

13        Did she describe how long she had known Onre Leyva?

14    A.   She did.

15    Q.   How long did she tell you?

16    A.   She was married to him in 1999.

17    Q.   Until about 2003?

18    A.   2003, correct.

19    Q.   Okay.  Then did she tell you during the time they were

20 married they had three children together?

21    A.   Yes.

22    Q.   Did she tell you if he was currently living with her at

23 the Menifee location, or he was homeless?

24    A.   He was homeless.

25    Q.   Did she tell you, over the years, where she had known

26 him to frequent or live?

27    A.   Yes.

28    Q.   What did she tell you?

1     Q.    All right.  And she said that she had three children
2  with Mr. Leyva.
3           Was one of those children Jacob Leyva?
4     A.    Yes.
5     Q.    And is he approximately 24 years old now?
6     A.    Yes.
7     Q.    Was the other child a daughter that was present that
8  evening?
9     A.    So there was a daughter that was present but, from my
10 understanding, she's -- he is not the biological father.
11    Q.    Okay.  And that person or daughter was 12 years old?
12    A.    Yes.
13    Q.    And her name is                    (phonetic); correct?
14    A.    Correct.
15    Q.    All right.  So the friend of           ,    was his name
16          .   ?
17    A.    Yes.
18    Q.    And is he approximately 24?
19    A.    Correct.
20    Q.    Okay.  So when Ms. Jiminez told you she was at the
21 pizza place, was she with        ,       :    y, herself and
22 Mr. Leyva?
23    A.    Yes.
24    Q.    Did she tell you if she had driven to the pizza place
25 in her vehicle?
26    A.    Yes, she did.
27    Q.    Did she describe to you what kind of -- of car that
28 was?

1        A.    Everyone got into the car as -- everybody that showed

2    up with her to the pizza place.  Everybody got back to the car

3    and left.

4        Q.    Is that including Mr. Leyva?

5        A.    Correct.

6        Q.    Did she tell you if she was driving, or if he was

7    driving?

8        A.    She was driving.

9        Q.    Did she describe to you what happened while she was

10   driving?

11       A.    She did.

12       Q.    What did she say?

13       A.    As they were driving, Mr. Leyva again became very

14   aggressive and started calling her a bitch.  He started pulling

15   her hair from the backseat.  He was seated behind her in the

16   driver's seat, and started punching her several times in the

17   back of the head.

18       Q.    Did she pull over?

19       A.    She did.

20       Q.    Why did she tell you she did that?

21       A.    She felt she was going to lose control of the car.  She

22   felt she didn't have control of the car at the time, so she

23   wanted to make sure everyone was safe so she pulled over.

24       Q.    Did she stop the car?

25       A.    She did.

26       Q.    Did she get out of the driver's side door?

27       A.    She opened the door but, before she had the opportunity

28   to get out, Mr. Leyva pulled her out of the car.

*Flawed Investigation*

DIANNE M. SINCLAIR, CSR                                    11

*If officer Rubio has all this on Bodycam footage
then why wasn't it all written in initial police report?*

*[Handwritten note at top: Prosecution uses Aubrey Jimenez picture taken from DVR-BWC footage as exhibited in trial.]*

*[Handwritten note right: So Bodycam footage was used and should have been argued in direct appeal]*

1  anything before they drove off?

2  　　A.　She did.

3  　　Q.　Can you tell me what she told you?

4  　　A.　She told me her daughter ___ grabbed a cell phone

5  from the center console and threw it out the window to her mom.

6  　　Q.　Did she describe anything out of the ordinary about

7  Aubrey, the 12-year-old?   *[Handwritten: Bodycam DVR-BWC shows Aubrey outside]*

8  　　A.　She is special needs.   *[Handwritten: When Freddy Rubio shows up.]*

9  　　Q.　Okay.  When the cell phone got thrown out of the car,

10 did Ms. Jiminez tell you she was able to get it?

11 　　A.　Yes.

12 　　Q.　What did she do when she got the phone; did she tell

13 you?

14 　　A.　She tried.  Yes, she did.  She attempted to call Jacob

15 to find out where they were driving to.

16 　　Q.　Jacob is her son?

17 　　A.　Yes.

18 　　Q.　Did Jacob answer the phone?

19 　　A.　He did not.

20 　　Q.　What did she tell you after she called  ___?

21 　　A.　She just stayed there hoping he was going come back and

22 pick her up, so she stayed at the side of the road.

23 　　Q.　Can you tell me -- did she describe to you where she

24 was standing on the side of the -- of the road?

25 　　A.　She just described a gas -- an area -- a field on the

26 side of the -- of the road, a very unfamiliar area with her.

27 She was unable to tell me exactly where the incident happened.

28 　　Q.　Was she able to tell you where the Stadium Pizza was?

1  of a temporary thing.

2      It wasn't that he was living -- going to be living in

3  her house permanently; is that correct?

4      A.   That's correct.

5      Q.   Okay.  How long did Ms. Jiminez tell you that Mr. Leyva

6  had been staying with them up until the night where we're

7  talking about on July 25th?

8      A.   It was approximately three weeks.

9      Q.   Okay.  So did Ms. Jiminez tell you what happened after

10  about 45 minutes?

11      A.   Yes.

12      Q.   What did she tell you?

13      A.   Jacob returned back to the location where she was

14  dropped off, and picked her up in the car that was driven away

15  by Mr. Leyva.

16      Q.   Okay.  And did he then take her back to the house?

17      A.   He did.

18      Q.   Okay.  Did you have a chance -- I am going to kind of

19  switch.  *Officer Freddy Rubio only interviewed Jennifer Jimenez*

20      Who you were talking to -- did you have a chance that

21  evening to speak with         about what had happened?

22      A.   Yes.

23      Q.   Can you tell me once the defendant or Mr. Leyva drove

24  off with Jacob, what Jacob told you happened?

25      A.   They were driving in the car, and he was scared because

26  he didn't know where they were driving to.  Again, he said

27  Mr. Leyva doesn't know the area because he doesn't live here.

28  So he just started driving.  During that drive, he began yelling

1  house?

2      A.   Yes.

3      Q.   Can you tell the Court what Jacob told you was taken?

4      A.   Mr. Leyva took a coin collection that belonged to his

5  mother, and he also grabbed a piggy bank that he eventually

6  dropped in the front yard.

7      Q.   Okay.  After Mr. Leyva took those items, did Jacob tell

8  you that he saw Mr. Leyva leave the house?

9      A.   Yes.

10      Q.   What did he tell you Mr. Leyva did after he left the

11  house?

12      A.   He got into another vehicle that belonged to his

13  mother -- to Ms. Jiminez and drove away in that vehicle.

14      Q.   Do you know what type of vehicle that was?

15      A.   It was a GMC pickup truck. ~my work truck~oel~.

16      Q.   1998?

17      A.   Correct.

18      Q.   Okay.  And did you speak with Ms. Jiminez about that

19  1998 GMC?

20      A.   I did.

21      Q.   When you spoke with her about that, had she given

22  Mr. Leyva permission to take that vehicle?

23      A.   No.

24      Q.   Did she want him to take the vehicle?

25      A.   He didn't have permission, and he wasn't allowed to

26  take it.

27      Q.   Okay.  After Mr. Leyva left in the GMC, did     tell

28  you that that he saw Mr. Leyva anymore that night?

1    Q.   Okay.  How about with regard to    ?

2         Did    describe to you when he was in the vehicle if

3    he wanted to be in the vehicle that Mr. Leyva was driving?

4    A.   He did not want to be in that vehicle.

5    Q.   Okay.  Did he tell you during the time they were

6    driving that he was asking him to stop also?

7    A.   I don't recall him asking -- if he asked to stop, but I

8    know Jacob did.

9    Q.   Okay.  When Mr. Leyva went into the house on Meadows

10   Road in Menifee, are you aware if    or .    was in the

11   house at the time he went in -- or    ?

12   A.   No. They were in still in the car, when he went inside

13   of the house.

14   Q.   And did Jacob describe that when Mr. Leyva went into

15   the house, nobody else had happened to be in there?  Is that

16   correct?

17   A.   Correct.  No one was inside of the house.

18   Q.   Did    tell you after Mr. Leyva left that's when he

19   went to turn the alarm off?

20   A.   He actually turned the alarm off when they first got --

21   initially got there and Mr. Leyva triggered the alarm, trying to

22   open the door, and Mr. Leyva asked Jacob to turn off the alarm

23   so Jacob went and turned off the alarm.

24   Q.   Did he do that inside of the house or outside?

25   A.   I am not sure.

26        MS. DITTRICH:  Thank you.  I have nothing further.

27        THE COURT:  Thank you.

28        Mr. Davis.

*Mr Davis only cross-examines to the criminal threat being made, not to any of the Preponderance of evidence.*

1   times.

2       Q.   And if that would help refresh your recollection, could

3   you please?

4           THE COURT:   Yeah, go ahead, Deputy.

5           MR. DAVIS:   Do so.

6           THE WITNESS:   So the incident was reported at 2150,

7   which would be 9:50 p.m.   *Mr Davis circled these times. etc*

8       Q.   BY MR. DAVIS:   Okay.   And you responded about two hours

9   later at 11:50, or did you respond at 9:50?

10      A.   I was assigned to the call at 2230 hours which is

11  10:30.

12      Q.   So about an hour after she reported it?

13      A.   Yes.

14      Q.   And you don't have a recollection as to what

15  Ms. Jiminez told you regarding the exact time that this

16  occurred?

17      A.   I don't recall.

18      Q.   Okay.   Now, as far as the living situation goes,

19  Ms. Jiminez and Mr. Leyva are divorced.

20           Is that your understanding from speaking with

21  Ms. Jiminez?

22      A.   That's correct.

23      Q.   But Mr. Leyva had been living or -- or staying with

24  Ms. Jiminez at that house in Paradise Meadows for about three

25  weeks prior to the incident; right?

26      A.   That's correct.

27      Q.   Now, did you ask Ms. Jiminez any details about that

28  particular living arrangement?

DIANNE M. SINCLAIR, CSR                     21

*Mr. Davis Knew I was telling the truth but allowed added charges by suppressing and denying due process.*

*[Handwritten annotation: Mr Davis only defense is me stating I'm going to kill you nigga - In Prelims and in trial. (Unbelievable)]*

```
 1   driven that truck with her permission?

 2       A.   I don't believe I asked that.

 3       Q.   Now there were two vehicles involved here, one is a

 4   Nissan Altima and one is a GMC truck; correct?

 5       A.   Correct.

 6       Q.   Now Ms. Jiminez reported the GMC truck as being stolen;

 7   correct?

 8       A.   Yes.

 9       Q.   But not the Nissan Altima?

10       A.   Correct.

11       Q.   Now, earlier on direct examination, you were asked to

12   give a license plate for the Nissan Altima, and you looked at

13   your report and referenced your report for that particular

14   license plate; right?

15       A.   Yes.

16       Q.   Now is it -- isn't -- that license plate, does it

17   actually refer to the GMC truck?

18       A.   I would have to refer back to it.

19       Q.   Again, if you can just refer back to your report and

20   check on that --

21            THE COURT:  Yeah, go ahead, Deputy.

22            MR. DAVIS:  -- to refresh your recollection.

23            THE WITNESS:  And Mr. Davis, you are correct.  That is,

24   in fact, the license plate for the truck.

25       Q.   BY MR. DAVIS:  Now there's no vehicle information in

26   your report referencing the Nissan Altima; correct?

27       A.   As far as the VIN number like a --

28       Q.   VIN number or a license number, anything like that?
```

*Officer Rubio testifying to what Jacob told him at the time of this investigation. 4E*

1      Leyva, Mr. Leyva was saying -- making the statement, "I am

2  going to kill you, nigga" repeatedly but not necessarily

3  directed at any one person in the vehicle?

4      A.   I'm not sure how they would have felt at that time.

5      Q.   Okay.  But again nothing that Mr. -- that      Leyva

6  told you indicated to you that that statement was specifically

7  directed at an individual?

8      A.   Correct.

9      Q.   Okay.  And nothing that Logan -- again,

10 you also interviewed him about the statements that were made by

11 my client; right?

12     A.   Yes.

13     Q.   And he basically said the same statements were made?

14     A.   Yes.

15     Q.   Okay.  And again did he -- did Logan Thompson indicate

16 to you those statements were specifically directed at anyone in

17 that car?

18     A.   No, he did not.

19     Q.        Leyva told you that he was in fear for his

20 safety; right?

21     A.   Correct.

22     Q.   And specifically because of the fact that Mr. Leyva was

23 driving the car and he knew that Mr. Leyva didn't know his way

24 around; right?

25     A.   Correct.

26     Q.   And specifically because he asked to get out of the car

27 and Mr. Leyva had not allowed him to get out of the car?

28     A.   Correct.

DIANNE M. SINCLAIR, CSR                    25

*Exhonerate and Compensate for Physical emotional mental and spiritual injuries incurred*

```
 1          THE CLERK:  Do you solemnly state that the evidence you
 2   shall now give before the court, shall be the truth, the whole
 3   truth and nothing but the truth, so help you God?
 4          THE WITNESS:  I do.
 5          THE CLERK:  Be seated.  If you can please state your
 6   full name, spelling both your first and last clearly for the
 7   record.
 8          THE WITNESS:  My name is James McDonald; J-a-m-e-s,
 9   M-c-D-o-n-a-l-d.
10          THE CLERK:  Thank you.
11                    JAMES MCDONALD,
12   called as a witness on behalf of the Plaintiff, was sworn and
13   testified as follows:
14                    DIRECT EXAMINATION
15   BY MS. DITTRICH:
16       Q.   Good morning.
17       A.   Good morning.
18       Q.   Can you please tell the Court where you're employed.
19       A.   I'm a senior investigator with the Riverside County
20   District Attorney's office.
21       Q.   Are you assigned currently to the domestic violence
22   unit?
23       A.   I am.
24       Q.   How long have you been a sworn peace officer?
25       A.   A little over 42 years.
26       Q.   Today, did you receive a call from me asking you to
27   contact Jennifer Jiminez with regard to the Leyva case?
28       A.   I did.
```

*[Handwritten annotation in right margin: "Hearsay should have come from Detective not officer Rubio Big Mistake used to change the Narrative"]*

1  the person that was in the booking photo that you sent

2  Ms. Jiminez this morning?

3      A.    I do.

4      Q.    Can you tell the Court where he's seated and what he's

5  wearing.

6      A.    He is sitting at the end of counsel table, wearing an

7  orange jumpsuit.

8          MS. DITTRICH:  May the record reflect that Mr. McDonald

9  has identified the defendant?

10          THE COURT:  Yes.

11          MS. DITTRICH:  I have nothing further.

12          THE COURT:  Thank you.

13          MR. DAVIS:  No questions, your Honor.

14          THE COURT:  Detective, thank you.

15          THE WITNESS:  Thank you.

16          THE COURT:  You can call your next witness.

17          MS. DITTRICH:  People rest.

18          THE COURT:  Mr. Davis?

19          MR. DAVIS:  No witnesses, your Honor.

20          THE COURT:  All right.  The preliminary hearing is now

21  closed evidence.

22          Argument?

23          MS. DITTRICH:  Submit subject to rebuttal, please.

24          MR. DAVIS:  Well, your Honor, I would ask that the

25  Court consider discharging Count 1 which is the residential

26  burglary on the basis that Mr. Leyva, the evidence shows, was

27  actually living at that house.  It's unclear what the boundaries

28  of that were, whether -- certainly he didn't have keys, but he

DIANNE M. SINCLAIR, CSR                    29

1  Complaint mentioned have been committed, and there's sufficient

2  cause to believe the within-named party, Onre Leyva, is guilty

3  thereof, I order that he be held to answer to the same.  I'm

4  also finding that there is sufficient cause to believe that he

5  has committed two violations of Penal Code Section 422.  I am

6  going designate those John Doe No. 1 and John Doe No. 2.  That

7  would be Count 5 and Count 6 speculatively.  I'll set this for

8  an arraignment on the Information.

9          Mr. Davis, do you have a date you want to set this for?

10          Do you want it within the statutory period?

11          MR. DAVIS:  Yes, please.  I believe the statutory date

12  would be March 11th.

13          THE COURT:  It would.

14          MR. DAVIS:  Okay.  That's good.

15          THE COURT:  That be will the order.  I'll set it for

16  March 11th.  Bail will remain fixed.

17          Thank you, Counsel.

18          MS. DITTRICH:  Thank you, your Honor.

19          MR. DAVIS:  Thank you, your Honor.

20          (Proceedings concluded.)

*[handwritten annotations:]*

Mr Davis is allowed "Im going to kill you nigga" from Discovery

Master Investigator III of P.D. Office

Roger LE Masters:

  never called to testify because

his Discovery was used to violate 6th & 14th

State/Federal Ammendment rights.

DIANNE M. SINCLAIR, CSR                    32

CALIFORNIA DEPARTMENT *of*
Corrections and Rehabilitation

# CLAIMANT GRIEVANCE CLAIMS DECISION RESPONSE

**Re:**  Grievance Claims Decision Response

| | |
|---|---|
| **Offender Name:** LEYVA, ONRE | **Date:** 10/19/2021 |
| **CDC#:** BM4998 | |
| **Current Location:** SATF-Facility G | **Current Area/Bed:** G  001 2 - 027002L |

**Log #:** 000000165599

## Claim #: 001

**Institution/Parole Region of Origin:**  California Substance Abuse Treatment Facility     **Facility/Parole District of Origin:**  SATF-Facility G
**Housing Area/Parole Unit of Origin:**
**Category:**  Offender Case Records                              **Sub-Category:**  Other Case Records Issue - NOS

### I. CLAIM

You claim you want a recall of sentence pursuant to Penal Code (PC) Section 1170(d)(1).

### II. RULES AND REFERENCES

#### A. CONTROLLING AUTHORITY

California Code of Regulations, Title 15, Division 3, 3043.2 and 3371.1

Public Safety and Rehabilitation Act of 2016 (Proposition 57)

PC Section 667(b)-(i)/1170.12 (Second Strike Offenders)

PC Section 1170(d)(1) (Recall of Commitment Process)

#### B. DOCUMENTS CONSIDERED

Abstract of Judgment and Minute Order for Riverside County Superior Court Case #SWF1900605

Strategic Offender Management System and Electronic Records Management System

Legal Status Summary Sheet

### III. REASONING AND DECISION

The California Department of Corrections and Rehabilitation (CDCR), Office of Appeals at the California Substance Abuse Treatment Facility and State Prison at Corcoran received your Inmate/Parolee Appeal (Form 602) on October 13, 2021. Your correspondence pertains to you wanting a recall of sentence pursuant to PC Section 1170(d)(1).

You were received by CDCR on November 13, 2020 to begin serving a total term of 9 Years for Case #SWF1900605. You were convicted of Count 4, PC 422 -Criminal Threat to Cause Great Bodily Injury/Death and a Case Enhancement of PC 667(a)(1)-Prior Felony Conviction of Serious Offense.

Inmates are screened for PC 1170(d)(1) eligibility by the Office of Research. Once a determination is made, the inmate is notified of the decision through institutional mail. This is not a Case Records function.

*Presented police report and discovery as evidence of innocence. To No AVAIL.*

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL**
CDCR 602 (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|
| | | 165599 | |
| | | FOR STAFF USE ONLY | |

You may appeal any California Department of Corrections and Rehabilitation (CDCR) decision, action, condition, policy or regulation that has a material adverse effect upon your welfare and for which there is no other prescribed method of departmental review/remedy available. See California Code of Regulations (CCR), Title 15, Section 3084.1. You must send this appeal and any supporting documents to the Appeals Coordinator (AC) within 30 calendar days of the event that led to the filing of this appeal. If additional space is needed, only one CDCR Form 602-A will be accepted. Refer to CCR 3084 for further guidance with the appeal process. No reprisals will be taken for using the appeal process.

Appeal is subject to rejection if one row of text per line is exceeded.                    WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First) | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| Leyva Onve | BM4998 | 61-27 | Administrative |

State briefly the subject of your appeal (Example: damaged TV, job removal, etc.):

Physical, Mental, Emotional Injuries

A. Explain your issue (if you need more space, use Section A of the CDCR 602-A):
Suffered physical Mental Emotional Injuries
as a result of being wrongfully convicted while
maintaining My innocense throughout entire process...

B. Action requested (if you need more space, use Section B of the CDCR 602-A):
Evaluation and Consideration in resolving all
remedies with the Board of Parole Hearings CDCR
Adult Distributions - Sacramento and Institutional.

Supporting Documents: Refer to CCR 3084.3.
☐ Yes, I have attached supporting documents.
List supporting documents attached (e.g., CDC 1083, Inmate Property Inventory; CDC 128-G, Classification Chrono):

_____

_____

☑ No, I have not attached any supporting documents. Reason : Reached out on many
occasions to resolve and remedy My situation
with all parties involved and now found myself for
the second time addressing + Administrative Appeal.

Inmate/Parolee Signature: _____ Date Submitted: 9/16/21

☐ By placing my initials in this box, I waive my right to receive an interview.

**C. First Level - Staff Use Only**                    Staff – Check One: Is CDCR 602-A Attached? ☐ Yes ☐ No
This appeal has been:
☐ Bypassed at the First Level of Review. Go to Section E.
☐ Rejected (See attached letter for instruction) Date: _____ Date: _____ Date: _____ Date: _____
☐ Cancelled (See attached letter) Date: _____
☐ Accepted at the First Level of Review.
   Assigned to: _____ Title: _____ Date Assigned: _____ Date Due: _____

First Level Responder: Complete a First Level response. Include interviewer's name, title, interview date, location, and complete the section below.
   Date of Interview: _____ Interview Location: _____
Your appeal issue is: ☐ Granted ☐ Granted in Part ☐ Denied ☐ Other: _____
   See attached letter. If dissatisfied with First Level response, complete Section D.
Interviewer: _____ Title: _____ Signature: _____ Date completed: _____
   (Print Name)
Reviewer: _____ Title: _____ Signature: _____
   (Print Name)
Date received by AC: _____

| AC Use Only |
|---|
| Date mailed/delivered to appellant ___ / ___ / ___ |

SEP 17 2021

STAFF USE ONLY

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL FORM ATTACHMENT**
CDCR 602-A (08/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|

**FOR STAFF USE ONLY**

Attach this form to the CDCR 602, only if more space is needed. Only one CDCR 602-A may be used.

Appeal is subject to rejection if one row of text per line is exceeded.    WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

Name (Last, First): Celva, Ernie    CDC Number: BM4999    Unit/Cell Number: 67-27    Assignment: Administrative

**A. Continuation of CDCR 602, Section A only (Explain your issue):**

I now suffer from a mild stroke with ataxis (weakness) as a result of an over-whelming amount of grief from being Ostracized "people vs Byrd" Superior Court and wrongfully convicted. My system has been corrupted and the reached out to the Courts Secretary in Sacramento & CDCR Adult Institutions including the Institutional Level and exhausted all administrative remedies with the appeal process including the Health Care Correspondence Appeal Branch in hopes of receiving emergency clemency and/or any other Prop57, 4170(d) reform act (1393) Senate bill (620). recall of commitment, recall for resentencing consideration and evaluation for a non-violent case that was a Bi-furcated Trial violating my 6th and 14th State and Federal Amendment Rights of Due Process and effective assistance of Counsel, Evaluate and consider.

Inmate/Parolee Signature:    Date Submitted: 9/16/21

**B. Continuation of CDCR 602, Section B only (Action requested):**

Under Prop 57 and other Policies and Procedures given for evaluation and consideration for non-violent recommendations, I hope to resolve and remedy all unconstitutional, illegal and inappropriate matters by addressing and reaching out to all forms of Advocacies and litigation while maintaining my innocence throughout these entire processes at the local, county, state and federal levels of conduct until we've reached a successful outcome. Thank You Kindly, with all due respect, Sincerely Yours.

Inmate/Parolee Signature:    Date Submitted: 9/16/21

STAFF USE ONLY

STATE OF CALIFORNIA
**HEALTH CARE GRIEVANCE**
CDCR 602 HC (Rev. 10/18)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Page 1 of 2

| STAFF USE ONLY | Expedited? ☐ Yes ☐ No | Tracking #: | SATF H  C 2 1 0 0 1 4 3 3 |
|---|---|---|---|

Staff Name and Title (Print) _____   Signature _____   Date _____

If you think you have a medical, mental health or dental emergency, notify staff immediately. If additional space is needed, use Section A of the CDCR 602 HC A Health Care Grievance Attachment. Only one CDCR 602 HC will be accepted. You must submit this health care grievance to the Health Care Grievance Office for processing. Refer to California Code of Regulations (CCR), Title 15, Chapter 2, Subchapter 2, Article 5 for further guidance with the health care grievance process.

Do not exceed more than one row of text per line. WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

Name (Last, First) MI *Reyna, Ohre*   CDCR #: *BM4998*   Unit/Cell #: *G1-27*

**SECTION A:** Explain the applied health care policy, decision, action, condition, or omission that has had a material adverse effect upon your health or welfare for which you seek administrative remedy.

I now suffer from a mild stroke ataxis / weakness from
being ostracized by "COLSM BYRD" Superior Court and my system has
been corrupted and placed under a tremendous amount of grief,
pain, physically, mentally and emotionally ever since my
incarceration.
I've exhausted all Administrative Appeal Remedies while trying
to apply preventative care with self preservation, but to NO
avail!
This is my second time reaching out to the Health Care Correspondence
Appeal Branch via Sacramento. Please Evaluate and Consider. TY

Supporting Documents Attached. Refer to CCR 3999.227  ☐ Yes  ☑ No

Grievant Signature _____   Date Submitted: 9/16/21

BY PLACING MY INITIALS IN THIS BOX, I REQUEST TO RECEIVE AN INTERVIEW AT THE INSTITUTIONAL LEVEL. *OFL*

**SECTION B:** HEALTH CARE GRIEVANCE REVIEW INSTITUTIONAL LEVEL: Staff Use Only    Is a CDCR 602 HC A attached?  ☐ Yes  ☒ No

This grievance has been:

☑ Rejected (See attached letter for instruction):  Date: **OCT 0 5 2021**  Date: _____

☐ Withdrawn (see section E)

☐ Accepted    Assigned To: _____   Title: _____   Date Assigned: _____   Date Due: 11/29/4

Interview Conducted?  ☐ Yes  ☐ No   Date of Interview: _____   Interview Location: _____

Interviewer Name and Title (print): _____   Signature: _____   Date: _____

Reviewing Authority Name and Title (print): *B Edwards CEO*   Signature: _____   Date: _____

Disposition: See attached letter   ☐ Intervention   ☐ No Intervention

HCGO Use Only: Date closed and mailed/delivered to grievant: _____

| 1. Disability Code | 2. Accommodation: | 3. Effective Communication |
|---|---|---|
| ☐ TABE score ≤ 4.0 | ☐ Additional time | ☐ Patient asked questions |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☐ Patient summed information |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | Please check one: |
| ☐ DDP | ☐ Basic ☐ Transcribe | ☐ Not reached ☐ Reached |
| ☐ Not Applicable | ☐ Other* | *See chrono/notes |

4. Comments. _____

RECEIVED
SATF
SEP 2 2 2021
HCGO

REJECTED
SATF
OCT 0 5 2021
HCGO

STAFF USE ONLY



GENERATED-DAN
STATE PRISON

CSP STATE PRISON AT CORCORAN
P.O.
CORCORAN CA 93212
NAME Gene L. Leyva
NUMBER BMU498
HOUSING 6-A-27

Office of Appeal's
Department of Corrections and Rehabilitations
P.O.Box 942883
SACRAMENTO CA 95811

SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE
Hall of Justice
Appeals Division
4100 Main Street
Riverside, CA 92501
(951) 777-3147

*RECEIVED*
*By Betty Frey at 4:18 pm, Oct 20, 2020*

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

OCT 2 0 2020
S. Rowe

TO:   Onre Leyva #201950231
30755-B Auld Road
Murrieta, CA 92563

E075948

CASE NAME: **People vs. Leyva**
CASE NUMBER: **SWF1900605**

The Court is unable to process the enclosed document(s) for the reason(s) indicated below:

☐   Notice of Appeal not timely filed pursuant to Rule 8.308(d), California Rules of Court.

☐   Notice of Appeal pursuant to 1237.5 was denied by the trial court.  A copy of the Notice of Appeal has been forwarded to Appellate Defender's Incorporated.

☐   We cannot determine which judgment or order is being appealed; request clarification.

☐   Notice Designating Record on Appeal is too general; papers and records must be identified in accordance with enclosed Court Policy.

☐   Notice to prepare Reporter's transcript not timely filed as required by rule 4(a), California Rules of Court.

☐   Notice to prepare Reporter's Transcript requires a deposit of $325.00 per day requested, or a waiver from the reporter(s), pursuant to Rule 4 (a), California Rules of Court.

☒   Other: **Appeal is premature. Defendant has not been sentenced.** Please contact the Appellate Defenders, Inc. 555 West Beech Street, Suite 300, San Diego, CA 92101.

Dated:   October 20, 2020

CLERK OF THE COURT

Deputy Clerk, S. Rowe

1 | STEVEN L. HARMON
Public Defender
2 | MARK C. DAVIS (Bar #247903)
Deputy Public Defender
3 | County of Riverside
30755-D Auld Road, Suite 2233
4 | Murrieta, CA 92562

5 | Attorneys for Defendant
ONRE LEYVA
6

7

8 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 | **FOR THE COUNTY OF RIVERSIDE**

10

11 | THE PEOPLE OF THE STATE OF          )   Case No.: SWF1900605
CALIFORNIA,                          )
12 |                                      )
                  Plaintiff,          )   **DEFENSE MOTION TO DISMISS PER**
13 |        vs.                          )   **PENAL CODE SECTION 1118.1**
                                       )
14 | ONRE LEYVA,                          )
                                       )
15 |                                      )
                                       )
16 |                  Defendant.         )
                                       )
17 | _____ )

18 | **STATEMENT OF LAW**

19

20 |         "In a case tried by before a jury, the court on motion of the defendant or on its own motion,

21 | at the close of the evidence on either side and before the case is submitted to the jury for decision,

22 | shall order the entry of a judgment of acquittal of one or more of the offenses charged in the

23 | accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of

24 | such offense or offenses on appeal." (Cal. Penal Code section 1118.1.)

25 |         The standard applied by a trial court in ruling upon a motion for judgment of acquittal is the

26 | same as the standard applied by an appellate court in reviewing the sufficiency of the evidence to

27 | support a conviction, that is, whether from the evidence, including all reasonable inferences to be

28 | drawn therefrom, there is any substantial evidence of the existence of each element of the offense

charged. (*People v. Dement* (2011) 53 Cal. $4^{th}$1.)

### A. Count 1, Penal Code section 459 1st

There was insufficient evidence presented to show that Mr. Leyva entered the home on Paradise Meadows with the intent to commit theft or another felony therein, which is a required element of the charge. In order to be guilty of theft, the defendant must take property without the owner's consent. Here, there is no evidence whatsoever that Mr. Leyva took property belonging to Jennifer Jimenez without the owner's consent, or that he intended to do so. In fact, the evidence shows quite clearly that Mr. Leyva was living in the home at Paradise Meadows and staying in an upstairs room for the month preceding the incident. He had personal belongings in that residence. Since there was no "owner" of the property to testify in this matter, the prosecution has failed to provide any evidence that Mr. Leyva took any items without the owner's consent, or that he intended to do so.

### B. Count 2, Vehicle Code section 10851

There was insufficient evidence to show that Mr. Leyva took or drove the truck in question without the owner's consent, which is a required element of the charge.   According to ⸻ ⸻.   Mr. Leyva would regularly drive the truck during the time that he was staying at the residence. Since she did not testify, there is no evidence that the registered owner of the vehicle, Ms. Jimenez, did not consent to the taking of the truck. This lack of consent is a required element that the prosecution has failed to prove.

### C. Count 8, Child Endangerment

There was insufficient evidence to show that Mr. Leyva acted with criminal negligence when he drove home with his daughter in the backseat of the car. The only percipient witness to the incident,            , described only minor traffic violations. In addition, there was no evidence of verbal or physical aggression directed at the minor in question.

///
///
///

2

**STRIKE PRIORS – 667(c) & (e)(2)(A) and 1170.12(c)(2)(a)**

It is further alleged that prior to the commission of the offenses charged herein the defendant, ONRE LEYVA, was convicted of two or more serious and violent felonies, within the meaning of Penal Code sections 667, subdivisions (c) and (e)(2)(A), and 1170.12, subdivision (c)(2)(a), to wit:

**FIRST PRIOR**, a conviction on or about 6/1/2011 in the Superior Court of the State of California, for the County of Los Angeles, for the crime of THREATS TO INJURE, in violation of Penal Code section 422, and

**SECOND PRIOR**, a conviction on or about 6/26/1995, in the Superior Court of the State of California, for the County of Los Angeles, for the crime of THREATS TO INJURE, in violation of Penal Code section 422.

It is further alleged that probation shall not be granted nor shall the execution and imposition of any sentence be suspended pursuant to Penal Code section 667 subdivision (c)(2).

**1109 NOTICE**

Pursuant to section 1109 of the Evidence Code, evidence of the defendant's commission of other acts of domestic violence may be admissible at trial in a criminal action in which the defendant is/are accused of an offense involving domestic violence. The People hereby give notice of the People's intent to admit evidence of prior acts of domestic violence pursuant to Evidence Code section 1109. These incidents include the prior incident(s) described in the police report, chronological report, and/or tapes already provided, and other alleged incidents of abuse, which will be provided as they are obtained by the prosecution.

**1370 NOTICE**

The People hereby notify defendant and defense counsel that the People intend to proceed under the provisions of Evidence Code section 1370 should the victim become unavailable at the time of trial.

MICHAEL A. HESTRIN
District Attorney

QUINN R. BARANSKI
Managing Deputy District Attorney

QRB:iw

MICHAEL A. HESTRIN
DISTRICT ATTORNEY
County of Riverside
State of California

4



CALIFORNIA DEPARTMENT *of*
Corrections and Rehabilitation

# OFFICE OF APPEALS DECISION

**Offender Name:** LEYVA, ONRE

**CDC#:** BM4998

**Current Location:** SATF–Facility G

**Date:** 10/16/2022

**Current Area/Bed:** G  001 1 - 006003U

**Log #:** 000000263654

## Claim #  001

**Received at Institution/Parole Region:**   California Substance Abuse Treatment Facility

**Submitted to Facility/Parole District:**   California Substance Abuse Treatment Facility

**Housing Area/Parole Unit:** G  001 2

**Category:**  Offender Case Records

**Sub-Category:** Eligibility Review for Early Parole or Release

### I. ISSUE ON APPEAL

You are appealing the decision to deny your claim that the Board of Parole Hearings has jurisdiction over the Eligibility Parole Process pursuant to Proposition 57 and they never recommended a recall of your sentence under Senate Bill 1393.

### II. RULES AND REFERENCES

#### A. CONTROLLING AUTHORITY

Penal Code, section 1170; Senate Bill 1393; Assembly Bill 1540; Title 15, sections 3076-3076.4

#### B. DOCUMENTS CONSIDERED

Grievance/Appeal Log #263654; Board of Parole Hearing Decisions dated January 28, and March 24, 2022

### III. REASONING AND DECISION

As stated in the Office of Grievances' response, records indicate you were denied release at your most recent Board of Parole Hearings. Senate Bill 1393 permits a judge to use discretion under Penal Code 1385 to strike the five-year prior serious conviction enhancement in the interest of justice. The Department cannot make any changes to you sentence without a court order, and the department has not received any court orders striking the five-year prior enhancement and amending your term in case SWF1900605. Assembly Bill 1540 amended Penal Code, section 1170 regarding the court requirements. The discretion to recommend resentencing pursuant to Penal Code, section 1170(d), lies solely with the Secretary of the Department. Because inmates are not entitled to such a recommendation, it is not a violation of departmental regulations if the Secretary decides not to make a recommendation. Additionally, your claims regarding the Board of Parole Hearings is outside the jurisdiction of the Department. You may file a complaint with the appropriate outside agency or department. Thus, this claim is denied.

### IV. REMEDY

Your claim has been denied. Therefore, there is no applicable remedy.

#### Decision: Denied

After a thorough review of all documents and evidence available at the time of this written decision, it is the order of the Office of Appeals that this claim is denied. This decision exhausts the administrative remedies available to the claimant within CDCR.

State of California

Department of Corrections and Rehabilitation
Office of Appeals

# Memorandum



To:        Claimant

Subject:   **DECISION ON APPEAL**

Thank you for submitting your appeal for review by the California Department of
Corrections, Office of Appeals. Your appeal decision letter is included in this envelope.

Pursuant to current governing regulations, a copy of your CDCR Form 602-2 is
included along with your appeal decision letter. However, no other supporting
documents are included in this envelope. Please be advised that a copy of your entire
appeal package is maintained in your Central File. You may obtain these documents
by requesting an *Olsen* review as described in the Department Operations Manual,
sections 13030.16 and 13030.17.

Thank you,

HOWARD E. MOSELEY
Associate Director

STATE OF CALIFORNIA
**APPEAL OF GRIEVANCE**
CDCR 602-2 (03/20)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 1 of 2

| **STAFF USE ONLY** | Appeal #:_____ Date Received:_____ |
|---|---|
| | Date Due:_____ |
| | Categories:_____ |
| | Grievance #: 203654 |

Claimant Name: Leiva      CDCR #: BM4098

Current Housing/Parole Unit:_____ Institution/Facility/Parole Region:_____

☐ There are no claims that can be appealed.

☐ The following claims cannot be appealed:

Claim #s:

_____
_____
_____

*This is the process to appeal the decision made regarding a claim that is not listed above.*

Claim #:_____

Explain the reason for your appeal of any claims not listed above. Be as specific as you can.

*I am dissatisfied with the response I was given because*_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Are there documents that would be helpful to support your position? Attach copies of those documents, if you don't have the documents, identify them as best you can below:

_____
_____
_____
_____
_____
_____

**DISTRIBUTION**    Original: Claimant's File    Copies: DAI, DAPO, and Claimant

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**      **CDC Form 128B**

CDCR Number: <u>BM4998</u>      Name:  <u>ONRE LEYVA</u>                          Housing: _____

[X]   Inmate is eligible for the Determinately-Sentenced Nonviolent Offender Parole Review Process.

**NPED:**     December 23, 2021

(If your EPRD is earlier than your NPED or your NPED is less than 180 days after your EPRD, the EPRD will control and you will not be referred to the Board. If you became eligible for nonviolent parole consideration under *In re Gadlin* (those required to register under Penal Code section 290), and your NPED is on or before July 1, 2021, you will be referred to the Board by July 1, 2021, unless at that time your earliest possible release date is on or before November 1, 2021.)

[ ]   Inmate is not eligible for the Determinately-Sentenced Nonviolent Offender Parole Review Process because:

[ ]   The inmate is not currently serving time under the determinant sentencing law (DSL).

[ ]   The inmate will be released to parole or community supervision before their nonviolent parole eligible date (NPED).

[ ]   The inmate's current offense, whether controlling or non-controlling, is a violent offense pursuant to Penal Code, section 667.5(c).

[ ]   The inmate has been, or will be, scheduled for a parole suitability hearing in the next 12 months.

<u>Right to Appeal:</u>
If you believe this decision is not correct, you have a right to file an appeal under section 3084 of title 15 of the California Code of Regulations.

<u>Authority:</u>
The regulations implementing the Determinately-Sentenced Nonviolent Offender Parole Review Process are contained in sections 3490 through 3493 and sections 2449.1 through 2449.7 of title 15 of the California Code of Regulations.

Name/Title:     <u>S DELAFUENTE /Case Records</u>

Date:            September 23, 2022            Institution:  SATF

**DETERMINATELY-SENTENCED NONVIOLENT OFFENDER PAROLE PROCESS ANALYSIS**

STATE OF CALIFORNIA - DEPARTMENT OF CORRECTIONS AND REHABILITATION                    GAVIN NEWSOM, GOVERNOR

**BOARD OF PAROLE HEARINGS**
P.O. BOX 4036
SACRAMENTO, CA 95812-4036



June 09, 2022

LEYVA, ONRE #BM4998
G 001 2-027002L
SATF-G

Onre Leyva:

This is in response to your correspondence received by the Board of Parole Hearings (BPH) on April 22, 2022, in which you are appealing your nonviolent parole review decision.

You previously filed an appeal which was responded to on May 24, 2022. You are allowed one appeal only. The Board will take no further action at this time.

Thank you,

Board of Parole Hearings

P.S. They wouldn't accept the police report or discovery as new evidence when I barely had received it by my Direct Appeal Attorney after my appeal was denied and it was too late to send when appealing my N.E.P.D. (non-violent eligibelity parole date I 602'd it

## DETERMINATELY-SENTENCED NONVIOLENT DECISION FORM

### INMATE INFORMATION

Review Type:         Decision Review Determinately-Sentenced Nonviolent Offender

Inmate Name:         LEYVA, ONRE

CDCR Number:         BM4998

Institution:         Substance Abuse Treatment Facility and State Prison

### BPH DECISION REVIEW

☐ BPH does not have jurisdiction.

   ☐ Untimely request under section 2449.7 (a).

   ☐ Inmate not currently eligible for parole consideration under section 3491.

☒ BPH has jurisdiction

   ☒ Decision Upheld.

   ☐ Decision Vacated.

### COMMENTS

On 1/28/22, the Board Parole Hearings (BPH) conducted an NV review and denied release based upon aggravating risk factors in the inmate's case. The inmate filed a request for reconsideration and disagrees with the decision to deny release and the factors used in the decision and request to be released.

Today all the material submitted was considered. After careful review of the decision and the case factors, there were no factual errors in the decision. The NV criteria were properly applied to the facts of the case under section 2449.5. The inmate has been provided with an opportunity to be heard, a fair and impartial hearing panel and a thorough review of his case and therefore has been afforded due process in the nonviolent review parole process. There was no material new information provided to the BPH in the inmate's request for reconsideration.

It is within the discretion of the hearing officer to review the facts in the case, properly apply the NV criteria under section 2449.5 and then make a reasonable finding on each case factor to determine if they are aggravating or mitigating. Under Title 15, Division 2, section 2449.5(a), the mitigating and aggravating factors that are set forth in the regulations are general guidelines and the importance attached to any factor or combination of factors in a particular case is left to the judgment of the hearing officer. The hearing officer then is required to balance those findings on each of the factors to determine if the inmate poses an unreasonable risk of violence or significant criminal activity if released. Here all of the facts and circumstances of the case were reviewed, findings were made on each factor applying the regulatory criteria properly and they were balanced against each other finding he would pose an unreasonable risk of violence or significant criminal activity if released. The denial decision is found to have a substantial nexus to facts and the findings in this case finding the inmate poses a current unreasonable risk of violence or significant criminal activity.

Pursuant to CCR Title 15, Division 2, sections 2449.6 and 2449.7, after careful consideration of all of the factors in this case, including the inmate's file, the BPH written denial decision and the inmate's reconsideration request, I find there was no material error of fact or law in the denial decision. BPH decision to deny release is affirmed.

So ordered.

**BOARD OF PAROLE HEARINGS**

## INMATE COPY

**STATE OF CALIFORNIA**

### NONVIOLENT DECISION FORM

| NONVIOLENT INFORMATION | |
|---|---|
| Inmate Name: | LEYVA, ONRE   G 001  2-027002L |
| CDCR Number: | BM4998 |
| Institution: | Substance Abuse Treatment Facility and State Prison |

### BPH DECISION

### JURISDICTIONAL REVIEW

[ ] BPH does not have jurisdiction, no further review.

[X] BPH has jurisdiction.

### REVIEW ON THE MERITS

[ ] Recommendation to release approved.

[X] Recommendation to release denied.

**Decision for Leyva, Onre, BM4998:** When considering together the findings on each of the inmate's four case factors, the inmate poses a current, unreasonable risk of violence or a current, unreasonable risk of significant criminal activity to the community. Release is denied.

**Statement of Reasons:**
**Case Factor #1 - Current Commitment Offense**

The circumstances of the inmate's current commitment offense(s) aggravate the inmate's current risk of violence or significant criminal activity. The inmate was sentenced to a total term of 9 years on the current commitment offense(s). The commitment offense(s) is/are PC 422 criminal threat (4 yrs) with PC 667(a)(1) prior serious felony (5 yrs).

On 7/25/19, the inmate became aggressive while having a dinner with his ex wife and children. The inmate screamed, punched his inmate's ex wife (who was the driver) and pulled the victim's hair. When the victim stopped on the side of a road, the inmate pulled the victim out of the driver seat and drove away the vehicle with other victims in the car. The inmate then went to the victim's residence and stole some personal items as well as a truck.

After careful review and consideration of the aggravating and mitigating circumstances in all of the current crimes, there are aggravating circumstance(s) in the case and the following aggravating circumstances make this an aggravating factor in the case:

1. There were one or more victims who suffered physical injury or threat of physical injury. The inmate physically assaulted the victim.

Therefore, the current crimes are found to be an aggravating risk factor in the case.

**Case Factor #2 - Prior Criminal Record**

NAME: LEYVA

CDC#: BM4998

INST: SATF

BPH 1048 (C) (Rev. 4/2018)

1 of 4

BOARD OF PAROLE HEARINGS                                                 STATE OF CALIFORNIA

The inmate's prior criminal history began in 1994 (misdemeanor identity theft) and continued until the commitment offense(s) in 2020. The inmate's prior criminal record is a factor aggravating the inmate's current risk of violence or significant criminal activity. The inmate has the following adult criminal convictions:

6/26/95  PC 422 criminal threat; PC 594(a) vandalism; PC 242/243(a) misdemeanor battery
1/8/98  PC 136.1(b)(1) witness intimidation, misdemeanor
7/31/02  Misdemeanor domestic violence in NV
0/1/11  PC 422 criminal threat
6/3/14  HS 11350 possession of controlled substance for sale (later reduced to misdemeanor)

The circumstances of the inmate's prior criminal record that mitigate the inmate's current risk of violence or significant criminal activity are:

1.  The inmate has not been convicted of a violent felony as defined in subdivision (c) of section 667.5 of the Penal Code in the past 15 years.

2.  The inmate was free from incarceration for a misdemeanor conviction involving physical injury to a victim or a felony conviction for five years or more prior to his or her current conviction.

The circumstances of the inmate's prior criminal record that aggravate the inmate's current risk of violence or significant criminal activity are:

1.  The inmate's prior criminal convictions coupled with the inmate's current conviction show a pattern of assaultive behavior. The inmate has the following prior assaultive offenses; 1995 criminal threat and misdemeanor battery, 1998 witness intimidation, 2011 criminal threat. The inmate exhibited assaultive behavior in the current offence as noted above.

Analysis: When balancing the aggravating circumstances against the mitigating circumstances, they tend to show that the circumstances of the inmate's prior criminal record aggravate the inmate's current risk of violence or significant criminal activity because of a pattern of assaultive behavior. The inmate's first assaultive convictions are criminal threat and misdemeanor battery in 1995. The inmate then was convicted of witness intimidation (misdemeanor) in 1998 and domestic violence (misdemeanor) in 2002. The inmate served his first prison term for criminal threat in 2011. A substantial amount of time as lapsed since theses offences. The passage of time, however, did not mitigate the inmate's risk of violence as the inmate engaged in similar assaultive actions in the current offence.

### Case Factor #3 - Institutional Adjustment

The inmate was received into the California Department of Corrections and Rehabilitation on the current commitment offense(s) since October 22, 2020, a period of approximately 1 year and 3 months.

The inmate has been involved in the following activities:

Serious rules violation reports: None

Work/vocational assignments: None

Educational assignments:
ABE II  11/30/21-present, 17.25 hrs

Self-help or rehabilitative programs:
SAP  10/2/21-12/23/21, 10 hrs (completed)
Life skills  10/21-12/23/21, 9 hrs (completed): 1/5/22-present, 1 hr

The inmate received 218.9 hrs of treatment through MHSDS including coping, life skills, mental health education, and social skills.

The following circumstances of the inmate's institutional behavior, work history, and rehabilitative programming mitigate the inmate's current risk of violence or significant criminal activity:

1.  The inmate has not been found guilty of institutional Rules Violations Reports resulting in physical injury or

NAME: LEYVA                               CDC#: BM4998                               INST: SATF

**BOARD OF PAROLE HEARINGS**                                                    **STATE OF CALIFORNIA**

threat of physical injury since the inmate's last admission to prison. Nor does the inmate have a recent serious Institutional Rules Violation Report.

2. There is no reliable information in the confidential section of the inmate's central file indicating the inmate has engaged in criminal activity since the inmate's last admission to prison.

The following circumstances of the inmate's institutional behavior, work history, and rehabilitative programming aggravate the inmate's current risk of violence or significant criminal activity:

1. The inmate has limited participation in available vocational, educational, or work assignments. The only assignment the inmate participated is less than 20 hrs of ABE II. (The inmate has been in EOP.)

2. The inmate has limited participation in available rehabilitative or self-help programming to address the circumstances that contributed to the inmate's criminal behavior including domestic violence. The inmate has participated in some programs as listed above. However, the amount of the programs the inmate has participated so far is insufficient to fully address the circumstances of his offences.

Analysis: When balancing the aggravating circumstances against the mitigating circumstances, they tend to show that the inmate's institutional behavior, work history, and rehabilitative programming aggravate the inmate's current risk of violence or significant criminal activity because of inadequate programming. The inmate is commended for remaining disciplinary free for the past 1+ year of the current term. However, the inmate's programming is found limited as more fully expressed above.

**Case Factor #4 - Response to Legal Notice**

The Board of Parole Hearings received responses to the legal notices regarding the inmate's nonviolent review. The following responses were reviewed and considered in this decision: the inmate received 4/28/21 and 12/3/21, Jacob Leyva dated 12/10/21.

**SUMMARY:** When reviewing all of the case factors as documented above, and taking into account the totality of the circumstances, including the passage of time, the inmate's age (49), the inmate's physical and cognitive limitations, the factors aggravating the inmate's current risk of violence outweigh the factors mitigating the inmate's current risk of violence or significant criminal activity.

To prepare for this review, the author reviewed the Disability and Effective Communications System as well as the inmate's record to determine all physical and cognitive disabilities documented for this inmate. In reaching the decision articulated below, the author fully considered any mitigating impact of each documented disability on all the factors considered all the factors considered.

Here, all factors are aggravating. The inmate has numerous past assaultive convictions and suffered a prior prison term. Although more than 10 years had lapsed since the inmate's last prison term, the inmate again engaged in aggression in the current offence. The inmate is commended for remaining disciplinary free during the current term and participation in some programs. However, the amount of programs the inmate has received is insufficient to address the circumstances of his offences, including domestic violence.

The inmate poses a current unreasonable risk of violence or a current unreasonable risk of significant criminal activity. The inmate is denied for release.


*Kate Iwanami*                                                             January 28, 2022

**SIGNATURE**                                                              **REVIEW DATE**

**IWANAMI, KATE - Deputy Commissioner**


NAME: LEYVA                              CDC#: BM4998                              INST: SATF

BPH 1048 (C) (Rev. 4/2018)                                                         3 of 4

**BOARD OF PAROLE HEARINGS**                                          **STATE OF CALIFORNIA**

If you believe this decision is not correct, you may send a written request to :

> Board of Parole Hearings
> Attn: Nonviolent Parole Review
> P.O. Box 4036
> Sacramento, CA  95812-4036

Your request must be post marked within 30 calendar days from the date you were served this decision and your request must include a brief written statement explaining why you believe the decision is not correct. You may include additional information to support your request.

NAME: LEYVA                          CDC#: BM4998                          INST: SATF

BPH 1048 (C) (Rev. 4/2018)                                                    4 of 4

**CASH BOND**
RECOMMENDED:
$1,000,000.00

MICHAEL A. HESTRIN
DISTRICT ATTORNEY

AGENCY#: ME192060119/RSDP

# FILED
Superior Court of California
County of Riverside
## 01/08/2020
DANA F SAFFOLD

SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE
(Southwest)

| THE PEOPLE OF THE STATE OF CALIFORNIA, | D.A.# 385425 |
|---|---|
| Plaintiff, v. ONRE LEYVA DOB: 3/1/1972 Defendant. | CASE NO. SWF1900605 AMENDED FELONY COMPLAINT |

COUNT 1

The undersigned, under penalty of perjury upon information and belief, declares:
That the above named defendant ONRE LEYVA committed a violation of Penal Code section
459, a felony, in that on or about 7/25/2019, in the County of Riverside, State of California, the
defendant did willfully and unlawfully enter a certain building, to wit, an inhabited dwelling
house, located at 24772 PARADISE MEADOWS RD, MENIFEE, with intent to commit theft
and a felony. [2/4/6 prison]

It is further alleged that, except in an unusual case where the interest of justice would best be
served within the meaning of California Rule of Court 4.413 subdivision (c), probation shall
not be granted pursuant to Penal Code section 462, subdivision (a).

COUNT 2

That the above named defendant ONRE LEYVA committed a violation of Vehicle
Code section 10851, subdivision (a), a FELONY, in that on or about 7/25/2019, in the County
of Riverside, State of California, the defendant did willfully and unlawfully drive or take a
certain vehicle, to wit, a LIC 51642R2, 1998 GMC, the property of another, without the
consent of and with intent to deprive the owner of title to and possession of said vehicle.
[16/2/3]

COUNT 3

That the above named defendant ONRE LEYVA committed a violation of Penal Code
section 236, a felony, in that on or about 7/25/2019, in the County of Riverside, State of
California, the defendant did willfully and unlawfully, by violence, menace, fraud, and deceit,
violate the personal liberty of JOHN DOE (JL).  [16/2/3]

1

Case #SWF1900605                                   Filing Date 01/08/2020

## COUNT 4

That the above named defendant ONRE LEYVA committed a violation of Penal Code section 243, subdivision (e)(1), a misdemeanor, in that on or about 7/25/2019, in the County of Riverside, State of California, the defendant did willfully and unlawfully commit battery upon the person of JANE DOE (JJ), a spouse, person with whom the defendant is cohabitating, person who is the parent of defendant's child, non- cohabitating former spouse, fiance, fiancee, and a person with whom the defendant currently has, or previously had, a dating relationship. [1yr.]

### SERIOUS PRIOR OFFENSE 1

It is further alleged that the defendant, ONRE LEYVA, was on or about 6/1/2011 in the Superior Court of the State of California, for the County of Los Angeles, convicted of the crime of, THREATS TO INJURE, a serious felony, in violation of section 422 of the Penal Code, within the meaning of Penal Code section 667, subdivision (a).  [5yr.]

### SERIOUS PRIOR OFFENSE 2

It is further alleged that the defendant, ONRE LEYVA, was on or about 6/26/1995 in the Superior Court of the State of California, for the County of Los Angeles, convicted of the crime of, THREATS TO INJURE, a serious felony, in violation of section 422 of the Penal Code, within the meaning of Penal Code section 667, subdivision (a).  [5yr.]

### STRIKE PRIORS – 667(C) & (E)(2)(A) AND 1170.12(C)(2)(A)

It is further alleged that prior to the commission of the offense(s) charged herein the defendant, ONRE LEYVA, was convicted of two or more serious and violent felonies, within the meaning of Penal Code sections 667, subdivisions (c) and (e)(2)(A), and 1170.12, subdivision (c)(2)(a), to wit:

FIRST PRIOR, a conviction on or about 6/1/2011 in the Superior Court of the State of California, for the County of LOS ANGELES, for the crime of THREATS TO INJURE, in violation of Penal Code section 422, and

SECOND PRIOR, a conviction on or about 6/26/1995 in the Superior Court of the State of California, for the County of LOS ANGELES, for the crime of THREATS TO INJURE, in violation of Penal Code section 422.

It is further alleged that probation shall not be granted nor shall the execution and imposition of any sentence be suspended pursuant to Penal Code section 667 subdivision (c)(2).

### 1109 NOTICE

Pursuant to section 1109 of the Evidence Code, evidence of the defendant's commission of other acts of domestic violence may be admissible at trial in a criminal action in which the defendant is/are accused of an offense involving domestic violence. The People hereby give notice of the People's intent to admit evidence of prior acts of domestic violence pursuant to Evidence Code section 1109. These incidents include the prior incident(s) described in the police report, chronological report, and/or tapes already provided, and other alleged incidents of abuse, which will be provided as they are obtained by the prosecution.

Case #SWF1900605                              Filing Date 01/08/2020

**1370 NOTICE**

The People hereby notify defendant and defense counsel that the People intend to proceed under the provisions of Evidence Code section 1370 should the victim become unavailable at the time of trial.

MARSY'S LAW

Information contained in the reports being distributed as discovery in this case may contain confidential information protected by Marsy's Law and the amendments to the California Constitution Section 28. Any victim(s) in any above referenced charge(s) is entitled to be free from intimidation, harassment, and abuse. It is unlawful for defendant(s), defense counsel, and any other person acting on behalf of the defendant(s) to use any information contained in the reports to locate or harass any victim(s) or the victim(s)'s family or to disclose any information that is otherwise privileged and confidential by law. Additionally, it is a misdemeanor violation of California Penal Code § 1054.2a(3) to disclose the address and telephone number of a victim or witness to a defendant, defendant's family member or anyone else. Note exceptions in California Penal Code § 1054.2a(a) and (2).

I declare under penalty of perjury upon information and belief under the laws of the State of California that the foregoing is true and correct.

Michael A. Hestrin
District Attorney

Dated: December 31, 2019

By: Quinn R. Baranski
Deputy District Attorney

rr

3

MICHAEL A. HESTRIN
District Attorney
County of Riverside
30755-D Auld Road, 3rd Floor
Murrieta, CA 92563
Telephone: (951) 304-5400
Quinn R. Baranski
Managing Deputy District Attorney
State Bar No. 163258

Arraign: 03/11/2020

**FILED**
Superior Court of California
County of Riverside
**02/28/2020**
DANA F SAFFOLD

SUPERIOR COURT OF CALIFORNIA

COUNTY OF RIVERSIDE

(Southwest)

THE PEOPLE OF THE STATE OF CALIFORNIA,
                                    Plaintiff,

                    v.

ONRE LEYVA
                                    Defendant.

NO.  SWF1900605

I N F O R M A T I O N

AGENCY#: ME192060119/RSDP

COUNT 1

    The District Attorney of the County of Riverside hereby accuses ONRE LEYVA of a violation of Penal Code section 459, a felony, in that on or about 7/25/2019, in the County of Riverside, State of California, the defendant did willfully and unlawfully enter a certain building, to wit, an inhabited dwelling house, located at 24772 PARADISE MEADOWS ROAD, MENIFEE, with intent to commit theft and a felony. [2/4/6 prison]

    It is further alleged that, except in an unusual case where the interest of justice would best be served within the meaning of California Rule of Court 4.413 subdivision (c), probation shall not be granted pursuant to Penal Code section 462, subdivision (a).

COUNT 2

    For a further and separate cause of action, being a different offense from but connected in its commission with the charge set forth in count 1 hereof, the District Attorney of the County of Riverside hereby accuses ONRE LEYVA of a violation of Vehicle Code section 10851, subdivision (a), a felony, in that on or about 7/25/2019, in the County of Riverside, State of

MICHAEL A. HESTRIN
DISTRICT ATTORNEY
County of Riverside
State of California

1

Case #SWF1900605                                   Filing Date 02/28/2020

1   California, the defendant did willfully and unlawfully drive or take a certain vehicle, to wit: a
2   1998 GMC, LICENSE PLATE NO. 51642R2, the property of another, without the consent of and
3   with intent to deprive the owner of title to and possession of said vehicle.  [16/2/3]
4                                          COUNT 3
5           For a further and separate cause of action, being a different offense from but connected in
6   its commission with the charges set forth in counts 1 and 2 hereof, the District Attorney of the
7   County of Riverside hereby accuses ONRE LEYVA of a violation of Penal Code section 422, a
8   felony, in that on or about 7/25/2019, in the County of Riverside, State of California, the
9   defendant did willfully and unlawfully, with the specific intent that their statements would be
10  taken as a threat, threaten another person, to wit: JOHN DOE (J.L.), to commit a crime which
11  would result in great bodily injury and death, which threat on its face and under the circumstances
12  in which it was made was so unequivocal, unconditional, immediate and specific as to convey to
13  said person a gravity of purpose and an immediate prospect of execution of the threat, and thereby
14  caused said person to reasonably be in sustained fear for their own safety and the safety of
15  members of their immediate family.  [16/2/3 prison]
16                                         COUNT 4
17          For a further and separate cause of action, being a different offense from but connected in
18  its commission with the charges set forth in counts 1 through 3 hereof, the District Attorney of the
19  County of Riverside hereby accuses ONRE LEYVA of a violation of Penal Code section 422, a
20  felony, in that on or about 7/25/2019, in the County of Riverside, State of California, the
21  defendant did willfully and unlawfully, with the specific intent that their statements would be
22  taken as a threat, threaten another person, to wit: JOHN DOE (L.T.), to commit a crime which
23  would result in great bodily injury and death, which threat on its face and under the circumstances
24  in which it was made was so unequivocal, unconditional, immediate and specific as to convey to
25  said person a gravity of purpose and an immediate prospect of execution of the threat, and thereby
26  caused said person to reasonably be in sustained fear for their own safety and the safety of
27  members of their immediate family.  [16/2/3 prison]
28                                         COUNT 5
29          For a further and separate cause of action, being a different offense from but connected in
30  its commission with the charges set forth in counts 1 through 4 hereof, the District Attorney of the
31  County of Riverside hereby accuses ONRE LEYVA of a violation of Penal Code section 236, a
32  felony, in that on or about 7/25/2019, in the County of Riverside, State of California, the
33  defendant did willfully and unlawfully, by violence, menace, fraud, and deceit, violate the
34  personal liberty of JOHN DOE (J.L.).  [16/2/3]
35  / / /
36  / / /

MICHAEL A. HESTRIN
DISTRICT ATTORNEY
County of Riverside
State of California

2

Case #SWF1900605                        Filing Date 02/28/2020

COUNT 6

1
2      For a further and separate cause of action, being a different offense from but connected in
3 its commission with the charges set forth in counts 1 through 5 hereof, the District Attorney of the
4 County of Riverside hereby accuses ONRE LEYVA of a violation of Penal Code section 236, a
5 felony, in that on or about 7/25/2019, in the County of Riverside, State of California, the
6 defendant did willfully and unlawfully, by violence, menace, fraud, and deceit, violate the
7 personal liberty of JOHN DOE (L.T.).  [16/2/3]

COUNT 7

8
9      For a further and separate cause of action, being a different offense from but connected in
10 its commission with the charges set forth in counts 1 through 6 hereof, the District Attorney of the
11 County of Riverside hereby accuses ONRE LEYVA of a violation of Penal Code section 243,
12 subdivision (e)(1), a misdemeanor, in that on or about 7/25/2019, in the County of Riverside, State
13 of California, the defendant did willfully and unlawfully commit battery upon the person of JOHN
14 DOE (J.J.), a spouse, person with whom the defendant is cohabitating, person who is the parent of
15 defendant's child, non- cohabitating former spouse, fiance, fiancee, and a person with whom the
16 defendant currently has, or previously had, a dating relationship.  [1yr.]

COUNT 8

17
18      For a further and separate cause of action, being a different offense from but connected in
19 its commission with the charges set forth in counts 1 through 7 hereof, the District Attorney of the
20 County of Riverside hereby accuses ONRE LEYVA of a violation of Penal Code section 273a,
21 subdivision (b), a misdemeanor, in that on or about 7/25/2019, in the County of Riverside, State of
22 California, the defendant did willfully and unlawfully, under circumstances other than those likely
23 to produce great bodily harm and death, cause a child, JANE DOE (A.J.), AGE 12, to suffer and
24 did inflict unjustifiable physical pain and mental suffering on said child and, having care and
25 custody of said child, did permit the health of said child to be endangered.  [6mo.]

26     **SERIOUS PRIOR OFFENSE NO. 1**
27      It is further alleged that the defendant, ONRE LEYVA, was on or about 6/1/2011 in the
28 Superior Court of the State of California, for the County of Los Angeles, convicted of the crime of,
29 THREATS TO INJURE, a serious felony, in violation of section 422 of the Penal Code, within the
30 meaning of Penal Code section 667, subdivision (a). [5yr.]

31     **SERIOUS PRIOR OFFENSE NO. 2**
32      It is further alleged that the defendant, ONRE LEYVA, was on or about 6/26/1995 in the
33 Superior Court of the State of California, for the County of Los Angeles, convicted of the crime of,
34 THREATS TO INJURE, a serious felony, in violation of section 422 of the Penal Code, within the
35 meaning of Penal Code section 667, subdivision (a). [5yr.]

36

MICHAEL A. HESTRIN
DISTRICT ATTORNEY
County of Riverside
State of California

3

Case #SWF1900605                                    Filing Date 02/28/2020

1     **<u>STRIKE PRIORS – 667(c) & (e)(2)(A) and 1170.12(c)(2)(a)</u>**

2       It is further alleged that prior to the commission of the offenses charged herein the

3 defendant, ONRE LEYVA, was convicted of two or more serious and violent felonies, within the

4 meaning of Penal Code sections 667, subdivisions (c) and (e)(2)(A), and 1170.12, subdivision

5 (c)(2)(a), to wit:

6       **<u>FIRST PRIOR</u>**, a conviction on or about 6/1/2011 in the Superior Court of the State of

7 California, for the County of Los Angeles, for the crime of THREATS TO INJURE, in violation of

8 Penal Code section 422, and

9       **<u>SECOND PRIOR</u>**, a conviction on or about 6/26/1995, in the Superior Court of the State

10 of California, for the County of Los Angeles, for the crime of THREATS TO INJURE, in

11 violation of Penal Code section 422.

12       It is further alleged that probation shall not be granted nor shall the execution and

13 imposition of any sentence be suspended pursuant to Penal Code section 667 subdivision (c)(2).

14                      **1109 NOTICE**

15       Pursuant to section 1109 of the Evidence Code, evidence of the defendant's commission of

16 other acts of domestic violence may be admissible at trial in a criminal action in which the

17 defendant is/are accused of an offense involving domestic violence.  The People hereby give notice

18 of the People's intent to admit evidence of prior acts of domestic violence pursuant to Evidence

19 Code section 1109.  These incidents include the prior incident(s) described in the police report,

20 chronological report, and/or tapes already provided, and other alleged incidents of abuse, which will

21 be provided as they are obtained by the prosecution.

22                      **1370 NOTICE**

23       The People hereby notify defendant and defense counsel that the People intend to proceed

24 under the provisions of Evidence Code section 1370 should the victim become unavailable at the

25 time of trial.

26

27

28                          MICHAEL A. HESTRIN

29                          District Attorney

30

31

32                          QUINN R. BARANSKI

33                          Managing Deputy District Attorney

34

35 QRB:iw

36

MICHAEL A. HESTRIN
DISTRICT ATTORNEY
County of Riverside
State of California

4

Case #SWF1900605                                    Filing Date 02/28/2020

1  MICHAEL A. HESTRIN
2  District Attorney
3  County of Riverside
4  30755-D Auld Road, 3rd Floor
5  Murrieta, CA 92563
6  Telephone: (951) 304-5400
7  Quinn R. Baranski
8  Managing Deputy District Attorney
9  State Bar No. 163258
10
11
12                  SUPERIOR COURT OF CALIFORNIA
13                     COUNTY OF RIVERSIDE
14                          (Southwest)
15

| 16 | THE PEOPLE OF THE STATE OF CALIFORNIA, | Case No.  SWF1900605 |
|---|---|---|
| 17 | Plaintiff, | |
| 18 | v. | REQUEST/MOTION FOR |
| 19 | | PROSECUTION DISCOVERY |
| 20 | ONRE LEYVA | (Pen. Code, §§ 1054.3, |
| 21 | | 1054.5(a) & (b).) |
| 22 | | |
| 23 | Defendant. | (Estimated Time:  10 mins.) |

24
25      TO:  THE HONORABLE JUDGE OF THE SUPERIOR COURT, Southwest Branch,
26  AND TO COUNSEL FOR ABOVE-NAMED DEFENDANT:
27      PLEASE BE INFORMED that the Office of the District Attorney of Riverside County,
28  acting on behalf of the Plaintiff, the People of the State of California, hereby requests/moves for
29  discovery/disclosure of the following items from the defendant and counsel in this case, pursuant
30  to Penal Code section 1054.3(a) and (b):
31      1.  The names and addresses of persons, other than the defendant, counsel or defendant
32  intends to call as witnesses at trial;
33      2.  Any relevant written or recorded statements of the persons in No. 1 above and/or
34  reports of the statement of such persons;
35      3.  Any reports or statement of experts made in connection with this case, including, but
36  not limited to, the results of physical or mental examinations, scientific tests, experiments, or

Case #SWF1900605                      Filing Date 02/28/2020

1   comparisons which the defendant or counsel intends to offer as evidence at the trial of this case;
2   and
3        4.  Any "real," i.e., tangible or physical evidence which the defendant or counsel intends
4   to offer in evidence at the trial.
5        PLEASE TAKE NOTE that pursuant to the provisions of Penal Code section 1054.5(b) if
6   the above material and information requested is not provided to counsel for the plaintiff within
7   15 days of this request a court order will be sought to promptly enforce the provisions of Penal
8   Code section 1054.3.
9   Dated:  February 27, 2020
10
11                              Respectfully submitted,
12
13                              MICHAEL A. HESTRIN
                                District Attorney
14
15
16                              QUINN R. BARANSKI
17                              Managing Deputy District Attorney
18
19  <MDDA>:iw
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36

MICHAEL A. HESTRIN
DISTRICT ATTORNEY
County of Riverside
State of California

6

1        SUPERIOR COURT - STATE OF CALIFORNIA

2            COUNTY OF RIVERSIDE       F I L E D
                                    SUPERIOR COURT OF CALIFORNIA
3                                        COUNTY OF RIVERSIDE

4                                        MAR 0 9 2020

5   PEOPLE OF THE STATE OF CALIFORNIA,     A. Colopy

6            Plaintiff,        )
                               )
7      vs.                     )   Case No. SWF1900605
                               )
8   ONRE LEYVA,                )
                               )
9            Defendant.        )   M&&
                               )
10

11

12        REPORTER'S TRANSCRIPT OF PRELIMINARY HEARING

13      BEFORE THE HONORABLE F. PAUL DICKERSON, III

14            February 26, 2020

15

16

17  APPEARANCES

18

19  For the People:            OFFICE OF THE DISTRICT ATTORNEY
                               BY:  KIM DITTRICH
20                             30755-D Auld Road, Third Floor
                               Murrieta, California  92563
21

22

23  For the Defendant:         OFFICE OF THE PUBLIC DEFENDER
                               BY:  MARK DAVIS
24                             30755-D Auld Road, Second Floor
                               Murrieta, California  92563
25      ORIGINAL

26

27  Reported by:               DIANNE M. SINCLAIR, CSR No. 8910

28

```
 1                    CHRONOLOGICAL WITNESS LIST

 2

 3     PLAINTIFF'S WITNESSES:                              PAGE:

 4     FREDDY RUBIO

 5     Direct Examination by Ms. Dittrich                    5
       Cross-Examination by Mr. Davis                       20
 6

 7     JAMES MCDONALD

 8     Direct Examination by Ms. Dittrich                   27

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
```

Having Officer Rubio testify
under oath that he was told this during
his investigation - Not in DVR BWC Footage!

BODYCAM

```
 1              MURRIETA, CALIFORNIA; FEBRUARY 26, 2020
 2          BEFORE THE HONORABLE F. PAUL DICKERSON, III
 3              THE COURT:  Let's go on the record in the Leyva matter.
 4          Mr. Davis, are you ready?
 5              MR. DAVIS:  I'm ready, your Honor.
 6              THE COURT:  Okay.  And the case is Leyva, SWF1900605.
 7   I'm in receipt of an amended felony Complaint.
 8              Waive arraignment, advisements of rights?
 9              MR. DAVIS:  Your Honor, I actually have not seen that
10   amended Complaint.
11              THE CLERK:  I think that's already been filed.  It's
12   already been filed, so they've already done --
13              THE COURT:  Because I'm showing January 8th.
14              MR. DAVIS:  If I can just have one moment to review
15   that with my client?
16              THE COURT:  Yeah, sure.  It's a four-count Complaint
17   with two serious priors and strike priors.
18              MR. DAVIS:  I can look it up on the Complaint here.
19              THE COURT:  And the People?
20              MS. DITTRICH:  Your Honor, the People are ready.  I
21   just have a couple of 402 issues.
22              THE COURT:  Okay.
23              MS. DITTRICH:  May I --
24              THE COURT:  Of course.
25              MS. DITTRICH:  -- just briefly?
26              My intention would be to prove up the four
27   allegations -- or the four felonies.  In addition, I am going to
28   be asking the Court for a holding order for a P.C. 422 felony
```

DIANNE M. SINCLAIR, CSR

Having the Magistrate move
forward by misrepresenting information
and then later submitting falsified
documents!

1   for John Doe with the initials J.L. on 7-25-19.

2            Also, your Honor, defense counsel and I have worked

3   diligently to try to come to a resolution on this case, so I

4   just wanted to place on the record that the People had not made

5   an offer in this case because it's charged as a life case.

6   However, defense counsel and we both are in agreement that a

7   type of determinate term sentence would be appropriate for this

8   defendant based on his lack of time in prison in the past and

9   his overall criminal history.

10           My understanding is that the defendant has not wanted

11  to make an offer, which the People respect, and have no problem

12  with, but I just wanted to be sure that we had placed on the

13  record we had tried to resolve this case pre-prelim and that is

14  not seeming to be possible at this time.

15           THE COURT:  Okay.  Anything else?

16           MS. DITTRICH:  No.  Thank you.

17           THE COURT:  Okay.  And Mr. Davis, are you ready?

18           MR. DAVIS:  I am ready.

19           THE COURT:  Okay.  You can call your first witness.

20           MS. DITTRICH:  Thank you, your Honor.  At this time,

21  the People call Deputy Rubio.

22           THE CLERK:  Do you solemnly state that the evidence you

23  shall give in the matter now pending before the court, shall be

24  the truth, the whole truth and nothing but the truth, so help

25  you God?

26           THE WITNESS:  I do.

27           THE CLERK:  Be seated.  Please -- if you can please

28  state your full name and spell both your first and last clearly

1    for the record.

2         THE WITNESS:  It's Freddy Rubio.  F-r-e-d-d-y. Last is

3    R-u-b-i-o.

4         MR. DITTRICH:  Thank you.

5                        FREDDY RUBIO,

6    called as a witness on behalf of the Plaintiff, was sworn and

7    testified as follows:

8                      DIRECT EXAMINATION

9    BY MS. DITTRICH:

10       Q.   Could you please tell the Court where you're employed?

11       A.   I'm currently employed with the Riverside County

12   Sheriff's Department.

13       Q.   What is your position there?

14       A.   I'm a deputy sheriff.

15       Q.   How long have been so employed?

16       A.   With the department a total -- total of seven years.

17   About seven years, four years sworn.

18       Q.   You've been an officer -- that's a peace officer sworn

19   for four years?

20       A.   That's correct.

21       Q.   Okay.  Prior to becoming a deputy sheriff, did you

22   attend an academy?

23       A.   I did.

24       Q.   During that academy, did you get trained on

25   investigating different types of cases?

26       A.   That's correct.

27       Q.   Did you also get trained on testifying at preliminary

28   hearings?

1    A.    Yes.

2    Q.    In inclusion in that training, did you also get taught

3    about testifying pursuant to Prop. 115?

4    A.    Yes.

5    Q.    Have you testified at a preliminary hearing in the

6    past?

7    A.    I have.

8    Q.    Okay.  Back on July 25th, 2019, were you working as a

9    deputy sheriff?

10    A.    I was.

11    Q.    Were you dispatched to 24772 Paradise Meadows Drive?

12    A.    Yes.

13    Q.    That is the City of Menifee?

14    A.    That's correct.

15    Q.    What county is that?

16    A.    Riverside County.

17    Q.    And, at about 11:00 at night, do you recall what the

18    dispatch was for?

19    A.    It was in regard to a stolen vehicle.

20    Q.    Did you happen to speak with someone when you arrived

21    at that location?

22    A.    I did.

23    Q.    Was that a location at the home?

24    A.    It was.

25    Q.    In a residential community?

26    A.    Yes.

27    Q.    Okay.  And do you know who you spoke with?

28    A.    I believe it was Jennifer Jiminez.

DIANNE M. SINCLAIR, CSR                    6

1    Q.   Did she tell you what had happened earlier that day?

2    A.   She did.

3    Q.   What did she say to you?

4    A.   She said she was out with her kids and one of her kid's

5    friends and her ex-husband, who she identified Onre Leyva, they

6    were having dinner at Stadium Pizza in Lake Elsinore.  At that

7    time, Onre became very aggressive and he started calling her a

8    bitch, started just saying random things to her, so she decided

9    it was time to go.  So she told everybody, "Let's get in the car

10   and let's go."  They got in the car.  As they were driving --

11   Q.   Hold on one second.  I'm going to back you up just a

12   moment.  Okay.

13        Did she describe how long she had known Onre Leyva?

14   A.   She did.

15   Q.   How long did she tell you?

16   A.   She was married to him in 1999.

17   Q.   Until about 2003?

18   A.   2003, correct.

19   Q.   Okay.  Then did she tell you during the time they were

20   married they had three children together?

21   A.   Yes.

22   Q.   Did she tell you if he was currently living with her at

23   the Menifee location, or he was homeless?

24   A.   He was homeless.

25   Q.   Did she tell you, over the years, where she had known

26   him to frequent or live?

27   A.   Yes.

28   Q.   What did she tell you?

1      A.   He is known to frequent in the city of Downey in

2  Los Angeles.

3      Q.   Okay.  Did she describe to you during the time that she

4  was married, or having known him, whether or not he'd been

5  physically abusive with her in the past?

6      A.   Yes, several times.

7      Q.   Okay.  And did she include incidents he was physical

8  with her in 1998?

9      A.   Yes.

10      Q.   '99?

11      A.   Yes.

12      Q.   Correct?  2017?

13      A.   Yes.

14      Q.   I'm sorry -- 2007?

15      A.   Yes.

16      Q.   And 2010?

17      A.   Yes.

18      Q.   Sorry.  Thank you.

19           When you saw her that evening, did she appear to

20  be upset?

21      A.   She was upset.

22      Q.   Was she crying?

23      A.   She was not crying.  At one point during the

24  investigation, she did begin to cry but that was unrelated to

25  what was happening.

26      Q.   Okay.  So, let me ask you this, her name is Jennifer

27  Jiminez; correct?

28      A.   Correct.

DIANNE M. SINCLAIR, CSR                    8

1    Q.   All right.  And she said that she had three children
2    with Mr. Leyva.
3         Was one of those children Jacob Leyva?
4    A.   Yes.
5    Q.   And is he approximately 24 years old now?
6    A.   Yes.
7    Q.   Was the other child a daughter that was present that
8    evening?
9    A.   So there was a daughter that was present but, from my
10   understanding, she's -- he is not the biological father.
11   Q.   Okay.  And that person or daughter was 12 years old?
12   A.   Yes.
13   Q.   And her name is Aubrey Jiminez (phonetic); correct?
14   A.   Correct.
15   Q.   All right.  So the friend of Jacob Leyva was his name
16   Logan Thompson?
17   A.   Yes.
18   Q.   And is he approximately 24?
19   A.   Correct.
20   Q.   Okay.  So when Ms. Jiminez told you she was at the
21   pizza place, was she with Logan, Jacob, Aubrey, herself and
22   Mr. Leyva?
23   A.   Yes.
24   Q.   Did she tell you if she had driven to the pizza place
25   in her vehicle?
26   A.   Yes, she did.
27   Q.   Did she describe to you what kind of -- of car that
28   was?

1      A.   Yes.

2      Q.   What was that?

3      A.   It was a Nissan Altima, white in color.

4      Q.   Does it have the license plate 51642R2?

5      A.   I don't remember off the top -- the top of my head.  If

6   that's what the document --

7      Q.   Would it help refresh your recollection if you looked

8   at your report?

9      A.   Yes.

10         MS. DITTRICH:  With the Court's permission?

11         THE COURT:  Yeah, of course.

12         MS. DITTRICH:  Front page on the bottom.

13         THE WITNESS:  Your Honor, it is okay if I --

14         THE COURT:  Yeah, absolutely.

15         MS. DITTRICH:  Actually, if I may just approach?

16         THE COURT:  Of course.

17         MS. DITTRICH:  Thank you.  That way, we don't have to

18   pull it up.

19         THE WITNESS:  Yes.  That was 51642Robert2.

20      Q.   BY MS. DITTRICH:  Okay.  And did she tell you if she

21   was the owner of that vehicle?

22      A.   Yes.

23      Q.   Okay.  What did she tell you had happened after, when

24   they were at the restaurant and Mr. Leyva started calling her

25   names?

26         She said that she wanted to leave; correct?

27      A.   Yes.

28      Q.   Did she describe who got in the car with her?

```
 1        A.    Everyone got into the car as -- everybody that showed
 2   up with her to the pizza place.  Everybody got back to the car
 3   and left.
 4        Q.    Is that including Mr. Leyva?
 5        A.    Correct.
 6        Q.    Did she tell you if she was driving, or if he was
 7   driving?
 8        A.    She was driving.
 9        Q.    Did she describe to you what happened while she was
10   driving?
11        A.    She did.
12        Q.    What did she say?
13        A.    As they were driving, Mr. Leyva again became very
14   aggressive and started calling her a bitch.  He started pulling
15   her hair from the backseat.  He was seated behind her in the
16   driver's seat, and started punching her several times in the
17   back of the head.
18        Q.    Did she pull over?
19        A.    She did.
20        Q.    Why did she tell you she did that?
21        A.    She felt she was going to lose control of the car.  She
22   felt she didn't have control of the car at the time, so she
23   wanted to make sure everyone was safe so she pulled over.
24        Q.    Did she stop the car?
25        A.    She did.
26        Q.    Did she get out of the driver's side door?
27        A.    She opened the door but, before she had the opportunity
28   to get out, Mr. Leyva pulled her out of the car.
```

DIANNE M. SINCLAIR, CSR                        11

1    Q.   Did she describe that he had gotten out of the
2    passenger side of the car, walked around to where she was on the
3    driver's side and then pulled her out?
4    A.   Yeah.  He was sitting directly behind her in the
5    driver's seat.  So, as she pulled over the car, he
6    simultaneously opened the back door, walked around to the door
7    to the front and pulled her out of the car.
8    Q.   Did she tell you what happened when he pulled her out
9    of the car?
10   A.   He pushed her out of the way, and he got in the car.
11   Q.   Did she tell you if she fell to the ground?
12   A.   She did.
13   Q.   Did she fall to the ground?
14   A.   She did.
15   Q.   When Mr. Leyva got into the driver's seat of the
16   vehicle, did she tell you what she saw him do?
17        Did he drive away?
18   A.   Yes.
19   Q.   Sorry.  After she saw him driving away, were her
20   children and then Jacobs's friend Logan still in the vehicle?
21   A.   Yes.
22   Q.   Did Ms. Jiminez tell you if she was afraid, or what was
23   happening at that time?
24   A.   She was afraid because Mr. Leyva is not familiar with
25   the area.  He doesn't know the area, so he just took the three
26   individuals in the car and started driving.  He had been
27   drinking, and she did not know where he was going.
28   Q.   Did she tell you if her 12-year-old daughter did

1    anything before they drove off?

2        A.   She did.

3        Q.   Can you tell me what she told you?

4        A.   She told me her daughter Aubrey grabbed a cell phone

5    from the center console and threw it out the window to her mom.

6        Q.   Did she describe anything out of the ordinary about

7    Aubrey, the 12-year-old?

8        A.   She is special needs.

9        Q.   Okay.  When the cell phone got thrown out of the car,

10   did Ms. Jiminez tell you she was able to get it?

11       A.   Yes.

12       Q.   What did she do when she got the phone; did she tell

13   you?

14       A.   She tried.  Yes, she did.  She attempted to call Jacob

15   to find out where they were driving to.

16       Q.   Jacob is her son?

17       A.   Yes.

18       Q.   Did Jacob answer the phone?

19       A.   He did not.

20       Q.   What did she tell you after she called Jacob?

21       A.   She just stayed there hoping he was going come back and

22   pick her up, so she stayed at the side of the road.

23       Q.   Can you tell me -- did she describe to you where she

24   was standing on the side of the -- of the road?

25       A.   She just described a gas -- an area -- a field on the

26   side of the -- of the road, a very unfamiliar area with her.

27   She was unable to tell me exactly where the incident happened.

28       Q.   Was she able to tell you where the Stadium Pizza was?

DIANNE M. SINCLAIR, CSR                    13

1    A.   I don't recall if she told me, but I know from personal

2 experience where it is.

3    Q.   Do you know what city it is?

4    A.   Lake Elsinore.

5    Q.   And would you say it would be several miles away from

6 her home in Menifee?

7    A.   Yes.

8    Q.   Okay.  While she is at the side of the road, did she do

9 anything else or did she just continue to wait there?

10    A.   She continued to wait there, and she kept on trying to

11 get ahold of Jacob her son.

12    Q.   Did he ever answer?

13    A.   He never answered.

14    Q.   Okay.  Now, did you ask Ms. Jiminez why she happened to

15 be with Mr. Leyva that evening?

16    A.   Yes.

17    Q.   What did she tell you?

18    A.   Her -- three weeks prior to that, Mr. Leyva reached out

19 to Jacob who is his biological son, and described his living

20 conditions in Downey.  It was poor living conditions, and Jacob

21 felt bad for him so he brought that up to Ms. Jiminez and

22 Ms. Jiminez also felt bad for him.

23    Q.   Okay.

24    A.   So she decided to go to Downey to -- to his homeless

25 camp and pick him up and drive him to his -- her house, allow

26 him to shower and get cleaned up a little bit and make him feel

27 a little more comfortable.

28    Q.   But he -- when she described that to you, it was kind

1  of a temporary thing.

2       It wasn't that he was living -- going to be living in

3  her house permanently; is that correct?

4       A.   That's correct.

5       Q.   Okay.  How long did Ms. Jiminez tell you that Mr. Leyva

6  had been staying with them up until the night where we're

7  talking about on July 25th?

8       A.   It was approximately three weeks.

9       Q.   Okay.  So did Ms. Jiminez tell you what happened after

10  about 45 minutes?

11       A.   Yes.

12       Q.   What did she tell you?

13       A.   Jacob returned back to the location where she was

14  dropped off, and picked her up in the car that was driven away

15  by Mr. Leyva.

16       Q.   Okay.  And did he then take her back to the house?

17       A.   He did.

18       Q.   Okay.  Did you have a chance -- I am going to kind of

19  switch.

20       Who you were talking to -- did you have a chance that

21  evening to speak with Jacob about what had happened?

22       A.   Yes.

23       Q.   Can you tell me once the defendant or Mr. Leyva drove

24  off with Jacob, what Jacob told you happened?

25       A.   They were driving in the car, and he was scared because

26  he didn't know where they were driving to.  Again, he said

27  Mr. Leyva doesn't know the area because he doesn't live here.

28  So he just started driving.  During that drive, he began yelling

1    at Logan and at Jacob and telling them -- and I quote, "I am

2    going to kill you nigga.  I'm going to kill you, nigga."  He

3    just kept repeating that over and over again.

4        Q.   Did Jacob describe to you being afraid?

5        A.   Yes.

6        Q.   Did he think his father would do that?

7        A.   Yes.

8             MR. DAVIS:  Objection.  Leading.

9             THE COURT:  Sustained.

10            MR. DAVIS:  Move to strike the answer.

11            THE COURT:  Granted.

12       Q.   BY MS. DITTRICH:  Did Jacob describe how that -- when

13   he was afraid why he was afraid?

14       A.   Yes.

15       Q.   What did he tell you?

16       A.   Because he had been aggressive in his demeanor during

17   the drive, and the way he was behaving at the Stadium Pizza

18   before they left.

19       Q.   Okay.  Did Jacob tell you that Mr. Leyva eventually

20   drove the car -- his mother's car to the house in Menifee?

21       A.   Yes.

22       Q.   What did Jacob tell you happened once they got there?

23       A.   Once they got to the driveway, Mr. Leyva got out of the

24   car.  He ran into the house and triggered the alarm.  He then

25   told Jacob to turn it off. Once he turned it off, he ran inside

26   of the house and grabbed some items from the inside of the

27   house.

28       Q.   Did Jacob know what items were taken from inside of the

1    house?

2        A.   Yes.

3        Q.   Can you tell the Court what Jacob told you was taken?

4        A.   Mr. Leyva took a coin collection that belonged to his

5    mother, and he also grabbed a piggy bank that he eventually

6    dropped in the front yard.

7        Q.   Okay.  After Mr. Leyva took those items, did Jacob tell

8    you that he saw Mr. Leyva leave the house?

9        A.   Yes.

10       Q.   What did he tell you Mr. Leyva did after he left the

11   house?

12       A.   He got into another vehicle that belonged to his

13   mother -- to Ms. Jiminez and drove away in that vehicle.

14       Q.   Do you know what type of vehicle that was?

15       A.   It was a GMC pickup truck.

16       Q.   1998?

17       A.   Correct.

18       Q.   Okay.  And did you speak with Ms. Jiminez about that

19   1998 GMC?

20       A.   I did.

21       Q.   When you spoke with her about that, had she given

22   Mr. Leyva permission to take that vehicle?

23       A.   No.

24       Q.   Did she want him to take the vehicle?

25       A.   He didn't have permission, and he wasn't allowed to

26   take it.

27       Q.   Okay.  After Mr. Leyva left in the GMC, did Jacob tell

28   you that that he saw Mr. Leyva anymore that night?

1    A.    No.

2    Q.    Did Ms. Jiminez tell you if he had seen Mr. Leyva

3 anymore that night?

4    A.    No.

5    Q.    Did you have an opportunity to speak with Logan, who

6 was also present during the car ride and then going to the

7 residence?

8    A.    I did.

9    Q.    Did Logan tell you if he heard Mr. Leyva say that he

10 was going to kill them all?

11    A.    Yes.

12    Q.    Did Logan tell you if he was afraid?

13    A.    Yes.

14    Q.    Did you happen to see if Ms. Jiminez had any physical

15 injury on her person from having her head punched or her hair

16 pulled?

17    A.    No, she didn't have any physical injuries.

18    Q.    Okay.  And, when you spoke with Jacob about being in

19 the car with Mr. Leyva, did Jacob want to be in the car with

20 him?

21    A.    He -- he was afraid.  I don't recall him saying he

22 wanted to be in the car, but he didn't know where they were

23 going so he didn't want to be in that situation.

24    Q.    Did he ever describe to you during the car ride asking

25 his dad to pull over or stop?

26    A.    Yes.

27    Q.    And would Mr. Leyva stop?

28    A.    He did not stop.

1    Q.    Okay.  How about with regard to Logan?

2          Did Logan describe to you when he was in the vehicle if

3    he wanted to be in the vehicle that Mr. Leyva was driving?

4    A.    He did not want to be in that vehicle.

5    Q.    Okay.  Did he tell you during the time they were

6    driving that he was asking him to stop also?

7    A.    I don't recall him asking -- if he asked to stop, but I

8    know Jacob did.

9    Q.    Okay.  When Mr. Leyva went into the house on Meadows

10   Road in Menifee, are you aware if Jacob or Aubrey was in the

11   house at the time he went in -- or Logan?

12   A.    No.  They were in still in the car, when he went inside

13   of the house.

14   Q.    And did Jacob describe that when Mr. Leyva went into

15   the house, nobody else had happened to be in there?  Is that

16   correct?

17   A.    Correct.  No one was inside of the house.

18   Q.    Did Jacob tell you after Mr. Leyva left that's when he

19   went to turn the alarm off?

20   A.    He actually turned the alarm off when they first got --

21   initially got there and Mr. Leyva triggered the alarm, trying to

22   open the door, and Mr. Leyva asked Jacob to turn off the alarm

23   so Jacob went and turned off the alarm.

24   Q.    Did he do that inside of the house or outside?

25   A.    I am not sure.

26         MS. DITTRICH:  Thank you.  I have nothing further.

27         THE COURT:  Thank you.

28         Mr. Davis.

1          MR. DAVIS:  Thank you, your Honor.

2                    CROSS-EXAMINATION

3   BY MR. DAVIS:

4       Q.   Officer Rubio, you responded to the residence at

5   Paradise Meadows in Menifee about 11:50 at night; is that

6   correct?

7       A.   Correct.

8       Q.   Now that residence on Paradise Meadows was

9   Jennifer Jiminez's residence?

10      A.   Yes, it is.

11      Q.   Now, did -- did Jennifer Jiminez tell you when they had

12   gone out to continue their evening at what time?

13      A.   She didn't tell me, but I do recall she told me that

14   they were there for approximately two hours.

15      Q.   At Stadium Pizza?

16      A.   At Stadium Pizza.

17      Q.   Is that the incident that she had described occurred

18   after they'd left Stadium Pizza?

19      A.   Yes.

20      Q.   Now, did she tell you -- I guess what I'm trying to get

21   at was -- was there a delay from the time the incident occurred,

22   until the time that Jennifer Jiminez called -- called in the

23   incident?

24      A.   In part of her -- or on --

25      Q.   I should ask, how -- are you able to tell us how long

26   it was between the time of the incident and the time that the

27   incident -- it was reported to law enforcement by Ms. Jiminez?

28      A.   I would have to take a look at my report to look at the

DIANNE M. SINCLAIR, CSR                    20

1  times.

2    Q.   And if that would help refresh your recollection, could

3  you please?

4        THE COURT:  Yeah, go ahead, Deputy.

5        MR. DAVIS:  Do so.

6        THE WITNESS:  So the incident was reported at 2150,

7  which would be 9:50 p.m.

8    Q.   BY MR. DAVIS:  Okay.  And you responded about two hours

9  later at 11:50, or did you respond at 9:50?

10   A.   I was assigned to the call at 2230 hours which is

11  10:30.

12   Q.   So about an hour after she reported it?

13   A.   Yes.

14   Q.   And you don't have a recollection as to what

15  Ms. Jiminez told you regarding the exact time that this

16  occurred?

17   A.   I don't recall.

18   Q.   Okay.  Now, as far as the living situation goes,

19  Ms. Jiminez and Mr. Leyva are divorced.

20        Is that your understanding from speaking with

21  Ms. Jiminez?

22   A.   That's correct.

23   Q.   But Mr. Leyva had been living or -- or staying with

24  Ms. Jiminez at that house in Paradise Meadows for about three

25  weeks prior to the incident; right?

26   A.   That's correct.

27   Q.   Now, did you ask Ms. Jiminez any details about that

28  particular living arrangement?

1    A.   The original living arrangement was he was supposed to
2  be there just to get comfortable, showered, and get a little
3  bit -- off his feet a little bit, and he was supposed to return
4  back to -- to Downey.

5    Q.   Did Ms. Jiminez tell you that that Mr. Leyva was --
6  well, she had -- she obviously allowed him to stay with her;
7  right?

8    A.   That's correct.

9    Q.   He -- he was staying there with her permission?

10   A.   Yes.

11   Q.   Did Ms. Jiminez tell you that Mr. Leyva had permission
12 to come and go as he pleased from that house?

13   A.   I don't recall but I do know that he did not have keys
14 to the house.

15   Q.   So you don't recall asking Ms. Jiminez whether or not
16 Mr. Leyva had permission to come and go as he pleased?

17   A.   I remember asking.  I would have to refer back to
18 either my report or the video.

19   Q.   Okay.  Did Ms. Jiminez -- did you ask Ms. Jiminez
20 whether Mr. Leyva had been doing any kind of -- of work for her
21 while he was living there?

22   A.   No.

23   Q.   Did you ask Ms. Leyva whether or not -- I am sorry --
24 Ms. Jiminez whether Mr. Leyva had permission to use the truck,
25 the GMC truck?

26   A.   He didn't have permission.

27   Q.   Did you ask her whether or not he had -- during the
28 time he was staying with Ms. Jiminez, whether or not he had

DIANNE M. SINCLAIR, CSR                           22

1    driven that truck with her permission?

2        A.   I don't believe I asked that.

3        Q.   Now there were two vehicles involved here, one is a

4    Nissan Altima and one is a GMC truck; correct?

5        A.   Correct.

6        Q.   Now Ms. Jiminez reported the GMC truck as being stolen;

7    correct?

8        A.   Yes.

9        Q.   But not the Nissan Altima?

10       A.   Correct.

11       Q.   Now, earlier on direct examination, you were asked to

12   give a license plate for the Nissan Altima, and you looked at

13   your report and referenced your report for that particular

14   license plate; right?

15       A.   Yes.

16       Q.   Now is it -- isn't -- that license plate, does it

17   actually refer to the GMC truck?

18       A.   I would have to refer back to it.

19       Q.   Again, if you can just refer back to your report and

20   check on that --

21           THE COURT:  Yeah, go ahead, Deputy.

22           MR. DAVIS:  -- to refresh your recollection.

23           THE WITNESS:  And Mr. Davis, you are correct.  That is,

24   in fact, the license plate for the truck.

25       Q.   BY MR. DAVIS:  Now there's no vehicle information in

26   your report referencing the Nissan Altima; correct?

27       A.   As far as the VIN number like a --

28       Q.   VIN number or a license number, anything like that?

OFFICER RUBIO

48

Under oath giving false testimony
to what
was said
in Discovery
not at the
time of
his invest-
igation.

```
 1      A.   No.

 2      Q.   That's because the Altima was not reported stolen?

 3      A.   Correct.

 4      Q.   Regarding the -- what occurred in the Nissan Altima,

 5   when Mr. Leyva drove away in that car, you testified that Jacob

 6   Leyva said that -- that Mr. Leyva was stating quote, I'm going

 7   to kill you, nigga" several times?

 8      A.   Yes.  Yes.

 9      Q.   And that you -- you included that statement in

10   particular in quotes in your report?

11      A.   Yes.

12      Q.   And from your testimony on direct examination, it

13   sounds like that statement was made not necessarily -- that it

14   was not directed at any one person.

15           Is that a fair -- fair statement?

16      A.   I wouldn't be able answer that.  I wasn't there, so I'm

17   not sure if it was directed at anyone.  He just kept saying it.

18      Q.   According to Jacob Leyva, my client, Mr. Leyva kept

19   saying that statement, "I am going to kill you, nigga"?

20      A.   Yes.

21      Q.   Did he tell you how many times he said it?

22      A.   He wasn't able to tell me, but he said it several

23   times.

24      Q.   Did Jacob tell you when Mr. Leyva made that statement

25   that he looked at any one particular person, or made any

26   indication or movement towards a particular person?

27      A.   I don't recall.

28      Q.   Okay.  So as far as -- as far as the statement from
```

DIANNE M. SINCLAIR, CSR                24

*This was the only defense by Deputy P.D*

*Mark C Davis he allowed it in Prelims and he's cross-examined it in trial instead of revealing that it was said in Discovery*

```
 1   Jacob Leyva, Mr. Leyva was saying -- making the statement, "I am
 2   going to kill you, nigga" repeatedly but not necessarily
 3   directed at any one person in the vehicle?
 4        A.   I'm not sure how they would have felt at that time.
 5        Q.   Okay.  But again nothing that Mr. -- that Jacob Leyva
 6   told you indicated to you that that statement was specifically
 7   directed at an individual?
 8        A.   Correct.
 9        Q.   Okay.  And nothing that Logan -- again, Logan Thompson,
10   you also interviewed him about the statements that were made by
11   my client; right?
12        A.   Yes.
13        Q.   And he basically said the same statements were made?
14        A.   Yes.
15        Q.   Okay.  And again did he -- did Logan Thompson indicate
16   to you those statements were specifically directed at anyone in
17   that car?
18        A.   No, he did not.
19        Q.   Jacob Leyva told you that he was in fear for his
20   safety; right?
21        A.   Correct.
22        Q.   And specifically because of the fact that Mr. Leyva was
23   driving the car and he knew that Mr. Leyva didn't know his way
24   around; right?
25        A.   Correct.
26        Q.   And specifically because he asked to get out of the car
27   and Mr. Leyva had not allowed him to get out of the car?
28        A.   Correct.
```

*Ineffective Counsel and Due Process Mark C. Davis instructing the jurors during Jury Selection to what he will later reiterate in trial and allow Stipulations*

50

```
1      Q.   Did he specifically -- but Jacob Leyva never told you
2  he was specifically in fear as a result of these statements, "I
3  am going to kill you, nigga"?  Those statements --
4      A.   Well, he did.  He said that he was scared.
5      Q.   As a result of those statements; correct?
6      A.   Yes.
7      Q.   Now you never had any -- any contact with my client,
8  who is sitting here to the left of me; correct?
9      A.   That's correct.
10     Q.   Never interviewed him?
11     A.   No.
12     Q.   And what you have testified to today is that the sum
13 total of your investigation in this case?
14     A.   Yes.  I tried to contact him with the phone number that
15 was provided to me by Ms. Jiminez, but I was unable to contact
16 him.  I asked Ms. Jiminez about the whereabouts of where he
17 would be, and she was -- was not able to tell me because he's
18 not from the -- the area so he could be anywhere.
19          MR. DAVIS:  Okay.  Thank you.  No further questions.
20          THE COURT:  Thank you.
21          Ms. Dittrich?
22          MS. DITTRICH:  Nothing further.  Thank you.
23          THE COURT:  All right.  Deputy, have a good day.
24          THE WITNESS:  Thank you, sir.
25          THE COURT:  Thank you.
26          You can call your next witness.
27          MS. DITTRICH:  Thank you, your Honor.  The People call
28 Investigator James McDonald.
```

DIANNE M. SINCLAIR, CSR                    26

```
1          THE CLERK:  Do you solemnly state that the evidence you
2     shall now give before the court, shall be the truth, the whole
3     truth and nothing but the truth, so help you God?
4          THE WITNESS:  I do.
5          THE CLERK:  Be seated.  If you can please state your
6     full name, spelling both your first and last clearly for the
7     record.
8          THE WITNESS:  My name is James McDonald; J-a-m-e-s,
9     M-c-D-o-n-a-l-d.
10         THE CLERK:  Thank you.
11                     JAMES MCDONALD,
12    called as a witness on behalf of the Plaintiff, was sworn and
13    testified as follows:
14                     DIRECT EXAMINATION
15    BY MS. DITTRICH:
16       Q.   Good morning.
17       A.   Good morning.
18       Q.   Can you please tell the Court where you're employed.
19       A.   I'm a senior investigator with the Riverside County
20    District Attorney's office.
21       Q.   Are you assigned currently to the domestic violence
22    unit?
23       A.   I am.
24       Q.   How long have you been a sworn peace officer?
25       A.   A little over 42 years.
26       Q.   Today, did you receive a call from me asking you to
27    contact Jennifer Jiminez with regard to the Leyva case?
28       A.   I did.
```

1    Q.   Was that in reference to court number SWF1900605?

2    A.   That's correct.

3    Q.   And did you have an opportunity to call Ms. Jiminez on

4    the telephone?

5    A.   I did twice.

6    Q.   Did you speak with her about the court hearing that was

7    going to be happening today?

8    A.   No.

9    Q.   Did you let her know that you were calling about her

10   ex's case?

11   A.   I called her and asked if she'd be willing to look at a

12   photograph for me and identify the person.

13   Q.   Did she agree to do that?

14   A.   Yes, she did.

15   Q.   How did that come about?

16   A.   I sent her a text message containing a booking

17   photograph of Mr. Leyva that was taken November of 25th of 2019.

18   Q.   Did you send it to her electronically?

19   A.   I sent her a text message, yes.

20   Q.   Did -- and did she have an opportunity to look at the

21   photo?

22   A.   She did.

23   Q.   Did she -- she call you back after reviewing the photo?

24   A.   I called her back.

25   Q.   What did she tell you?

26   A.   She told me she recognized the person in the

27   photograph, and identified him as Onre Leyva.

28   Q.   Sitting here -- or sitting in court today, do you see

1    the person that was in the booking photo that you sent
2    Ms. Jiminez this morning?
3         A.   I do.
4         Q.   Can you tell the Court where he's seated and what he's
5    wearing.
6         A.   He is sitting at the end of counsel table, wearing an
7    orange jumpsuit.
8              MS. DITTRICH:  May the record reflect that Mr. McDonald
9    has identified the defendant?
10             THE COURT:  Yes.
11             MS. DITTRICH:  I have nothing further.
12             THE COURT:  Thank you.
13             MR. DAVIS:  No questions, your Honor.
14             THE COURT:  Detective, thank you.
15             THE WITNESS:  Thank you.
16             THE COURT:  You can call your next witness.
17             MS. DITTRICH:  People rest.
18             THE COURT:  Mr. Davis?
19             MR. DAVIS:  No witnesses, your Honor.
20             THE COURT:  All right.  The preliminary hearing is now
21    closed evidence.
22             Argument?
23             MS. DITTRICH:  Submit subject to rebuttal, please.
24             MR. DAVIS:  Well, your Honor, I would ask that the
25    Court consider discharging Count 1 which is the residential
26    burglary on the basis that Mr. Leyva, the evidence shows, was
27    actually living at that house.  It's unclear what the boundaries
28    of that were, whether -- certainly he didn't have keys, but he

1  was staying there -- staying there and living there.  I think

2  they are two words for the same thing.  He had permission to be

3  there.  That was very clear.  And the law that -- the case law

4  is pretty clear that a person can't burglarize his or her own

5  home, as long as he has an unconditional possessory right of

6  entry.  That's *People versus Gauze*, G-a-u-z-e, 1975 15 Cal.3d

7  709.

8          Mr. Leyva did have -- by all indication from the

9  evidence the Court has heard, have that unconditional possessory

10 right of entry by virtue of having Jennifer Jiminez's permission

11 to be staying there and essentially living there.

12         I would also ask the Court find insufficient evidence

13 to support the criminal threat charge, because in this case what

14 you have -- you have a statement, "I'm going to kill you, nigga"

15 that was made repeatedly by my client while in the car, but

16 there is no evidence that statement was directed at any other

17 individual in the car with the intent that that statement be

18 taken as a threat.  So I would ask the Court to discharge on

19 Count 1, as well as to find insufficient evidence as to the 422

20 that the People have indicated they believe appropriate, and I

21 will submit on the balance of the Complaint.

22         THE COURT:  Thank you.

23         MS. DITTRICH:  With regard to the burglary, I think the

24 testimony was that the defendant had been brought to the house

25 in order to shower and stay there and kind of -- of clean up for

26 a little bit of time.  He had been staying there for about three

27 weeks.  He didn't have a key to the home.  He had just thrown

28 her out of her vehicle, drove her car to the house with the

1   intent to go in and steal property in order to flee again.

2          So *In re Richard M*. 1988 205 Cal. App 3d7 states that a

3   family member who has moved out of a family home commits a

4   burglary if he or she commits an unauthorized entry with

5   felonious intent, or he or she has no claim of right to enter

6   the residence.

7          I think the fact that he didn't have the combination to

8   stop the security code coupled with the fact he didn't have a

9   house key and wasn't living there -- they were divorced -- is

10  plenty of evidence to show that he did not have an unconditional

11  possessory right of entry to Ms. Jiminez's home.  I'd ask the

12  Court to find -- hold him over for that charge.

13         With regard to the 422 request for both Jacob and

14  Logan, it does have to be a clear unconditional and specific

15  type of oral threat.  Him stating over and over, as he's driving

16  them away against their will, "I am going to kill you, nigga" is

17  something that both of those boys took to make them afraid

18  individually and they thought that they were going to die.  They

19  believed he could carry it out, and I think there's sufficient

20  evidence to show that the defendant committed that and there

21  should be a holding order for two 422s.

22         THE COURT:  All right.  After hearing the evidence and

23  arguments of counsel, the Court rules as follows -- and I do

24  agree with you, Ms. Dittrich, especially on the 422s, because

25  coupled with the fact that the children actually witnessed

26  violence coupled with the statements, there is no doubt they

27  would be in fear of their lives, especially with what he said.

28         So it appearing to the Court the offenses in the

DIANNE M. SINCLAIR, CSR                     31

```
 1   Complaint mentioned have been committed, and there's sufficient
 2   cause to believe the within-named party, Onre Leyva, is guilty
 3   thereof, I order that he be held to answer to the same.  I'm
 4   also finding that there is sufficient cause to believe that he
 5   has committed two violations of Penal Code Section 422.  I am
 6   going designate those John Doe No. 1 and John Doe No. 2.  That
 7   would be Count 5 and Count 6 speculatively.  I'll set this for
 8   an arraignment on the Information.
 9           Mr. Davis, do you have a date you want to set this for?
10           Do you want it within the statutory period?
11           MR. DAVIS:  Yes, please.  I believe the statutory date
12   would be March 11th.
13           THE COURT:  It would.
14           MR. DAVIS:  Okay.  That's good.
15           THE COURT:  That be will the order.  I'll set it for
16   March 11th.  Bail will remain fixed.
17           Thank you, Counsel.
18           MS. DITTRICH:  Thank you, your Honor.
19           MR. DAVIS:  Thank you, your Honor.
20                  (Proceedings concluded.)
21
22
23
24
25
26
27
28
```

DIANNE M. SINCLAIR, CSR                                  32

1                              REPORTER'S CERTIFICATE

2

3

4   PEOPLE OF THE STATE OF CALIFORNIA,            )
                                                  )
5                         Plaintiff,              )
                                                  )
6        vs.                                      )   Case No. SWF1900605
                                                  )
7   ONRE LEYVA,                                   )
                                                  )
8                         Defendant.              )
                                                  )
9   ─────────────────────────────────────────────

10

11

12          I, DIANNE M. SINCLAIR, Certified Shorthand Reporter,

13   No. 8910, hereby certify:

14          On 2/26/20, in the county of Riverside, state of

15   California, I took in stenotype a true and correct report of the

16   testimony given and proceedings had in the above-entitled case,

17   pages 1 - 33, and that the foregoing is a true and accurate

18   transcription of my stenotype notes and is the whole thereof;

19

20

21   Dated:   March 9, 2020;
              Murrieta, California
22

23

24

25

26            DIANNE M. SINCLAIR, CSR NO. 8910

27

28

                    DIANNE M. SINCLAIR, CSR                        33

MICHAEL A. HESTRIN
District Attorney
County of Riverside
30755-D Auld Rd. Suite 321
Murrieta, California 92563
Telephone:  (951) 304-5400
Kimberly Dittrich, Deputy District Attorney
State Bar No.  254259

**FILED**
Superior Court of California
County of Riverside
6/1/2020
M. Aldor
Electronically Filed

SUPERIOR COURT OF CALIFORNIA

COUNTY OF RIVERSIDE

(Southwest)

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | NO. SWF1900605 |
| Plaintiff, | PEOPLE'S PROPOSED EXHIBIT LIST |
| v. | |
| ONRE LEYVA, | |
| Defendant. | |

## EXHIBITS

The People reserve the right to amend this list as exhibits become reasonably known or made available.

1. BWC from 7/25/2019

2. Map from Stadium Pizza, Lake Elsinore to 24772 Paradise Meadows Dr, Menifee

3. Photo of White Nissan Altima

4. Photo of 1998 GMC Sierra Pickup

5. Photo of piggy bank

6. 911 call on 7/25/2019 by Jennifer Jimenez (3:43 minutes)

7. Stipulation or owner registration for 1998 GMC License Plate No. 51642R2 showing Jennifer Jimenez was the registered owner on 7/25/2019

MICHAEL A. HESTRIN
DISTRICT ATTORNEY
County of Riverside
3960 Orange Street
Riverside, California

1

8.  CAD log from 12/24/2019 showing arrest of defendant at the victim's house

9.  Stipulation or certified Prior Conviction packet for PC 422 on 06/01/2011 County of Los Angeles

10. Stipulation or certified Prior Conviction packet PC 422 on 06/26/1995 County of Los Angeles

11. Stipulation of incidents of prior domestic violence convictions or defendant's certified CII showing:

    a.  06/26/1995 PC 242, PC 422 and PC 594 County of Downey
    b.  12/07/1997 VOP in lieu for filing a PC 273.5 County of Orange
    c.  01/08/1998 PC 136.1 misdemeanor County of Orange
    d.  06/01/2011 PC 422 County of Los Angles

12. Stipulation of incidents of prior domestic violence convictions or defendant's certified FBI showing:

    a.  03/23/2002 domestic violence misdemeanor conviction Carson City, NV

13. Defendant's certified booking photo

14. Defendant's 969b packet

Dated: April 23, 2020

Respectfully submitted,
MICHAEL A. HESTRIN
District Attorney

KIMBERLY R. DITTRICH
Deputy District Attorney

MICHAEL A. HESTRIN
DISTRICT ATTORNEY
County of Riverside
3960 Orange Street
Riverside, California

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36

### PROOF OF SERVICE BY FACSIMILE (FAX)

Case No.  SWF1900605

I, the undersigned, say: I am a resident of or employed in the County of Riverside, over the age of 18 years and not a party to the within action or proceeding; that my residence or business address is 30755-D Auld Road, Murrieta, California, FAX number (951) 304-5405.

That on April 23, 2020, I served a copy of the paper to which this proof of service by facsimile (FAX) is attached, PEOPLE'S PROPOSED EXHIBIT LIST, on the following:

**MARK DAVIS**
**ATTORNEY AT LAW**
**FAX No.  (951) 304-5605**

I certify (or declare) under penalty of perjury that the foregoing is true and correct. Executed on April 23, 2020, at Riverside, California.

*J. Wauthion*

_____

**D E C L A R A N T**

MICHAEL A. HESTRIN
DISTRICT ATTORNEY
County of Riverside
3960 Orange Street
Riverside, California

3

MICHAEL A. HESTRIN
District Attorney
County of Riverside
30755-D Auld Rd. Suite 321
Murrieta, California 92563
Telephone: (951) 304-5400
Kimberly R. Dittrich, Deputy District Attorney
State Bar No. 254259

FILED
Superior Court of California
County of Riverside
6/11/2020
M. Bishop
Electronically Filed

Filed in this order

SUPERIOR COURT OF CALIFORNIA

COUNTY OF RIVERSIDE

(Southwest)

| THE PEOPLE OF THE STATE OF CALIFORNIA, | NO. SWF1900605 |
|---|---|
| Plaintiff, | |
| v. | PEOPLE'S TRIAL BRIEF AND MOTIONS IN LIMINE |
| ONRE LEYVA, | |
| Defendant. | Date: 7/16/2020, S201, 9:00 a.m. |

**INTRODUCTION**

The defendant is charged with domestic violence upon his ex-wife/mother of his children and his children.  His current charges are:

Count 1 – PC 459 (first degree) on 7/25/2019 at 24772 Paradise Meadows Road

Count 2 – VC 10851 on 7/25/2019 of a 1998 GMC License Plate No. 51642R2

Count 3 – PC 422 on 7/25/2019 upon John Doe (Jacob Leyva)

Count 4 – PC 422 on 7/25/2019 upon John Doe (Logan Thompson)

Count 5 – PC 236 on 7/25/2019 upon John Doe (Jacob Leyva)

Count 6 – PC 236 on 7/25/2019 upon John Doe (Logan Thompson)

Count 7 - PC 243(e)(1) on 7/25/2019 upon Jane Doe (Jennifer Jimenez)

Count 8 – PC 273a(b) upon Jane Doe ( age 12)

MICHAEL A. HESTRIN
DISTRICT ATTORNEY
County of Riverside
3960 Orange Street
Riverside, California

1

1    This defendant also has two strike and nickel priors: a violation of PC 422 on 06/01/2011

2    from the County of Los Angeles and a violation of PC 422 on 06/26/1995 from the County of Los

3    Angeles.  The victim of those crimes is the victim in this current case.  This defendant also has a

4    long history of domestic violence with Jennifer Jimenez and his family.

5

6                                    **STATEMENT OF FACTS**

7    **Charged Conduct**

8        On July 25, 2019, police were dispatched to 24772 Paradise Meadows Drive, Menifee.  Ms.

9    Jennifer Jimenez said she and the defendant, Onre Leyva, are currently divorced.  They were

10   married from 1999 to 2003.  They have three children together.  The defendant has been homeless

11   for several years and is known to frequent the City of Downey.  Ms. Jimenez said in 1998, 1999,

12   2007 and 2010 the defendant committed domestic violence upon her.

13

14       She said about three weeks prior the defendant made contact with their son, Jacob Leyva.

15   The defendant told his son about his poor living conditions in Downey and they felt bad for him.

16   Jacob mentioned it to Ms. Jimenez and they decided to drive to Downey to pick him up from his

17   homeless camp for a few weeks so he could shower and clean up.

18       On July 25, 2019, Ms. Jimenez said she and the defendant were having dinner and drinks at

19   Stadium Pizza in Lake Elsinore.  She said she was also having dinner with her son Jacob, her 12-

20   year old autistic daughter and a friend of Jacob's, Logan Thompson.  The defendant began to act

21   aggressively and started screaming and saying random things.  She decided it was time to leave

22   and return home.  Ms. Jimenez said she told everyone to get in her white Nissan Altima.  Ms.

23   Jimenez said she began driving everyone in the car home.  She said the defendant was sitting

24   behind her in the back-passenger seat.  She explained the defendant began screaming and pulling

25   Ms. Jimenez hair and punching her in the head.  She pulled over because she was afraid, she

26   would lose control of the car while he was hitting her.  She stopped the car and opened the driver

27   side door.  The defendant opened his door and got out of the car.  He grabbed Ms. Jimenez

28   knocking her down to the ground.

29

30       The defendant then got into her car and drove away with Aubrey, Jacob and Logan.  The

31   defendant kept yelling at them "I'm gonna kill you nigga!"  He kept driving as they pleaded for

32   him to stop the car.  Jacob and Logan were extremely fearful for their safety and were not sure

33   where they were going.  Logan said the defendant kept saying he was going to "kill everyone in

34   the car."

35

36

At one point, Jacob said the defendant began to drive back to Ms. Jimenez's house. When he got there the defendant went into the house and went upstairs. Jacob said the defendant tripped the alarm, so he turned it off. The defendant then came out of the house with Ms. Jimenez coin collection and cash from the house. The defendant then got into Ms. Jimenez other car, a GMC truck and drove off.

After the defendant left, Jacob drove back to pick up his mother on the roadway. Ms. Jimenez called 911.

**Prior 1109 Incidents**

On December 31, 2001, officers were dispatched to 1856 Belmont Avenue in the County of Carson for a domestic battery. When officers arrived, they spoke with Ms. Jennifer Leyva who said she had been battered by her husband, the defendant, whom she has two children with. She said he had been drinking tequila and beer and had been talking long distance to CA to his family for three hours. She told him to get off the phone because it was long distance and he flew off the handle. She said he punched her with a closed fist 10-12 times in the head and kicked her in the ribs on her left side. She said the first punch knocked her to the ground and he continued to beat her up while she was lying on the ground. She said her three children, ages 6. 5, and 2 all witnessed her getting beat up. She said the defendant pulled the phones out of the wall, so she ran to a neighbor and called the police. Officers saw a fair amount of swelling and bruising to her head, left side, and bruising on her left arm.

On November 1, 2002, officers responded to 1856 Belmont Avenue in the County of Carson for a domestic dispute. Upon arrival officers spoke with Jennifer Leyva who was crying and yelling saying, "He's beating my father, help!" and "He's killing my father, please hurry!" Ms. Leyva said she went to the Nugget with her father, uncle and husband. While there the defendant consumed alcohol and when they got back to the house, she was making sandwiches. For no reason the defendant was upset with her. He went into the garage and she followed him. The defendant told her that he was going to kill her because she's a tricked out whore. He threw his sandwich on the floor and picked up a three-pronged garden hoe. He put the hoe to her throat and said he was going to kill her, and she should have been dead a long time ago. He did this to her three times. Her uncle and father came into the garage to see what was going on. The defendant started calling names and he left. Ms. Leyva was able to call 911. The defendant came back and started hitting the house with a bat. The defendant also hit Ms. Leyva with a bat causing her to

71

fall to the ground.  While on the ground he kicked her numerous times in the chest and neck causing injury.  The defendant was found guilty of crimes involving domestic violence, battery with a deadly weapon and elder abuse by a jury trial.

On July 24, 2004, officers were dispatched to 9220 Arrington Avenue in the City of Downey.  Upon arrival officers contacted Ms. Jennifer Leyva.  She said her ex-husband had assaulted her.  She said she was driving her car and the defendant was walking the neighborhood because they were looking for their lost dog.  She said the defendant was drinking and was angry when he walked away from her.  She said she saw him on the corner, and he reached in the window of her car and grabbed her, so she stopped to break his grasp.  The defendant then jumped on the hood of her Mercedes in an attempt to keep her from leaving.  She said he grabbed her by the hair and began to drag her a short distance.  He punched her in the head.  After he hit her, he walked away.

On November 25, 2005, officers responded to 9363 Disndale Street in the City of Downey. upon arrival they spoke with Ms. Jennifer Jimenez.  She said her ex-husband are co-parents of three children.  She said she is the protected person on a CPO filed in LA superior Court.  The order states the defendant cannot strike Ms. Jimenez and not come within 100 yards of her. Earlier that day the defendant arrived at her house with her son Jacob Leyva.  The defendant was inside her second-floor bedroom.  She ran downstairs trying to get away from him.  He grabbed the back of her neck and shoulders with his hands.  He asked her, "Where do you think you're going, you stupid fucking fat bitch?"  She went to the phone and she called police.  He flicked his middle finger at her and ran out.  On 12/01/2005 the defendant plead to misdemeanor PC 647(f).

On September 23, 2006, officers were dispatched to 9363 Dinsdale Street in the City of Downey for a violation of restraining order.  Ms. Jennifer Jimenez said they argued because when the defendant was disciplining his child the defendant stated he was going to stab his children.

**Defendants Prior Convictions Involving Domestic Violence**

The defendant plead guilty of PC 422 (criminal threats) from an incident on 06/01/2011 from the County of Los Angeles.

The defendant plead guilty of PC 422 (criminal threats), PC 242, and PC 594 from an incident on 06/26/1995 from the County of Los Angeles.

The defendant plead guilty of PC 136.1, a misdemeanor (dissuade witness from testifying), from an incident on 01/08/1998 from the County of Orange.

MICHAEL A. HESTRIN
DISTRICT ATTORNEY
County of Riverside
3960 Orange Street
Riverside, California

4

## POINTS AND AUTHORITIES

### I.

### THE DEFENDANT'S PRIOR ACTS OF DOMESTIC VIOLENCE ARE ADMISSIBLE
### UNDER EVIDENCE CODE SECTIONS 1109 and 1101(b).

Evidence Code section 1109 states, "Except as provided in subdivision (e) in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." Evidence Code section 1109, subdivision (e) ensures that "[t]his section shall not be construed to limit or preclude the admission or consideration of evidence under any other statute or case law." The only limitation is that "[e]vidence of acts occurring more than 10 years before the charged offense is inadmissible under this section, unless the court determines that the admission of this evidence is in the interest of justice." (Evid. Code § 1109, subd. (e).)

Evidence Code section 1109, subdivision (d)(3) defines "domestic violence" as having the meaning set forth in Penal Code section 13700 and the further meaning as set forth in Family Code section 6211 if the act occurred no more than five years before the charged offense. (Evid. Code § 1109, subd. (d)(3).) Thus, "[Evidence Code] [s]ection 1109 applies if the offense falls within the Family Code definition of domestic violence even if it does not fall within the more restrictive Penal Code definition." (*People v. Ogle* (2010) 185 Cal.App.4th 1138, 1144.)

Penal Code section 13700 defines domestic violence as abuse committed against (among others) a former cohabitant, or a person with whom the suspect is having or has had a dating relationship. (Pen. Code § 13700, subd. (b).) The same section defines abuse as "intentionally or recklessly causing or attempting to cause bodily injury, or placing another person in reasonable apprehension of imminent serious bodily injury to himself or herself, or another." (Pen. Code § 13700, subd. (a).)

Family Code section 6211 defines domestic violence relationships in the same way as Penal Code section 13700, but it more broadly defines "abuse" to include not only placing a person in reasonable apprehension of imminent serious bodily injury like Penal Code section 13700, but also engaging in any behavior that has been or could be enjoined pursuant to Family Code section 6320. (Fam. Code § 6203, subd. (d).)

/ / /

Thus. prior incidents of domestic violence are admissible in the current case because the prior incidents and the current incident are all incidents of domestic violence.

The admission of evidence using the provisions of 1109 was found constitutional by the Fourth District Court of Appeal in *People v. Hoover* (2000) 77 Cal.App.4th 1020. Not only did the court find section 1109 constitutional, it also discussed the use of prior incidents to show a propensity to commit the charged crime. (*Id.* at p. 1027.) The court took judicial notice of the legislative history of section 1109 including the following:

> The propensity inference is particularly appropriate in the area of domestic violence because on-going violence and abuse is the norm in domestic violence cases. Not only is there a great likelihood that any one battering episode is part of a larger scheme of dominance and control, that scheme usually escalates in frequency and severity. Without the propensity inference, the escalating nature of domestic violence is likewise masked. If we fail to address the very essence of domestic violence, we will continue to see cases where perpetrators of this violence will beat their partners, even kill them, and go on to beat or kill the next intimate partner. Since criminal prosecution is one of the few factors which may interrupt the escalating pattern of domestic violence, we must be willing to look at that pattern during the criminal prosecution, or we will miss the opportunity to address this problem at all. (Assem. Com. On Public Safety, Rep. on Sen. Bill No. 1876 (1995-1996 Reg. Sess.) Jun 25, 1996, pp.3-4.)(*People v. Hoover, supra,* 77 Cal.App.4th at pp. 1027-1028.)

The court concluded that the California Legislature determined that the policy considerations favoring excluding evidence of uncharged domestic violence offenses are outweighed in criminal domestic violence cases by the policy considerations favoring admitting such evidence. (*People v. Hoover, supra,* 77 Cal.App.4th at p. 1028.)

The defendant has several documented prior incidents of domestic violence. He has attacked his wife, his father and law and his children in his lifetime. He has escalated the violence from pushing to punching and threating to kill. It is important for the jury to hear about his pattern of conduct. When he drinks, he becomes aggressive and he punches the mother of this children. He also threatens them with knifes, stabbing and death. It is extremely important that a jury is aware, not only of the defendant's propensity for violence, but of the manner in which he chooses

/ / /

MICHAEL A. HESTRIN
DISTRICT ATTORNEY
County of Riverside
3960 Orange Street
Riverside, California

6

to become violent, time and time again.  Given the similarity in violent conduct over his lifetime and the recent nature of the prior incidents, the People request that this be admissible.

The People ask this court allow testimony and the correlating prior certified convictions as described above.

## II.

### EXPERT TESTIMONY REGARDING DOMESTIC VIOLENCE IS ADMISSIBLE

As discussed above a person may qualify as an expert witness based on the person's experience, training or education.  (Evid. Code § 720 subdivision (a).)

The People intend to call an expert witness in domestic violence to testify regarding some or all of the following topics: the nature of domestic violence relationships; the concepts of power and control; the cycle of violence; common characteristics of abusers and victims in domestic violence relationships; reasons why victims stay in abusive relationships, contact their abusers after the abuse, or still care about their abusers; and reasons why victims may minimize abuse, not report abuse, recant, or not cooperate with prosecution of their abuser.

Thus, the People respectfully request the Court permit his expert testimony to educate the jury regarding the nature of domestic violence relationships due to the fact that Ms. Jimenez has been involved with the defendant for a period of 30 years, sometimes taking him back after substantial physical abuse.  This will be beyond a trial juror's common knowledge.

## III.

### CERTIFIED COPY OF DEFENDANT'S PRIOR CONVICTIONS ARE ADMISSIBLE PURSUANT TO EVIDENCE CODE SECTION 1532.

Section 1530 authorizes the use of a copy of a writing in official custody to prove the content of that writing.  When a writing has been recorded, Section 1530 merely permits a certified copy of the record to be used to prove the record, not the original recorded writing.  Section 1532 permits the official record to be used to prove the content of the original recorded writing.  If a certificate of authentication is attached to the writing, the original writing is presumed to be authentic and no further evidence of authenticity is required.  (Evid. Code §§ 1450, 1451, 1453.)

/ / /

/ / /

/ / /

/ / /

MICHAEL A. HESTRIN
DISTRICT ATTORNEY
County of Riverside
3960 Orange Street
Riverside, California

7

## IV.

### DEFENDANT'S STATEMENTS ARE INADMISSIBLE HEARSAY UNLESS OFFERED
### BY THE PEOPLE PUSUANT TO EVIDENCE CODE SECTION 1220.

While defendant's statements that tend to inculpate him are admissible as non-hearsay admissions, those statements made by the defendant that tend to exculpate him are not admissions, and therefore, are inadmissible hearsay.  Evidence Code section 1220 states that statements made by a party opponent, which are offered against him, are not made inadmissible by the hearsay rule.  In addition, a self-serving denial of responsibility cannot be introduced by a party.  (*People v. Clay* (1984) 153 Cal.App.3d 433, 457.)  Furthermore, "self-serving extra judicial declarations by criminal defendant's are inadmissible to prove the truth of what was said." (*People v. Clay*, supra, 153 Cal.App.3d at 457; *People v. Williamson* (1977) 71 Cal.App.3d 206, 214.)

Dated:  June 11, 2020

Respectfully submitted,
MICHAEL A. HESTRIN
District Attorney


KIMBERLY R. DITTRICH
Deputy District Attorney

| | |
|---|---|
| 1 | **PROOF OF SERVICE BY FACSIMILE (FAX)** |
| 2 | Case No.  SWF1900605 |
| 3 | |
| 4 | I, the undersigned, say: I am a resident of or employed in the County of Riverside, over |
| 5 | the age of 18 years and not a party to the within action or proceeding; that my residence or |
| 6 | business address is 30755-D Auld Road, Murrieta, California, FAX number (951) 304-5405. |
| 7 | That on June 11, 2020, I served a copy of the paper to which this proof of service by |
| 8 | facsimile (FAX) is attached, PEOPLE'S TRIAL BRIEF AND MOTIONS IN LIMINE, on the |
| 9 | following: |
| 10 | |
| 11 | **MARK DAVIS** |
| 12 | **DEPUTY PUBLIC DEFENDER** |
| 13 | **FAX No.  (951) 304-5605** |
| 14 | |
| 15 | |
| 16 | I certify (or declare) under penalty of perjury that the foregoing is true and correct. |
| 17 | Executed on June 10, 2020, at Riverside, California. |
| 18 | |
| 19 | *J. Wauthion* |
| 20 | |
| 21 | **D E C L A R A N T** |

MICHAEL A. HESTRIN
DISTRICT ATTORNEY
County of Riverside
3960 Orange Street
Riverside, California

```
***********Attention Sheriff*************
Defendant to be dressed out for trial.
Defendant ordered to return on any and all future hearing dates.
- - Custody Status/Information - -
Remains remanded to custody of Riverside Sheriff.
Bail to Remain as fixed.
Minute Order printed to Southwest Detention Center
Save Minute Order to case.
MINUTE ORDER OF COURT PROCEEDING
```



| 1 | MICHAEL A. HESTRIN |
| 2 | District Attorney |
| 3 | County of Riverside |
| 4 | 30755-D Auld Road |
| 5 | Murrieta, California  92563 |
| 6 | Telephone: (951) 304-5400 |
| 7 | Kimberly R. Dittrich |
| 8 | State Bar No: 254259 |

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

AUG 03 2020

N. Baltazar

AUG 03 2020

SUPERIOR COURT OF CALIFORNIA

COUNTY OF RIVERSIDE

(Southwest)

THE PEOPLE OF THE STATE OF CALIFORNIA,

Plaintiff,

v.

ONRE LEYVA,

Defendant.

NO. SWF1900605

PEOPLE'S PROPOSED
WITNESS LIST

The following list includes the potential witnesses that the People plan to call at jury trial. This list includes all of the witnesses known to the People at this time. The People may not call all of the individuals listed below. Should information arise during the course of this trial that gives rise to a witness that is not listed below, I will provide the relevant information to the defense immediately.

1. Jennifer Jimenez
2. Jacob Leyva
3. Logan Thompson
4. Aubrey Jimenez, age 12
5. Deputy Frank Rubio
6. Deputy Frank Rice – arrest of defendant 12/24/2019
7. Sr. Investigator James McDonald

*Marcys Law. harrassing Logan to testify!*

*but for the prosecution. Mark C Davis offers no witness, no defense, nothing*

MICHAEL A HESTRIN
DISTRICT ATTORNEY
County of Riverside
State of California

1

1     8.  Cassandra Pemberton – DV Expert

2

3 Dated:  March 30, 2020            Respectfully submitted,

4

5                            MICHAEL A. HESTRIN

6                            District Attorney

7

8

9

10

11                            KIMBERLY R. DITTRICH

12                            Deputy District Attorney

MICHAEL A HESTRIN
DISTRICT ATTORNEY
County of Riverside
State of California

2

1  MICHAEL A. HESTRIN
2  District Attorney
3  County of Riverside
4  30755-D Auld Rd. Suite 321
5  Murrieta, California 92563
6  Telephone: (951) 304-5400
7  Kimberly Dittrich, Deputy District Attorney
8  State Bar No. 254259
9

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

AUG 03 2020

N. Baltazar

AUG 03 2020

10
11              SUPERIOR COURT OF CALIFORNIA
12                  COUNTY OF RIVERSIDE
13                       (Southwest)
14

15  THE PEOPLE OF THE STATE OF CALIFORNIA,          NO. SWF1900605
16
17                                    Plaintiff,    PEOPLE'S PROPOSED
18                                                  EXHIBIT LIST
19                       v.
20
21  ONRE LEYVA,
22
23                                    Defendant.
24
                          **EXHIBITS**
25      The People reserve the right to amend this list as exhibits become reasonably known or
26  made available.                                    ~~DVR BWC footage BODYCAM~~
27      1. BWC from 7/25/2019
28      2. Map from Stadium Pizza, Lake Elsinore to 24772 Paradise Meadows Dr, Menifee
29      3. Photo of White Nissan Altima
30
31      4. Photo of 1998 GMC Sierra Pickup
32      5. Photo of piggy bank
33      6. 911 call on 7/25/2019 by Jennifer Jimenez (3:43 minutes)
34      7. Stipulation or owner registration for 1998 GMC License Plate No. 51642R2 showing
35         Jennifer Jimenez was the registered owner on 7/25/2019
36

MICHAEL A. HESTRIN
DISTRICT ATTORNEY
County of Riverside
3960 Orange Street
Riverside, California

1

8.  CAD log from 12/24/2019 showing arrest of defendant at the victim's house

9.  Stipulation or certified Prior Conviction packet for PC 422 on 06/01/2011 County of Los Angeles

10. Stipulation or certified Prior Conviction packet PC 422 on 06/26/1995 County of Los Angeles

11. Stipulation of incidents of prior domestic violence convictions or defendant's certified CII showing:

    a.  06/26/1995 PC 242, PC 422 and PC 594 County of Downey
    b.  12/07/1997 VOP in lieu for filing a PC 273.5 County of Orange
    c.  01/08/1998 PC 136.1 misdemeanor County of Orange
    d.  06/01/2011 PC 422 County of Los Angles

12. Stipulation of incidents of prior domestic violence convictions or defendant's certified FBI showing:

    a.  03/23/2002 domestic violence misdemeanor conviction Carson City, NV

13. Defendant's certified booking photo

14. Defendant's 969b packet

Dated: March 30, 2020

Respectfully submitted,
MICHAEL A. HESTRIN
District Attorney

KIMBERLY R. DITTRICH
Deputy District Attorney



1  STEVEN L. HARMON
   Public Defender
2  MARK C. DAVIS (Bar #247903)
   Deputy Public Defender
3  County of Riverside
   30755-D Auld Road, Suite 2233
4  Murrieta, CA 92562

5  Attorneys for Defendant
   ONRE LEYVA
6

7

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   FOR THE COUNTY OF RIVERSIDE

10

11 THE PEOPLE OF THE STATE OF          Case No.: SWF1900605
   CALIFORNIA,
12
            Plaintiff,               **DEFENSE TRIAL BRIEF AND MOTIONS
13    vs.                            IN LIMINE**

14 ONRE LEYVA,

15

16        Defendant.

17

18

19                    **STATEMENT OF FACTS**

20

21      Mr. Leyva is charged with multiple domestic violence felonies involving his ex-wife

22 and mother of his children in an incident that occurred on July 25, 2019.  In addition, the

23 prosecution has alleged two "nickel priors" under PC 667(a) and two "strike priors" for the

24 same prior offenses, violations of Penal Code section 422 occurring in 1995 and 2011. As a

25 result of the charges and allegations in this case, he is facing a life sentence under California's

26 "3-strikes" law. Mr. Leyva has pled not guilty to the charges and denied the allegations.  His

27 case is now set for jury trial.  The defense submits the following trial brief and motions *in*

28 *limine* on his behalf.

                              1

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE
AUG 03 2020
N. Baltazar

*Without my Permission! Not Present*

### DEFENSE WITNESSES

Defense intends to call the following witness, whose statement to a defense investigator have been provided to the prosecution:

1. Roberta Derilo

### MOTIONS *IN LIMINE*

### I.

### MOTION TO BIFURCATE PRIOR CONVICTIONS

Defense moves to bifurcate the trial on the truth of the prior offenses. Priors and enhancements alleged only to enhance sentence do not have to be decided by the jury at the same time as the current offense. (*People v. Calderon* (1994) 9 Cal. 4th 69.) The trial court should generally order bifurcation of such priors or enhancements at the request of the defense. (*Id.*)

### II.

### MOTION TO EXCLUDE PRIOR CONVICTIONS OF DEFENDANT

Defense moves to exclude and/or limit the use of Mr. Leyva's prior convictions for purposes of impeachment. Based on the rap sheet provided by the prosecution, there are a number of convictions that could potentially be used to impeach Mr. Leyva's credibility should he choose to testify, most notably his prior convictions for 422 in 1995 and 2011, which also form the basis for the strike priors and the nickel priors.

Although the Court may in its discretion permit the impeachment of a defendant in a criminal trial by use of felony convictions involving "moral turpitude," defined as "readiness to do evil," the Court should engage in a balancing test in accordance with Evidence Code section 352 before exercising that discretion. (*People v. Castro* (1985) 38 Cal.3d 301.)

In exercising that discretion the trial court should consider the four factors from *People v. Beagle* (1972) 6 Cal.3d 441:

1   (1)   Whether the prior conviction reflects lack of honesty or truthfulness, even though it does

2         involve moral turpitude;

3   (2)   Whether the felony conviction is near or remote in time;

4   (3)   Whether the felony conviction was suffered for the same, or substantially similar, conduct

5         for which the witness-accused is on trial; and

6   (4)   What effect the use of the felony conviction to attack defendant's credibility would have on

7         his decision not to testify.

8         Here, the defense moves the court to make a specific ruling with respect to which of Mr.

9   Leyva's prior convictions will be admissible to impeach his credibility should he choose to

10  testify in his own defense.  Further, the defense would request that the prosecution be limited

11  to asking whether Mr. Leyva sustained the conviction in question and prohibited from delving

12  into the facts of the prior conviction. This pre-trial ruling will give Mr. Leyva the opportunity

13  to carefully weigh and consider the benefits and risks with respect to the exercise of this

14  important constitutional right.

15                                      **III.**

16            **MOTION TO EXCLUDE ANTICIPATED 1101(b)/1109 EVIDENCE**

17        Defense further moves to exclude the use of prior conduct as 1101(b) as well as 1109

18  evidence.  Here, it is anticipated that the prosecution will attempt to introduce a number of

19  prior acts of domestic violence, including acts that did not result in a conviction.  Defense

20  moves to strictly limit the use of these prior acts and/or convictions in order to safeguard Mr.

21  Leyva's right to a fair trial.

22        Subject to certain exceptions, evidence of other bad acts is inadmissible to prove that a

23  criminal defendant had a predisposition to commit the alleged offense. (*People v. Lindberg*

24  (2008) 45 Cal. 4th 1, 22.)  Exclusion of this evidence is based on the concern that it is highly

25  prejudicial. Exclusion occurs not because the evidence has too little probative value, but

26  because it has too much. (*People v. Guerrero* (1976) 16 Cal. 3d 719, 724; *People v. Hendrix*

27  (2013) 214 Cal. App. 4th 216, 238.) Because substantial prejudice is inherent in the case of

28  uncharged offenses, such evidence is admissible only if it has substantial probative value.

3

1    (*People v. Kelly* (2007) 42 Cal.4th 763, 783 [citing *People v. Ewoldt* (1994) 7 Cal.4th 380,

2    404.].)

3        Evidence Code section 1101, subdivision (a) expressly prohibits the use of prior bad

4    acts if the only theory of relevance is that the accused has a propensity (or disposition) to

5    commit the crime charged and that this propensity is circumstantial proof that the accused

6    behaved accordingly on the occasion of the charged offense. (*People v. Thompson* (1980) 27

7    Cal.3d 303, 316.) While the law prohibits the admission of prior bad acts to prove propensity,

8    section 1101(b) permits the admission of the defendant's commission of a crime when relevant

9    to prove some fact, such as motive, opportunity, intent, preparation, plan, or knowledge. (Evid.

10   Code, § 1101.) When the prosecution seeks to admit evidence of prior crimes, a trial judge

11   must determine: (1) the materiality of the fact sought to be proved or disproved; (2) the

12   tendency of the uncharged crime to prove or disprove the material fact; and (3) the existence of

13   any rule or policy requiring the exclusion of relevant evidence. (*People v. Thompson, supra*, 27

     Cal.3d at p. 315.)

14       Lastly, a trial court must closely consider the highly prejudicial nature of the admission

15   of other crimes or any other policy consideration for the exclusion of the evidence. The

16   California Supreme Court has recognized that "[r]egardless of its probative value, evidence of

17   other crimes always involves the risk of serious prejudice . . ." (*People v. Griffin* (1967) 66

18   Cal.2d 459, 466, emphasis added.) Therefore, the trial court must consider the possibility of an

19   emotional response to the proposed evidence that would evoke the jury's bias against the

20   defendant as an individual unrelated to his guilt or innocence. (*People v. Gunder* (2007) 151

21   Cal.App.4th 412, 417; *People v. Wright* (1985) 39 Cal.3d 576, 585.)

22       Finally, it should be noted that many of the prior acts that are alleged occurred well over

23   the 10-year limitation described in Evidence Code section 1109. "Evidence of acts occurring

24   more than 10 years before the charged offense is inadmissible under this section, unless the

25   court determines that the admission of this evidence is in the interest of justice." (Cal. Evid.

26   Code § 1109.)

27       Based on discovery provided to the defense, as well as the People's trial brief, the

28   defense anticipates the following prior conduct to be offered by the prosecution:

1. **December 31, 2001 incident involving Jennifer Leyva.** Described in People's trial brief and contained in an incident report. No conviction, and incident occurred nearly 20 years ago.

2. **November 1, 2002 incident involving Jennifer Leyva.** Described in People's trial brief and contained in incident report. *Not apparent from the RAP sheet that this offense resulted in a conviction, as indicated in People's trial brief.*

3. **November 25, 2005 incident involving Jennifer Leyva.** Described in People's trial brief and contained in incident report. This incident resulted in a conviction for 647(f) only.

4. **September 23, 2006 incident involving Jennifer Jimenez.** Described in People's trial brief and contained in incident report. This incident appears to have been charged as PC 273.6, PC 602.5, and PC 853.7, and proceedings resulted in a conviction for Penal Code section 853.7 only.

5. **2011 incident that resulted in a conviction for Penal Code section 422.** Defendant pled to 422 involving Suzanne Jimenez and was sentenced to 16 months in state prison. Additional allegations of 422 against Jennifer and Mario Jimenez were dismissed in that proceeding. Defense has received no police reports in this matter.

## IV.

## MOTION TO EXCLUDE 911 CALLS

Defense moves to exclude the 911 calls in this case, specifically the 911 call from 12/24/19, which pertains to an uncharged incident, as well as the 911 call from 7/25/19, which pertains to the charged incident. Both 911 calls are made by Jennifer Leyva. Both are made not to report an ongoing emergency, but rather to explain or narrate a past occurrence. As such, these calls are classic "testimonial hearsay" and should be excluded, unless either side is able to lay the foundation for a hearsay exception.

1 │ Date: _8/3/20_

2

3                                        Respectfully Submitted,

3                                        STEVEN L. HARMON
                                         Public Defender

4

5                                        by:

6                                        MARK C. DAVIS
                                         Deputy Public Defender

7

8                                        Attorneys for Defendant
                                         ONRE LEYVA

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

```
F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

AUG 0 3 2020

N. Baltazar
```

1  MICHAEL A. HESTRIN
2  District Attorney
3  County of Riverside
4  30755-D Auld Rd. Suite 321
5  Murrieta, California  92563
6  Telephone: (951) 304-5400
7  Kimberly R. Dittrich, Deputy District Attorney
8  State Bar No.  254259
9
10                    IN THE SUPERIOR COURT
11           OF RIVERSIDE COUNTY, STATE OF CALIFORNIA
12                      (Downtown Riverside)
13
14  THE PEOPLE OF THE STATE OF CALIFORNIA          CASE NO. SWF1900605
15
16                              Plaintiff,         PEOPLE'S PROPOSED JURY
17                                                 QUESTIONS
18                   v.
19
20
21  ONRE LEYVA,
22
23                              Defendant.
24
25     TO THE HONORABLE JUDGE OF THE SUPERIOR COURT.  Please find attached a list of
26  proposed questions for jury selection in the above-entitled case.
27
28  VIOLENCE IN GENERAL
29     1.  Have you ever been involved in a physical altercation as participant, victim or witness?
30     2.  Have you had occasion to call police for your own protection from physical violence?
31     3.  Do you know anyone who has had to do this?
32     4.  Do you have strong feelings about the use of violence?
33
34  DOMESTIC VIOLENCE
35     1.  Has anyone ever experienced domestic violence in their own relationships, within their
36         family, or witnessed domestic violence in friend's relationships?

                                    1
```

2. If so, how did those experiences make you feel?

3. Does anyone feel that crimes of violence within a domestic relationship should be judged differently from other crimes?

4. Is there anyone here who feels that domestic violence is a family thing and that the courts should not get involved?

5. Do you understand that the State is the one pressing charges?  The victim in this case is not pressing charge?  Do you think that is fair?

6. Does anyone feel that certain amounts of violence are normal in a relationship and are just part of any relationship?

7. Would anyone hold it against a victim of domestic violence if they stayed with their abuser?

8. Would anyone hold it against a victim of domestic violence if they did not report every act of domestic violence to police?

9. Can anyone think of reasons why a victim may minimize the abuse, not report abusive, recant or be uncooperative?

10. Do you believe that if a woman lives with a man without being married to him, she deserve whatever comes her way?  Even bad things?

ALCOHOL QUESTIONS

1. Has anyone had a personal experience with alcohol abuse?  What about friends or family?

2. Has anyone attended AA classes?

3. Has anyone had a personal experience with a controlled substances?  What about friends or family?

4. Has anyone had a close family member or friend that has been effected by alcohol or drug use?

GENERAL QUESTIONS

1. Has anyone here ever been accused of, arrested for, charged with or convicted of any crime?  What about family members and close friends?  How did you feel those individuals were treated by the court system?

2. Has anyone ever had any negative experience with law enforcement? If so, what was that experience and will it affect your ability to evaluate the testimony of deputies who testify in this trial?

Dated: August 3, 2020

2

Respectfully submitted,

MICHAEL HESTRIN
District Attorney

KIMBERLY R. DITTRICH
Deputy District Attorney

3

Superior Court of California, County of Riverside,
www.riverside.courts.ca.gov RC
4100 MAIN ST.
Riverside, CA 92501


People of the State of California
                  Vs.                    CASE NO.   SWF1900605
        ONRE LEYVA

                            MINUTE ORDER

========================================================================
Hearing Re: Marsden Motion
Date: 08/03/20      Time:   12:00 AM      Dept/Div: S202
========================================================================
Charges: 1) 459 PC, 1) 459 PC, 2) 10851(A) VC, 2) 10851(A) VC, 3) 236 PC
3) 422 PC, 4) 243(E)(1) PC, 4) 422 PC, 5) 422 PC, 5) 236 PC, 6) 422 PC, 6)
236 PC
7) 243(E)(1) PC, 8) M273A(B) PC, 999) 667(A)(1) PC, 999) 667(A)(1) PC,
999) 667(A)(1) PC


------------------------------------------------------------------------

Honorable Judge Bonnie Dumanis, Presiding
Courtroom Assistant: N Baltazar
Court Reporter: O. Hutcheson
People represented by Deputy District Attorney: Kim Dittrich (not
present).
Defendant represented by DPD Mark Davis.
Defendant Present.
At 15:40 the following proceedings were held:
This is a confidential hearing and only court
staff; defendant and Defense Attorney
are present in court.
Court orders transcript of Marsden sealed.
Defendant is Sworn and testifies on his/her own behalf.
Oral motion by defendant Re Marsden is called for hearing
Stipulated motion to continue pursuant to 1050 PC is granted. Hearing
continued to 08/04/2020 at 8:30, Dept. S202.
Pursuant to 1050(d) PC, the court finds good cause has been shown to grant
the continuance.
1050 Reason for continuance: Other
Defendant ordered to return on any and all future hearing dates.
- - Custody Status/Information - -
Remains remanded to custody of Riverside Sheriff.
Bail to Remain as fixed.
Minute Order printed to Southwest Detention Center
Save Minute Order to case.
MINUTE ORDER OF COURT PROCEEDING

Already Knew what she was going to do with my Case to get a Conviction by Bi-furcating Jury Trial while assuring me a fair Trial without a reasonable doubt in Marsden Hearing!

```
           Superior Court of California, County of Riverside,
                     www.riverside.courts.ca.gov RC
                            4100 MAIN ST.
                         Riverside, CA 92501


      People of the State of California
                      Vs.                    CASE NO.   SWF1900605
            ONRE LEYVA


                          MINUTE ORDER

==================================================================
 Hearing Re: Marsden Motion
 Date: 08/04/20      Time:   12:00 AM    Dept/Div: S202
==================================================================
 Charges:  1) 459 PC, 1) 459 PC, 2) 10851(A) VC, 2) 10851(A) VC, 3) 236 PC
3) 422 PC, 4) 243(E)(1) PC, 4) 422 PC, 5) 422 PC, 5) 236 PC, 6) 422 PC, 6)
236 PC
7) 243(E)(1) PC, 8) M273A(B) PC, 999) 667(A)(1) PC, 999) 667(A)(1) PC,
999) 667(A)(1) PC
999) 667(A)(1) PC

------------------------------------------------------------------

Honorable Judge Bonnie Dumanis, Presiding
Courtroom Assistant: N Baltazar
Court Reporter: O. Hutcheson
People represented by Deputy District Attorney: Kim Dittrich (not
present).
Defendant represented by DPD Mark Davis.
Defendant Present.
At 8:39 the following proceedings were held:
This is a confidential hearing and only court
staff; defendant and Defense Attorney
are present in court.
Motion by defendant Re continued Marsden is called for hearing.
DPD Mark Davis is sworn.
Marsden motion denied.
Court orders transcript of Marsden sealed.
Defendant ordered to return on any and all future hearing dates.
- - Custody Status/Information - -
Remains remanded to custody of Riverside Sheriff.
Bail to Remain as fixed.
Save Minute Order to case.
```

SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE
**FOR IDENTIFICATION ONLY**
CASE NO.: SWF1900605
DATE: 8-4-20
EXHIBIT NO.: 1A
☐ Plaintiff/Petitioner   ☐ Court   ☐ Defendant/Respondent
CEO/CLERK
BY: W. Baltazar , DEPUTY
Form E C5051   Revised 7-1-15

Superior Court of California, County of Riverside,
www.riverside.courts.ca.gov RC
4100 MAIN ST.
Riverside, CA 92501


People of the State of California
                Vs.                    CASE NO.  SWF1900605
          ONRE LEYVA

                        MINUTE ORDER

===================================================================
 Jury Trial In-Progress
 Date: 08/04/20      Time:   12:00 AM     Dept/Div: S202
===================================================================
 Charges:  1) 459 PC, 1) 459 PC, 2) 10851(A) VC, 2) 10851(A) VC, 3) 236 PC
3) 422 PC, 4) 243(E)(1) PC, 4) 422 PC, 5) 422 PC, 5) 236 PC, 6) 422 PC, 6)
236 PC
7) 243(E)(1) PC, 8) M273A(B) PC, 999) 667(A)(1) PC, 999) 667(A)(1) PC,
999) 667(A)(1) PC

-------------------------------------------------------------------

1st Day of Trial
Stat Count: Trial
Honorable Judge Bonnie Dumanis, Presiding
Courtroom Assistant: N Baltazar
Court Reporter: O. Hutcheson
People represented by Deputy District Attorney: Kimberly Dittrich.
Defendant represented by DPD Mark Davis.
Defendant Present.
At 9:42 the following proceedings were held:
Out of the presence of the Prospective Jury;
the following proceeding were held:
Oral motion by both Counsel Re bifurcation of priors is called for hearing

Motion/Petition granted.
Oral motion by People Re dismiss priors in the interest of justice is
called for hearing
Motion/Petition granted.
Court orders Prior(s) 02 Stricken.
Court orders second prior PC 422 with conviction
date of 6/26/1995 stricken.
Defendant waives jury trial on prior(s).
Save Minute Order to case.
People's Exhibit 1, described as 911 call on 7/25/19 by Jennifer Jiminez
is/are marked for identification only.
People's Exhibit 1A, described as Transcript of exhibit 1 is/are marked
for identification only.
Counsel stipulate: Court Reporter may use transcript & not transcribe.
Courts tentative ruling as stated on the record.
Motion in Limine re: Prior 1109 Incidents is called for hearing.
Court's rulings are stated on the record.
Arguments and Rulings

as stated on the record.
Court and Counsel Confer regarding: Court logistics & trial schedule.
Court and Counsel Confer regarding: Defense decline of Stipulation re Jury
Seperation.
Court in recess at 10:45.
At 11:05 the following proceedings were held:
All parties previously present are again Present in Court.
Defendant Present.
Panel 1 Prospective Jurors Present in Court.
Jury Voir Dire regarding hardships for Panel 1 commences.
Save Minute Order to case.
Panel 1 Prospective Jurors ordered to return at 13:30.
Out of the presence of the Prospective Jury;
the following proceeding were held:
Court and Counsel Confer regarding: Admonishment & Stipulation.
Court's rulings are stated on the record.
Court and Counsel Confer regarding: Jurors excused for hardships.
Court in recess at 11:50.
Save Minute Order to case.
At 14:15 the following proceedings were held:
Panel 1 Prospective Jurors Present in Court.
Introductions are made & charges are read.
Proposed witnesses are read and trial schedule
is provided.
Prospective Jurors are given Juror Questionnaires
to be completed and submitted to Jury Assembly.
Prospective Jurors ordered to return on 08/05/20 at 13:30.
Out of the presence of the Prospective Jury;
the following proceeding were held:
Court and Counsel Confer regarding: Matter charges are read.
Court in recess at 14:41.
At 15:05 the following proceedings were held:
All parties previously present are again Present in Court.
Defendant Present.
Panel 2 Prospective Jurors are Present in Court.
Introductions are made & trial schedule is
provided.
Prospective Jurors are given Juror Questionnaires
to be completed and submitted to Jury Assembly.
Panel 2 Prospective Jurors ordered to return at 15:25.
Panel 1 Prospective Jurors Present in Court.
Introductions are made & charges are read.
Proposed witnesses are read and trial schedule
is provided.
Panel 1 Prospective Jurors ordered to return 08/06/20 at 9:00.
Panel 2 Prospective Jurors Present in Court.
Jury Voir Dire regarding hardships for Panel 2 commences.
Those excused for hardships are instructed to
to go to Jury Assembly Room.
Remaining Prospective Jurors are given a
Juror Questionnaires to be completed and submitted
to Jury Assembly by 08/06/20 before 9:00.
Jury Assembly to notificy Panel 1 & 2 and
inform them to return on 08/06/20 at 9:00.
Court orders another panel of 50 jurors for
08/06/20 at 9:00.

Jury Trial (In-Progress) adjourned to 08/05/2020 at 9:00 Dept S202
Defendant to be dressed out for trial.
Defendant ordered to return on any and all future hearing dates.
- - Custody Status/Information - -
Remains remanded to custody of Riverside Sheriff.
Bail to Remain as fixed.
Minute Order printed to Southwest Detention Center
At 16:04, proceedings adjourned.
Save Minute Order to case.
MINUTE ORDER OF COURT PROCEEDING

Superior Court of California, County of Riverside,
www.riverside.courts.ca.gov RC
4100 MAIN ST.
Riverside, CA 92501


People of the State of California
                Vs.                    CASE NO.   SWF1900605
     ONRE LEYVA


                        MINUTE ORDER

======================================================================
 Jury Trial In-Progress
 Date: 08/05/20     Time:   12:00 AM     Dept/Div: S202
======================================================================
 Charges:  1) 459 PC, 1) 459 PC, 2) 10851(A) VC, 2) 10851(A) VC, 3) 236 PC
3) 422 PC, 4) 243(E)(1) PC, 4) 422 PC, 5) 422 PC, 5) 236 PC, 6) 422 PC, 6)
236 PC
7) 243(E)(1) PC, 8) M273A(B) PC, 999) 667(A)(1) PC, 999) 667(A)(1) PC,
999) 667(A)(1) PC
999) 667(A)(1) PC

----------------------------------------------------------------------

2nd Day of Trial
Stat Count: Trial
Honorable Judge Bonnie Dumanis, Presiding
Courtroom Assistant: N Baltazar
Court Reporter: O. Hutcheson
People represented by Deputy District Attorney: Kimberly Dittrich.
Defendant represented by DPD Mark Davis.
Defendant Present.
At 9:02 the following proceedings were held:
Out of the presence of the Prospective Jury;
the following proceeding were held:
Court and Counsel Confer regarding: Additional witnesses & witness
schedule.
Court and Counsel Confer regarding: People will proceed if witness is not
available.
Jury Voir Dire hardships for Panel 2 commences.
Panel 2 Prospective Jurors ordered to return 08/06/20 at 9:00 a.m.
Jury Voir Dire hardships for Panel 2 concluded.
Court in recess at 9:51.
Court resumes trial at 10:51.
All parties previously present are again Present in Court.
Defendant Present.
Out of the presence of the Prospective Jury;
the following proceeding were held:
Court and Counsel Confer regarding: Reviewal of Panel 3 hardships.
Panel 3 Prospective Jurors who are able to serve
are present in Court.
Introductions are made and charges are read.
Potential Witnesses are read.
Prospective Jurors are to complete a Juror
Questionnaire and directed to submit to

Jury Assembly Room by today.
Panel 3 Prospective Jurors ordered to return 08/06/20 at 9:00 a.m.
Out of the presence of the Prospective Jury;
the following proceeding were held:
Court and Counsel Confer regarding: Defendants priors.
Save Minute Order to case.
Panel 3 Prospective Jurors who are able to
serve are Present in Court.
Jury Voir Dire hardships for Panel 3 commences.
Out of the presence of the Prospective Jury;
the following proceeding were held:
Court and Counsel Confer regarding: Reviewal of Juror Questionnaire & Case
Law.
Jury Trial (In-Progress) adjourned to 08/06/2020 at 8:45 Dept S202
Court orders all juror information not to be
shared or provided with anyone.
Defendant to be dressed out for trial.
Defendant ordered to return on any and all future hearing dates.
- - Custody Status/Information - -
Remains remanded to custody of Riverside Sheriff.
Bail to Remain as fixed.
Minute Order printed to Southwest Detention Center
At 11:58 the following proceedings were held:
Save Minute Order to case.
MINUTE ORDER OF COURT PROCEEDING

**EVIDENCE TAPE**

People v. ONRE LEYVA

SWF1900605

Transcript of 911 Call

07/28/2019

ME192060119/RSDP

Key:

**DISPATCH=911 Dispatch**

**DISPATCH 1=911 Dispatch**

**JIMINEZ=Jennifer Jiminez**

**[BEGINNING OF TRACK 1, DURATION: 00:03.43]**

DISPATCH:    911, state your emergency.

JIMINEZ:    Hi, um, my name is Jennifer Jiminez. And my ex-husband Onre Leyva, we were driving back from Lake Elsinore and he was unhappy with the conversation so he started socking me on the back of my head as I was driving. So I pulled over and then he pulled me out the car, threw me into a ditch, took my car, went to my residence, stole my coins and my truck that I had there and left the residency. So now my son's just picked me up and I am almost back to my home so I don't know who to call or what to do?

DISPATCH:    Okay. Where did all this happen when he, uh, pulled you outta the car?

JIMINEZ:    It was Lakeside Drive, i- I guess still in Lake Elsinore. We were coming back from the stadium.

DISPATCH:    Okay and so where do you live?

JIMINEZ:    I live in Menifee.

MICHAEL A. HESTRIN
DISTRICT ATTORNEY
County of Riverside
State of California

People v. Onre Leyva
911 Call Date: 07/25/2019
Page 1

| | | |
|---|---|---|
| 1 | DISPATCH: | Okay. What's your address? |
| 2 | | |
| 3 | JIMINEZ: | 24772 Paradise Meadows Drive. |
| 4 | | |
| 5 | DISPATCH: | And when did all this happen? |
| 6 | | |
| 7 | JIMINEZ: | About 20 minutes ago. My son (unintelligible) picked me up so I have my phone |
| 8 | | to call you guys. |
| 9 | | |
| 10 | DISPATCH: | Okay. Do you need the paramedics? |
| 11 | | |
| 12 | JIMINEZ: | I don't need the paramedics, no, but I would just really like to file a Police report |
| 13 | | 'cause now he stole my, uh, truck and my coins collection. |
| 14 | | |
| 15 | DISPATCH: | Okay. So did he come to the house and steal the truck? |
| 16 | | |
| 17 | JIMINEZ: | Yeah, he had, um, my son, my son's friend and my daughter in the car and threw |
| 18 | | me outta the car and took them home. And then they were asking him to, "Please |
| 19 | | pull over." He wouldn't pull over so he took them all the way to my house and |
| 20 | | then took my coins and my - and got the keys to my truck and fled. |
| 21 | | |
| 22 | DISPATCH: | Okay. And Jennifer, what's your last name? |
| 23 | | |
| 24 | JIMINEZ: | Jiminez. |
| 25 | | |
| 26 | DISPATCH: | J-I-M-I-N-E-Z? |
| 27 | | |
| 28 | JIMINEZ: | Correct. |
| 29 | | |
| 30 | DISPATCH: | Okay. And your phone number? |
| 31 | | |
| 32 | JIMINEZ: | Uh, 951- th- 639-7499. |
| 33 | | |
| 34 | DISPATCH: | Okay. And what color and, uh, year, make and model on the truck? |
| 35 | | |
| 36 | | |

MICHAEL A. HESTRIN
DISTRICT ATTORNEY
County of Riverside
State of California

People v. Onre Leyva
911 Call Date: 07/25/2019
Page 2

| | | |
|---|---|---|
| 1 | JIMINEZ: | It's a 1999 Toyota, uh, what is it? |
| 3 | MAN: | (Unintelligible). |
| 5 | JIMINEZ: | Uh, it's a Toyota Sequoia or... |
| 7 | MAN: | Tacoma. |
| 9 | JIMINEZ: | Tacoma, Toyota Tacoma. |
| 11 | DISPATCH: | Tacoma, okay. |
| 13 | JIMINEZ: | It's a small pick-up. Like... |
| 15 | DISPATCH: | Do you know the license plate number on it? |
| 17 | JIMINEZ: | I don't know. I'm almost home so I... |
| 19 | DISPATCH: | Okay. |
| 21 | JIMINEZ: | ...can (unintelligible). |
| 23 | DISPATCH: | Okay, and what is your -- is it your ex-husband or soon-to-be? |
| 25 | JIMINEZ: | It's my ex-husband. |
| 27 | DISPATCH: | Okay, what's his name? |
| 29 | JIMINEZ: | Onre Leyva. O-N-R-E, last name L-E-Y-V-A. |
| 31 | DISPATCH: | Okay. Is the vehicle registered to you? |
| 33 | JIMINEZ: | Yes, it is. |
| 35 | DISPATCH: | Okay. Is his name on it? |

People v. Onre Leyva
911 Call Date: 07/25/2019
Page 3

MICHAEL A. HESTRIN
DISTRICT ATTORNEY
County of Riverside
State of California

| | | |
|---|---|---|
| 1 | | |
| 2 | JIMINEZ: | No. |
| 3 | | |
| 4 | DISPATCH: | Okay. And are you legally divorced? |
| 5 | | |
| 6 | JIMINEZ: | Yes. |
| 7 | | |
| 8 | DISPATCH: | Okay. |
| 9 | | |
| 10 | JIMINEZ: | Since 2003. |
| 11 | | |
| 12 | DISPATCH: | Okay, so it's not a community property type thing then? |
| 13 | | |
| 14 | JIMINEZ: | No, not at all. |
| 15 | | |
| 16 | DISPATCH: | Okay. And where does he live? |
| 17 | | |
| 18 | JIMINEZ: | He was staying with me temporarily but he would not find a job and so he |
| 19 | | (unintelligible) the lease. I was in the process to get an eviction though. |
| 20 | | |
| 21 | DISPATCH: | Okay. Okay, let me have an Officer contact you there as soon I can, okay? |
| 22 | | |
| 23 | JIMINEZ: | Thank you so much (unintelligible). |
| 24 | | |
| 25 | DISPATCH: | Okay, thanks. Uh-huh, bye bye. Hey Jennifer, this is the Sheriff's Department |
| 26 | | again. I'm sorry, what color's that Toyota Tacoma? |
| 27 | | |
| 28 | JIMINEZ: | Um, what you say? The year? |
| 29 | | |
| 30 | DISPATCH: | No, the color. |
| 31 | | |
| 32 | JIMINEZ: | Oh, white. |
| 33 | | |
| 34 | DISPATCH: | Okay. Okay, thank you. |
| 35 | | |
| 36 | | |

MICHAEL A. HESTRIN
DISTRICT ATTORNEY
County of Riverside
State of California

People v. Onre Leyva
911 Call Date: 07/25/2019
Page 4

1   MICHAEL A. HESTRIN
2   District Attorney
3   County of Riverside
4   30755-D Auld Rd. Suite 321
5   Murrieta, California 92563
6   Telephone: (951) 304-5400
7   Kimberly R. Dittrich, Deputy District Attorney
8   State Bar No. 254259
9

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

AUG 0 4 2020

N. Baltazar

AUG 1 1 2020

10
11                SUPERIOR COURT OF CALIFORNIA
12                    COUNTY OF RIVERSIDE
13                         (Southwest)
14
15   THE PEOPLE OF THE STATE OF CALIFORNIA,        NO. SWF1900605
16
17                              Plaintiff.         PEOPLE'S BENCH BRIEF ON
18                                                 THE ADMISSION OF A
19                    v.                           CERTIFIED CONVICTION
20
21   ONRE LEYVA,
22                              Defendant.
23
24
25                        **INTRODUCTION**
26       In addition to the court allowing the facts describe in the People's Trial Brief regarding the
27   defendant's prior 1109 conduct, the People seek to introduce the following prior convictions
28   suffered by the defendant that involve domestic violence to help prove his disposition to commit
29   domestic violence.
30
31
32       1.  06/01/2011 for a violation of PC 422, a felony in the County of Los Angeles
33       2.  01/08/1998 for a violation of PC 136.1, a misdemeanor from the County of Orange
34       3.  06/26/1995 for a violation of PC 245(a)(1) and PC 594, both felonies in the County of
35           Downey
36

MICHAEL A. HESTRIN
DISTRICT ATTORNEY
County of Riverside
3960 Orange Street
Riverside, California

1

**I.**

## ADMISSION OF A CERTIFIED DOCUMENT TO PROVE THE COMMISSION OF A PRIOR DOMESTIC VIOLENCE OFFENSE

Evidence Code §452.5(b) provides that certified records of criminal convictions are admissible "to prove the commission, attempted commission, or solicitation of a criminal offense, prior conviction, service of a prison term, or other act, condition, or event recorded by the record." Consequently, whenever evidence of the defendant's commission of a criminal offense is otherwise admissible, the certified record of the conviction, or an electronically digitized copy of it (see Evid C §452.5(b)(2)(A)–(B)), is admissible under Evidence Code §1280 (official records exception to hearsay rule) to prove it, whether the conviction is for a felony or a misdemeanor. See *People v Duran* (2002) 97 Cal.App.4th 1448.

The conviction is admissible to prove a defendant's disposition to engage in domestic violence or acts of abuse against an elder or dependent person or a child when charged with an offense involving domestic violence or abuse of an elder or dependent person or a child.  Evidence Code §1109(a); *People v Fruits* (2016) 247 Cal.App.4th 188, 205 (elder abuse); *People v Brown* (2011) 192 Cal.App.4th 1222, 1232 (domestic violence); *People v Johnson* (2010) 185 Cal.App.4th 520, 528 (domestic violence); *People v Dallas* (2008) 165 Cal.App.4th 940, 957 (child abuse); *People v Johnson* (2008) 164 Cal.App.4th 731 (domestic violence); *People v Williams* (2008) 159 Cal.App.4th 141, 147 (elder abuse); *People v Rucker* (2005) 126 Cal.App.4th 1107 (domestic violence); see also CALCRIM 852.

Dated:  August 4, 2020

Respectfully submitted,

MICHAEL A. HESTRIN
District Attorney

KIMBERLY R. DITTRICH
Deputy District Attorney

Superior Court of California, County of Riverside,
www.riverside.courts.ca.gov RC
4100 MAIN ST.
Riverside, CA 92501

People of the State of California
            Vs.                    CASE NO.  SWF1900605
    ONRE LEYVA

                        MINUTE ORDER

=====================================================================
Jury Trial In-Progress
 Date: 08/06/20     Time:   12:00 AM    Dept/Div: S202
=====================================================================
 Charges:  1) 459 PC, 1) 459 PC, 2) 10851(A) VC, 2) 10851(A) VC, 3) 236 PC
3) 422 PC, 4) 243(E)(1) PC, 4) 422 PC, 5) 422 PC, 5) 236 PC, 6) 422 PC, 6)
236 PC
7) 243(E)(1) PC, 8) M273A(B) PC, 999) 667(A)(1) PC, 999) 667(A)(1) PC,
999) 667(A)(1) PC

---------------------------------------------------------------------

3rd Day of Trial
Stat Count: Trial
Honorable Judge Bonnie Dumanis, Presiding
Courtroom Assistant: N Baltazar
Court Reporter: O. Hutcheson
People represented by Deputy District Attorney: Kimberly Dittrich.
Defendant represented by DPD Mark Davis.
Defendant Present.
At 10:19 the following proceedings were held:
Out of the presence of the Prospective Jury;
the following proceedings were held:
Court and Counsel Confer regarding: Challenges for cause & release for
cause jurors.
Court and Counsel Confer regarding: Prospective Juror #27110555.
Court in recess at 10:25.
At 11:19 the following proceedings were held:
All parties previously present are again Present in Court.
Defendant Present.
Out of the presence of the Prospective Jury;
the following proceeding were held:
Prospective Juror #27110555 present via
telephonically.
Court and Counsel addresses Prospective Juror
#27110555 via telephonically.
Court in recess at 11:19.
Court orders court reporter to prepare transcript for proceedings dated
08/06/2020 of Prospective Juror #27110555 for court use only.
Save Minute Order to case.
At 11:50 the following proceedings were held:
All parties previously present are again Present in Court.
Defendant Present.

Out of the presence of the Prospective Jury;
the following proceeding were held:
Court and Counsel Confer regarding: further information need & how to
proceed further.
Court in recess at 11:51.
At 13:39 the following proceedings were held:
All parties previously present are again Present in Court.
Defendant Present.
Out of the presence of the Prospective Jury;
the following proceeding were held:
Branch Manager and employee present via
telephonically.
Court and Counsel addresses both Branch Manager
and employee.
Court orders transcript of Branch Manager and employee sealed.
Court orders court reporter to prepare transcript for proceedings dated
08/06/2020 of Branch Manager and employee for court use only.
Court in recess at 13:48.
Save Minute Order to case.
At 14:12 the following proceedings were held:
All parties previously present are again Present in Court.
Defendant Present.
Out of the Presence Of the Jury; the following
proceedings were held:
Court and Counsel Confer regarding: Results.
Prospective Juror #27931120 Present in Court.
Prospective Juror #27931120 addresses Court
and Counsel.
Prospective Juror #27931120 is directed to
return to Jury Assembly Room.
Prospective Jurors Present in Court.
Introductions are made and charges are read.
Save Minute Order to case.
Potential witnesses are read.
Prospective Jury Panel having been summoned, is sworn regarding their
qualifications to act as trial jurors.
Save Minute Order to case.
Jury Voir Dire commences.
Save Minute Order to case.
Court and Counsel Confer regarding: Challenges for Cause not reported.
Prospective jurors are admonished and directed to return return on
08/06/20 at 9:00 a.m..
Out of the Presence Of the Jury; the following
proceedings were held:
Prospective Juror #27707084 Present in Court.
Prospective Juror #27707084 addresses the Court
re: trial schedule.
Prospective Juror #27707084 is ordered to return
on 08/07/20 at 9:00.
Out of the presence of the Prospective Jury;
the following proceeding were held:
Court and Counsel Confer regarding: Stipulation/LiveStreaming/Defendants
convictions.
Jury Trial (In-Progress) adjourned to 08/07/2020 at 9:00 Dept S202
Defendant to be dressed out for trial.
Defendant ordered to return on any and all future hearing dates.

```
- - Custody Status/Information - -
Remains remanded to custody of Riverside Sheriff.
Bail to Remain as fixed.
Minute Order printed to Southwest Detention Center
At 16:00, proceedings adjourned.
Save Minute Order to case.
MINUTE ORDER OF COURT PROCEEDING
```

1  MICHAEL A. HESTRIN
2  District Attorney
3  County of Riverside
4  30755-D Auld Rd. Suite 321
5  Murrieta, California 92563
6  Telephone: (951) 304-5400
7  Kimberly R. Dittrich, Deputy District Attorney
8  State Bar No. 254259
9
10
11              SUPERIOR COURT OF CALIFORNIA
12                 COUNTY OF RIVERSIDE
13                      (Southwest)
14
15  THE PEOPLE OF THE STATE OF CALIFORNIA,        NO. SWF1900605
16
17                                Plaintiff,      PEOPLE'S BRIEF ON THE
18                                                ADMISSIBILITY OF THE
19                          v.                    VICTIM'S 911 CALL UNDER
20                                                EVIDENCE CODES 1240 &
21  ONRE LEYVA,                                   1241
22                                Defendant.
23
24                                                Date: 08/06/2020
25                                                Time: 9:00am
26
27
28                              **I.**
29                        **INTRODUCTION**
30        The People would like to put defense and the court on notice of their intent to proceed with
31  the jury trial if one of the named victim's, Jennifer Jiminez, does not appear in court and ask this
32  Court to allow the People to play the victim's 911 on 07/25/2019 with an RSO custodian of records,
33  Dispatcher Melissa Hernandez. If the victim refuses to honor her subpoena and attend court, the
34  People seek a ruling on the request to introduce her statements under Evidence Code sections 1240
35  (spontaneous statements) and Evidence Code 1241 (contemporaneous statement).
36

MICHAEL A. HESTRIN
DISTRICT ATTORNEY
County of Riverside
3960 Orange Street
Riverside, California

                                   1

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

AUG 0 6 2020

N. Baltazar

## II.
### POINTS AND AUTHORITIES
### THE VICTIMS 911 CALL IS ADMISSIBLE UNDER
### EVIDENCE CODE SECTIONS 1240 OR 1241

**A. Statements Should be Allowed under Evidence Code Section 1240.**

Evidence Code section 1240 makes admissible hearsay statements that "narrate, describe, or explain an act, condition, or event perceived by the declarant" that were "made spontaneously while the declarant was under the stress of excitement caused by such perception." The mental state of the speaker is "the crucial element in determining whether a declaration is sufficiently reliable to be admissible under this exception to the hearsay rule . . . ." (*People v. Blacksher, supra,* 52 Cal.4th at p. 817.) A court "considers a variety of factors to determine the mental state of the declarant." (*People v. Lynch* (2010) 50 Cal.4th 693, 752, overruled on other grounds.) The factors include "the length of time between the startling occurrence and the statement, whether the statement was blurted out or made in response to questioning, how detailed the questioning was, whether the declarant appeared excited or frightened, and whether the declarant's physical condition was such as would inhibit deliberation." (*People v. Lynch, supra,* 50 Cal.4th 693, citing to *People v. Raley* (1992) 2 Cal.4th 870, 894; *People v. Ledesma* (2006) 39 Cal.4th 641, 709; and *People v. Farmer* (1989) 47 Cal.3d 888, 903-904.)

**B. Statements Should be Allowed under Evidence Code Section 1241.**

Evidence Code section 1241 makes admissible hearsay statements if the statement is offered to explain, qualify, or make understandable the conduct of the declarant and was made while the declarant was engaged in such conduct. The contemporaneous-statement hearsay exception admits a declarant's statements that accompany equivocal or ambiguous conduct and tend to explain and make understandable the conduct. See *People v. Burnham* (1986) 176 Cal.App.3d 1134, 1144 n4. Some writers do not regard such statements as hearsay but as "verbal acts." But if the statements are offered to prove the truth of matters stated, they are being used in a hearsay fashion, and require this or some other hearsay exception to justify admissibility. This hearsay exception does not require that the declarant's statement be completely contemporaneous with the conduct that is the subject of the statement . It is sufficient if the statements are made during or before the conduct or transaction is completed. See *People v. Marchialette* (1975) 45 Cal.App.3d 974, 980.

2

**II.**
**THE VICTIM'S STATEMENTS ARE ADMISSIBLE BECAUSE THEY FALL UNDER**
**EXCEPTIONS TO THE HEARSAY RULE AND THEY ARE NON-TESTIMONIAL.**

Under *Crawford v. Washington* (2004) 541 U.S. 36 (*Crawford*), the confrontation clause does not apply to nontestimonial statements. Therefore, the rules of hearsay and its exceptions apply. An out-of-court statement that is being offered for its truth must be admissible hearsay under the Evidence Code before any analysis is necessary under *Crawford*. "In analyzing whether admission of an out-of-court statement violates the confrontation clause under [*Crawford*], the first question for the trial court is whether proffered hearsay would fall under a recognized state law hearsay exception; if it does not, the matter is resolved, and no further *Crawford* analysis is required." (*People v. Cage* (2007) 40 Cal.4th 965, 975, fn. 5.)

If the victim's statements qualify as spontaneous statements, the court must then analyze whether they are testimonial under *Crawford*. Although under *Crawford, supra,* 541 U.S. 36, out-of-court "testimonial" statements are inadmissible except when the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant, nontestimonial statements are admissible under *Ohio v. Roberts* (1980) 448 U.S. 56, if there is a hearsay exception. (*Crawford, supra,* 541 U.S. at p. 68.) "[T]he confrontation clause has no application to out-of-court nontestimonial statements (*Whorton v. Bockting* (2007) 549 U.S. 406, 420; *People v. Gutierrez* (2009) 45 Cal.4th 789, 812.)" (*People v. Arceo* (2011) 195 Cal.App.4th 556, 571; see also *Crawford, supra,* 541 U.S. at p. 68; *People v. Cooper* (2007) 148 Cal.App.4th 731, 740.)

The United States Supreme Court explained the distinction between nontestimonial and testimonial statements made to law enforcement officers during a 911 call or at a crime scene in *Davis v. Washington* (2006) 547 U.S. 813 (*Davis*). The Court introduced the "primary purpose" test in which "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency" (*Id.* at p. 822.) Statements are testimonial "when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." (*Ibid.*) This analysis applies an objective examination of the facts and circumstances to determine if the primary purpose of law enforcement's questioning was testimonial or nontestimonial. (*Id.,* 547 U.S. at p. 822, italics added, fn. omitted [statements to 9-1-1 operator about crime in progress were nontestimonial]; but see *Hammon v. Indiana* (2006) 547

MICHAEL A. HESTRIN
DISTRICT ATTORNEY
County of Riverside
3960 Orange Street
Riverside, California

3

U.S. 813, 829-832 [victim's statements to responding police officer during questioning were testimonial because primary purpose of questioning was to establish facts for later prosecution].)

In *Michigan v. Bryant* (2011) 562 U.S. 344 [131 S.Ct. 1143] (*Bryant*) the Supreme Court reaffirmed the "primary purpose" test from *Davis*, emphasizing that it is an objective test.

> The statements and actions of the parties must also be
> objectively evaluated.  That is, the relevant inquiry is not
> the subjective or actual purpose of the individuals involved
> in a particular encounter, but rather the purpose that
> reasonable participants would have had, as ascertained
> from the individuals' statements and actions and the
> circumstances in which the encounter occurred.

(*Id*. at p. 1156.)  "*Davis* requires a combined inquiry that accounts for both the declarant and the interrogator.  In many instances, the primary purpose of the interrogation will be most accurately ascertained by looking to the contents of both the questions and the answers." (*Id*. at pp. 1160-1161.)

In *Bryant*, the Supreme Court provided "additional clarification with regard to what *Davis* meant by 'the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency'." (*Id*. at p.1156.)  "To determine whether the 'primary purpose' of an interrogation is 'to enable police assistance to meet an ongoing emergency,' . . . which would render the resulting statements nontestimonial, we objectively evaluate the circumstances in which the encounter occurs and the statements and actions of the parties." (*Ibid*.)  Among the factors to consider in this "highly context-dependent inquiry" are the scope of the threat to public safety posed by suspect, use and nature of weapon involved, and the medical condition of the victim. (*Id*. at pp. 1158-1159, 179 L.Ed.2d at pp. 110-111.)  Examining these factors, the Supreme Court in *Bryant* held that the statements of a shooting victim to police identifying the assailant and the circumstances of the crime were not testimonial. (*Id*. at pp. 1162-1167, 179 L.Ed.2d at pp. 115-119].)

However, the Court in *Bryant* further stated that:
> As *Davis* made clear, whether an ongoing emergency exists
> is simply one factor - albeit an important factor - that
> informs the ultimate inquiry regarding the "primary
> purpose" of an interrogation.  Another factor . . . is the
> importance of informality in an encounter between a victim
> and police.  Formality is not the sole touchstone of our
> primary purpose inquiry because, although formality

MICHAEL A. HESTRIN
DISTRICT ATTORNEY
County of Riverside
3960 Orange Street
Riverside, California

4

1
2
3
4
5
6

> suggests the absence of an emergency and therefore an
> increased likelihood that the purpose of the interrogation is
> to "establish or prove past events potentially relevant to later
> criminal prosecution," . . . informality does not necessarily
> indicate the presence of an emergency or the lack of
> testimonial intent.

7   (*Bryant, supra,* 562 U.S. at p. 1160.)  "In addition to the circumstances in which an encounter

8   occurs, the statements and actions of both the declarant and interrogators provide objective

9   evidence of the primary purpose of the interrogation." (*Ibid.*)

10      The California Supreme Court in *People v. Cage* (2007) 40 Cal.4th 965, identified several

11   "basic principles" to help determine whether a statement is testimonial and nontestimonial.

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29

> First, . . . the confrontation clause is concerned solely with
> hearsay statements that are testimonial, in that they are out-
> of-court analogs, in purpose and form, of the testimony given
> by witnesses at trial.  Second, though a statement need not be
> sworn under oath to be testimonial, it must have occurred
> under circumstances that imparted, to some degree, the
> formality and solemnity characteristic of testimony.  Third,
> the statement must have been given and taken *primarily* for
> the *purpose* ascribed to testimony – to establish or prove
> some past fact for possible use in a criminal trial.  Fourth, the
> primary purpose for which a statement was given and taken
> is to be determined "objectively," considering all the
> circumstances that might reasonably bear on the intent of the
> participants in the conversation.  Fifth, sufficient formality
> and solemnity are present when, in a nonemergency situation,
> one responds to questioning by law enforcement officials,
> where deliberate falsehoods might be criminal offenses.
> Sixth, statements elicited by law enforcement officials are not
> testimonial if the primary purpose in giving and receiving
> them is to deal with a contemporaneous emergency, rather
> than to produce evidence about past events for possible use at
> a criminal trial.

30   (*People v. Cage, supra,* 40 Cal.4th at p. 984, italics in original, fns. omitted [victim's statements to

31   emergency room physician nontestimonial, but follow-up statements to police officer were

32   testimonial].)

33
34      In *People v. Blacksher* (2011) 52 Cal.4th 769 the California Supreme Court discussed

35   *Bryant* as well.  "*Bryant* counsels that to determine the primary purpose with which a statement is

36   given by the declarant or obtained by an officer a court must consider a number of factors . . . ."

(*Id.* at p. 813.)  These include objectively evaluating the circumstances of the encounter along with the statements and actions of the parties, determining whether an "ongoing emergency" exists or appears to exist, and, if so, whether it has dissipated, taking account of any medical condition of the declarant, and accounting for the informality of the statement and the circumstances of its acquisition.  (*Id.* at pp. 813-815.)

Appellate cases since *Crawford* provide examples of statements held to be nontestimonial even when made directly to law enforcement personnel in response to questioning.  (See, e.g., *People v. Blacksher, supra*, 52 Cal.4th at pp. 816-817 [questioning by initial officers on scene designed to locate the shooting suspect and evaluate the nature and extent of the threat he posed]; *People v. Gann* (2011) 193 Cal.App.4th 994, 1008-1009 [call to 9-1-1 and statements to first responding officer]; *People v. Nelson, supra*, 190 Cal.App.4th at pp. 1467-1468 [severely injured victim naming shooter in response to firefighter's question in ambulance "Who shot you?"]; *People v. Johnson* (2010) 189 Cal.App.4th 1261, 1225-1226 [9-1-1 call by wife describing how her husband had just shot at her]; *People v. Banos* (2009) 178 Cal.App.4th 483, 497 [woman's call to 9-1-1 operator, and her statements to responding police officer, were part of investigation of ongoing emergency]; *People v. Osorio* (2008) 165 Cal.App.4th 603, 614 [injured victim's description of assailant to first officer, who prior to this contact, did not know a crime had occurred]; *People v. Saracoglu* (2007) 152 Cal.App.4th 1584, 1596-1598 [domestic violence victim drove to police station to report crime to police officer]; *People v. Brenn* (2007) 152 Cal.App.4th 166, 176-178 [stabbing victim's recorded statements to emergency dispatcher]; *People v. Johnson* (2007) 150 Cal.App.4th 1467, 1477-1479 [prior victim's statements to police officers responding to disturbance call].

### III.
### CONCLUSION

The People ask this court to please allow the victim's 911 on 07/25/2019 with an RSO custodian of records, Dispatcher Melissa Hernandez, pursuant to Evidence Code section 1240 or 1241.

Dated:  August 5, 2020

MICHAEL A. HESTRIN
DISTRICT ATTORNEY
County of Riverside
3960 Orange Street
Riverside, California

6

1    Respectfully submitted,

2

3              MICHAEL A. HESTRIN

4              District Attorney

5

6

7

8

9              KIMBERLY R. DITTRICH

10             Deputy District Attorney

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

32

33

34

35

36

MICHAEL A. HESTRIN
DISTRICT ATTORNEY
County of Riverside
3960 Orange Street
Riverside, California

7



1  MICHAEL A. HESTRIN
2  District Attorney
3  County of Riverside
4  30755-D Auld Rd. Suite 321
5  Murrieta, California 92563
6  Telephone:  (951) 304-5400
7  Kimberly R. Dittrich, Deputy District Attorney
8  State Bar No.  254259
9
10

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

AUG 0 6 2020

N. Baltazar

AUG 1 1 2020

11              SUPERIOR COURT OF CALIFORNIA
12                   COUNTY OF RIVERSIDE
13                        (Southwest)
14
15  THE PEOPLE OF THE STATE OF CALIFORNIA,      NO.  SWF1900605
16
17                              Plaintiff,       PEOPLE'S BRIEF ON
18                                               ADMITTING DEFENDANT'S
19                   v.                          CERTIFIED PRIORS
20                                               INSTEAD OF LIVE
21  ONRE LEYVA,                                  TESTIMONY
22                              Defendant.
23
24
25                                               Date: 08/05/2020
26                                               Time:  9:00am
27
28
29                              I.
30                         INTRODUCTION
31       The defendant, Onre Leyva, has multiple prior convictions involving domestic violence.  The
32  People anticipate the victim in the case will not testify.  Therefore, the People are seeking to introduce
33  the defendant's prior convictions on 1) 06/01/2011 for a violation of PC 422, a felony in the County
34  of Los Angeles, 2) 01/08/1998 for a violation of PC 136.1, a misdemeanor from the County of
35  Orange and 3) 06/26/1995 for a violation of PC 245(a)(1) and PC 594, a felony and misdemeanor in
36  the County of Downey.

MCHEAL A. HESTRIN
DISTRICT ATTORNEY
County of Riverside
Riverside, California

1

This evidence is made admissible pursuant to *People v. Wesson* (2006) 138 Cal.App.4th 959, Evidence Code sections 1108 & 1109, 452.5, and 352. This case stands for the position that introducing certified convictions to prove conduct in lieu of live testimony is an acceptable way of proving up propensity evidence under Evidence Code section 1108. It is the People's position that this logic should apply to Evidence Code section 1109 evidence as well.

## II.
## BACKGROUND

In *People v. Wesson* (2006) 138 Cal.App.4th 959 the defendant had 1990 felony convictions for sexual offenses. In his current case, he was on trial for sodomy by force, inflicting corporal injury on spouse, making criminal threats and attempting to dissuade a witness. The trial court admitted documentary evidence without any live testimony to show the defendant's prior sexual offense conviction to show his propensity to commit the new charged offenses.

The defendant contends that the trial court erred in admitting documentary evidence rather than live testimony as propensity evidence under Evidence Code section 1108. The defendant's position is that the trial court erred in admitting a court document that he had been convicted of forcible oral copulation and sexual battery. He asserted the admission of this evidence violated Evidence Code section 1108 and violated his constitutional rights to a fair trial by jury. He also contended the trial court abused its discretion under section 352 in admitting this evidence and the evidence was inadmissible hearsay under section 452.5. He also argued the evidence was hearsay, and that the jury would be unable to determine whether the prior offenses showed defendant's propensity to commit the charged crime without this testimony.

Upon review, the California Court of Appeals upheld the admission of documentary evidence rather then live testimony as propensity evidence under Evidence Code section 1108 in the form of defendant's prior convictions for sexual offenses and determined there was no abuse of discretion.

## III.
## STANDARD FOR ADMITTING CERTIFIED PRIOR CONVICTIONS INSTEAD OF LIVE TESTIMONY

First the court determined that copies of the information and abstract of judgment from the defendant's prior conviction are "writings' and fall within the statutory definition of evidence. Evidence Code section 140. The next consideration was whether or not section 1108 limits the type of

1  evidence to live testimony.  The court explained that Evidence Code section 1108 does not limit the

2  type of evidence to live testimony, it includes "writings or other things,' such as the court documents

3  in the present case. *Wesson*, at 967.

4

5

6      The Court of Appeals explained:

7

8          We turn then to section 1108, which provides: 'In a
9          criminal action in which the defendant is accused of a sexual
           offense, evidence of the defendant's commission of another
10         sexual offense or offenses is not made inadmissible by
           Section 1101, if the evidence is not inadmissible pursuant to
11         Section 352." Since section 1108 does not limit the type of
12         evidence to live testimony, it includes "writings or other
13         things," such as the court documents in the present case..."
           *Wesson*, at 967.
14

15

16     Next the court considered the issue of whether court records of a prior conviction are

17  admissible to prove that the defendant committed a prior offense.  In *People v. Duran* (2002) 97

18  Cal.App.4th 1448, the court held that " section 452.5 states a new hearsay exception for certified

19  official records of conviction, which may be offered to prove not only the fact of a conviction, but

20  the commission of the underlying offense."  *Duran*, at 1461.

21     The Court of Appeals also upheld that prior convictions can be used as propensity

22  evidence quoting, *People v. Duran* (2002) 97 Cal.App.4th 1448:

23

24

25         Section 452.5 states a new hearsay exception for certified
26         official records of conviction, which may be offered to
27         prove not only the fact of a conviction, but the commission
           of the underlying offense. *Duran*, at 1461
28

29     In *Wesson*, the court noted that both the prior and charged offenses involved forcible sexual

30  offenses against adult women, and thus the prior offenses were probative as to defendant's

31  propensity to commit the charged offenses. *Wesson*, at 969.   Additionally, the court noted, had

32  defendant wanted to emphasize that the prior offenses were dissimilar, the defendant was free to

33  subpoena the 1108 victim to present such evidence. *Wesson*, at 969.

34

35     The section 352 reasoning was that the prior and current offenses were of same nature, prior

36  offenses committed 14 years earlier were not remote as defendant had spent 11 years in prison,

MICHEAL A. HESTRIN
DISTRICT ATTORNEY
County of Riverside
Riverside, California

3

defendant's guilty plea in prior proceeding resolved issue of certainty, and admission of documentary evidence of prior convictions, rather than live testimony, removed potentially inflammatory details of prior offenses. *Wesson*, at 966, Evidence Code §§ 352, 1108.

## IV.
## DISCUSSION

Evidence Code section 1108 is similar to Evidence Code section 1109. Evidence Code section 1108 allows evidence of other sexual offenses by the defendant whether arrested, charged or convicted. Evidence Code section 1109 allows evidence of defendant's other acts of domestic violence whether or not the conduct resulted in an arrest, charge or conviction.

Both code sections were created by the Legislature because of the sensitive nature of sexual assault and domestic violence. The Legislature enacted these provisions because of the common difficulty in securing the presence of such victims and witnesses. Additionally, the Legislature recognized the difficulty in prosecuting such cases where a victim goes "sideways" or "recants." The nature of both sexual assault and domestic violence are that the victim is uncooperative, fearful, or missing. Both 1108 and 1109 allows for the admission of the defendant's prior convictions in order for the jury to know that the defendant has a propensity to commit such crimes. This is shown by the fact that the defendant has done a crime in the past and therefore he has a propensity to commit the crime again. Such evidence is allowed under Evidence Code section 1108 and 1109 by way of live testimony or court documents.

Evidence Code sections 1108 and 1109 do not limit the type of evidence to live testimony, and Evidence Code section 452.5 specifically allows official record of conviction as proof of commission of criminal offenses. Additionally, Evidence Code section 1108 and 1109 do not limit the type of evidence to live testimony, it includes "writings or other things,' such as the court documents in the present case.

In *Wesson*, the prosecutor notified the defendant he intended to introduce copies of the complaint and abstract of judgment of defendant's prior sex offenses under section 1108. *Wesson*, at 965. Here, Deputy District Attorney Dittrich also gave defense notice that she intended to introduce certified convictions of the defendant's past domestic violence in lieu of live testimony under section 1109.

Finally, as in *Wesson*, this court must consider an Evidence Code section 352 analyses. Upon

MICHEAL A. HESTRIN
DISTRICT ATTORNEY
County of Riverside
Riverside, California

4

conducting the weighing process, this court may take into consideration:

1.  **The nature of the prior offense.**  Here the defendant was previously convicted of criminal threats, dissuading a witness, assault and vandalism; it is of the same class and nature as the charged offense as it is very similar to what the defendant is charged with in the current offense (criminal threats, theft crimes, false imprisonment and child endangerment).

2.  **The prior offenses are relevant as propensity evidence.**  This evidence shows that in the past the defendant has committed domestic violence on his former spouse or mother of his child and has been criminally prosecuted for it.  It goes to show that he is the aggressor in arguments and has had a significant history of domestic violence in his past.  The propensity inference is particularly appropriate in the area of domestic violence because on-going violence and abuse is the norm in domestic violence cases. Not only is there a great likelihood that any one battering episode is part of a larger scheme of dominance and control, that scheme usually escalates in frequency and severity.  Without the propensity inference, the escalative nature of domestic violence is likewise masked, especially when a victim refuses to come to court.

3.  **Remoteness.**  The prior offenses took place in 2011, 1998 and 1995, and the offenses charged here took place in 2019.  In *Wesson*, the Court found that at 14 years apart remoteness is not an issue.  *Wesson*, at 966.

4.  **Issue of Certainty**.  Like in *Wesson*, the fact that the defendant pled guilty to the prior offenses and was placed on felony probation resolves the degree of certainty issue, and the jury will not be distracted by speculating whether the defendant is or was guilty of the now uncharged offenses and/or should be punished for them. The jury will not be tempted to convict the defendant simply to punish him for other offenses and their attention will not be diverted by having to make a separate determination on whether the defendant committed those other offenses.

5.  **Factual similarity**.  In 1995 the defendant gets drunk kicked his wife in the stomach while she was pregnant.  In 1998 he dissuaded her from testifying in court, in 2011 he threatened to kill her and her family.  In the current case, the defendant gets drunk punches her in the back of the head, throws her out of the car, take her children against

their will in the car, threatens to kill them, breaks into her house, steals her coin collection, steals her truck and flees. In *Wesson*, the court explained, the charged and uncharged crimes need not be sufficiently similar that evidence of the latter would be admissible under Evidence Code section 1101, otherwise Evidence Code section 1108 would serve no purpose. That is the exact situation as evidence falling under Evidence Code section 1109. It is enough that the charged and uncharged offenses are sex offenses as defined in Section 1108, like here we have the same charged and uncharged offenses of Penal Code section 422. *Wesson*, at 967.

6.    **Prejudicial impact**. The use of this 1109 evidence like the 1108 evidence in *Wesson* will obviously have a prejudicial impact on the jury. That is the nature of 1109 evidence and also the reason the Court conducts a 352 analysis.

7.    **Burden on defendant**. There is no burden on the defendant in defending against these uncharged crimes or offenses. That burden ended in 2011, 1998, and 1995 when he pled guilty. His only burden is defending against the current charges

8.    **Alternative**. The People have offered a less prejudicial alternative to the outright admission of live testimony of witnesses to the prior offenses by desiring to use only the certified conviction rather than live witnesses describing what took place during the offenses, and this has taken much of the inflammatory detail surrounding the other offenses.

Since the prior and current offenses are of same nature, the defendant's guilty plea in prior proceedings resolve the issue of certainty, and admission of documentary evidence of prior convictions, rather than live testimony, removes potentially inflammatory details of prior offenses, the People request this court admit such evidence.

## V.
## CONCLUSION

The People respectfully request this court allow the defendant's certified prior convictions for 1) 06/01/2011 for a violation of PC 422, a felony in the County of Los Angeles, 2) 01/08/1998 for a violation of PC 136.1, a misdemeanor from the County of Orange and 3) 06/26/1995 for a violation of PC 245(a)(1) and PC 594, a felony and misdemeanor in the County of Downey.



1    Dated: August 5, 2020

2

3

4                                    Respectfully submitted,

5

6                                    MICHAEL A. HESTRIN

7                                    District Attorney

8

9

10                                   KIMBERLY R. DITTRICH

11                                   Deputy District Attorney

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

32

33

34

35

36

MICHEAL A. HESTRIN
DISTRICT ATTORNEY
County of Riverside
Riverside, California

7

Superior Court of California, County of Riverside,
www.riverside.courts.ca.gov RC
4100 MAIN ST.
Riverside, CA 92501


People of the State of California
                        Vs.                    CASE NO.  SWF1900605
            ONRE LEYVA

                        MINUTE ORDER

================================================================
 Jury Trial In-Progress
 Date: 08/07/20      Time:   12:00 AM    Dept/Div: S202
================================================================
 Charges:  1) 459 PC, 1) 459 PC, 2) 10851(A) VC, 2) 10851(A) VC, 3) 236 PC
3) 422 PC, 4) 243(E)(1) PC, 4) 422 PC, 5) 422 PC, 5) 236 PC, 6) 422 PC, 6)
236 PC
7) 243(E)(1) PC, 8) M273A(B) PC, 999) 667(A)(1) PC, 999) 667(A)(1) PC,
999) 667(A)(1) PC

 ----------------------------------------------------------------

 4th Day of Trial
 Stat Count: Trial
 Honorable Judge Bonnie Dumanis, Presiding
 Courtroom Assistant: N Baltazar
 Court Reporter: O. Hutcheson
 People represented by Deputy District Attorney: Kimberly Dittrich.
 Defendant represented by DPD Mark Davis.
 Defendant Present.
 At 9:14 the following proceedings were held:
 Out of the presence of the Prospective Jury;
 the following proceeding were held:
 Counsel stipulate: Qualification of jurors/no
 livestreaming until conclusion of Jury Voir Dire/
 rereading of information/additional witnesses/
 Jury Admonishment.
 Prospective Jurors Present in Court.
 Parties are introduced.
 Prospective Jury Panel having been summoned, is sworn regarding their
 qualifications to act as trial jurors.
 Charges and Potential witnesses are read.
 Jury Voir Dire resumes.
 Peremptory Challenges held.
 Jury Panel Sworn to try the cause.
 Court instructs the jury.
 Jury Panel admonished.
 12 Sworn Jurors Are Directed to return at 11:00.
 Out of the presence of the Prospective Jury;
 the following proceeding were held:
 Court and Counsel Confer regarding: Prospective Juror #27506688.
 Counsel stipulate: Prospective Juror #27506688 may be excused..
 Court in recess at 10:29.

At 11:12 the following proceedings were held:
All parties previously present are again Present in Court.
Defendant Present.
Court and Counsel Confer regarding: Prospective Juror #9.
Counsel stipulate: Keep Prospective Juror #9.
Counsel stipulate: Release sworn jurors for the day.
Members of the Jury Present in Court.
Jurors are admonished and directed to return on 08/10/2020 at 9:00.
Prospective Alternate Jurors Present in Court.
Prospective Jury Panel having been summoned, is sworn regarding their
qualifications to act as trial jurors.
Introductions are made and charges are read.
Potential witnesses are read.
Jury Voir Dire resumes.
Save Minute Order to case.
Court and Counsel Confer regarding: unreported sidebar conference held.
Counsel stipulate: Four Alternate Jurors.
Prospective Jurors that were not reached
are thanked/excused/and directed to
report to Jury Assembly Room.
Alternate Juror(s) Sworn to try the cause.
Court instructs the jury.
Jurors are admonished and directed to return on 08/10/2020 at 9:00.
Court in recess at 12:08.
At 13:45 the following proceedings were held:
All parties previously present are again Present in Court.
Defendant Present.
Out of the Presence Of the Jury, the following proceedings were held:
Arguments and
Rulings as stated on the record.
Court has read and considered exhibits 1 & 1A..
Motion in Limine re: 911 call is called for hearing.
Court's rulings are stated on the record.
People's Exhibit 15, described as Vehicle Report CHP 180 is/are marked for
identification only.
People's Exhibit 15A, described as Vehicle Report CHP 180 is/are marked
for identification only.
Motion in Limine re: CHP Vehicle 180 Report is called for hearing.
Court's rulings are stated on the record.
Court has read and considered Peoples Brief on Admitting Defendants
Certified.
Motion by People Re defendants priors is called for hearing.
Argument by both Counsels.
Court's rulings are stated on the record.
Counsel stipulate: Proposed Stip of Facts marked as Courts exhibit 1.
Exibits that court has reviewed
are not to be admitted into evidence.
Court in recess at 15:12.
At 15:28 the following proceedings were held:
All parties previously present are again Present in Court.
Defendant Present.
Out of the Presence Of the Jury, the following proceedings were held:
Court and Counsel Confer regarding: Witness testimony exhibits 5 & 6.
Counsel stipulate: Prop Stip of Facts be marked Courts exhibit 2.
Court and Counsel Confer regarding: Jury Instructions and Verdict Forms.
Jury Trial (In-Progress) adjourned to 08/10/2020 at 9:00 Dept S202

```
Defendant to be dressed out for trial.
Defendant ordered to return on any and all future hearing dates.
- - Custody Status/Information - -
Remains remanded to custody of Riverside Sheriff.
Bail to Remain as fixed.
Minute Order printed to Southwest Detention Center
At 15:41, proceedings adjourned.
Save Minute Order to case.
MINUTE ORDER OF COURT PROCEEDING
```

Superior Court of California, County of Riverside,
www.riverside.courts.ca.gov RC
4100 MAIN ST.
Riverside, CA 92501


People of the State of California
                    Vs.                    CASE NO.   SWF1900605
            ONRE LEYVA

                           MINUTE ORDER

==============================================================

 Jury Trial In-Progress
 Date: 08/13/20      Time:   12:00 AM     Dept/Div: S202
==============================================================
Charges:  1) 459 PC, 1) 459 PC, 2) 10851(A) VC, 2) 10851(A) VC, 3) 236 PC
3) 422 PC, 4) 243(E)(1) PC, 4) 422 PC, 5) 422 PC, 5) 236 PC, 6) 422 PC, 6)
236 PC
7) 243(E)(1) PC, 8) M273A(B) PC, 999) 667(A)(1) PC, 999) 667(A)(1) PC,
999) 667(A)(1) PC
999) 667(A)(1) PC


--------------------------------------------------------------

6th Day of Trial
Stat Count: Trial
Honorable Judge Bonnie Dumanis, Presiding
Courtroom Assistant: N Baltazar
Court Reporter: O. Hutcheson
People represented by Deputy District Attorney: Kimberly Dittrich.
Defendant represented by DPD Mark Davis.
Defendant Present.
Court and Counsel Confer regarding: Unreported Final Jury Instructions.
Save Minute Order to case.
At 9:17 the following proceedings were held:
Out of the Presence Of the Jury, the following proceedings were held:
Counsel stipulate: Final Jury Instructions.
Motion by Defense Re Jury Instruction 3246 is called for hearing.
Motion/Petition denied.
Court and Counsel Confer regarding: Special Instruction Regarding
Burglary.
Save Minute Order to case.
Members of the Jury and Alternate(s) are present
Court's Exhibit Proposed Stipulation of Facts RE Value of 1998 is marked
for identification
People's witness Master Investigator Robert Cornett, is sworn and
testifies.
People's Exhibit 8, described as Domestic Violence Resources: The Cycle
is/are marked for identification only.
People's Exhibit 9, described as Power and Control chart is/are marked for
identification only.
Witness Master Investigator Robert Cornett is excused.
Subject to the admission of exhibits; People rest(s).
People's exhibit(s) 3 4 5 6 7 10 11 12 13 15 21 22 23 24 25 26 26A is/are
admitted into evidence.

People's exhibit(s) 8 9 is/are admitted into evidence.
Court's Exhibit 4 is admitted into evidence.
Jury Panel admonished.
All Jurors Are Directed to return at 11:00.
Out of the Presence Of the Jury, the following proceedings were held:
Court and Counsel Confer regarding: Defense Motion to Dismiss Per PC
1118.1.
Court and Counsel Confer regarding: Jury Instructions.
Court in recess at 10:48.
Save Minute Order to case.
Court resumes trial at 11:09.
All parties previously present are again Present in Court.
Defendant Present.
Out of the Presence Of the Jury, the following proceedings were held:
Court has read and considered Defense Motion to Dismiss Per PC Section
1118.1.
Motion by Defense Re 1118.1 PC is called for hearing.
1118. 1 Penal Code motion made by defense counsel is Denied.
Members of the Jury and Alternate(s) are present
Court instructs the jury.
Defense rest(s).
Case closed to evidence.
Court instructs the jury.
Save Minute Order to case.
Jury Panel admonished.
All Jurors Are Directed to return at 13:30.
Out of the Presence Of the Jury, the following proceedings were held:
Court and Counsel Confer regarding: Court to read Jury Instruction 303.
Defendant waives his presence for the purposes of
the Deputy to gather the Jury at the start of
breaks; readback; and questions.
Court in recess at 12:01.
Court resumes trial at 13:34.
All parties previously present are again Present in Court.
Defendant Present.
Members of the Jury and Alternate(s) are present
Closing Argument presented By DDA Kimberly Dittrich.
Closing Argument presented By DPD Mark Davis.
Closing Argument (Rebuttal) presented By DDA Kimberly Dittrich.
Court instructs the jury.
Sheriff is sworn to take charge of the jury.
Jury retires at 14:57 to commence deliberations.
Court instructs the four Alternate Jurors.
Alternate Juror(s) are directed to remain on stand by.
Alternate Jurors are thanked and exit the
courtroom.
Out of the Presence Of the Jury, the following proceedings were held:
Court and Counsel Confer regarding: Amended Verdict Forms and Jury
Instructions.
Court in recess at 15:09.
Jury Trial (Jury Deliberating) is adjourned to 08/14/2020 at 9:00 in Dept.
S202.
At 16:00 Jury leaves for the day.
Defendant to be dressed out for trial.
- - Custody Status/Information - -
Remains remanded to custody of Riverside Sheriff.

Bail to Remain as fixed.
Minute Order printed to Southwest Detention Center
Save Minute Order to case.
MINUTE ORDER OF COURT PROCEEDING

| | |
|---|---|
| 1 | STEVEN L. HARMON |
| | Public Defender |
| 2 | MARK C. DAVIS (Bar #247903) |
| | Deputy Public Defender |
| 3 | County of Riverside |
| | 30755-D Auld Road, Suite 2233 |
| 4 | Murrieta, CA 92562 |
| 5 | Attorneys for Defendant |
| | ONRE LEYVA |
| 6 | |

F I L E D

SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

AUG 1 3 2020

N. Baltazar

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF RIVERSIDE**

| | | | |
|---|---|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | ) | Case No.: SWF1900605 | |
| | ) | | |
| Plaintiff, | ) | **DEFENSE MOTION TO DISMISS PER** | |
| | ) | **PENAL CODE SECTION 1118.1** | |
| vs. | ) | | |
| ONRE LEYVA, | ) | | |
| | ) | | |
| | ) | | |
| Defendant. | ) | | |
| | ) | | |

**STATEMENT OF LAW**

"In a case tried by before a jury, the court on motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal." (Cal. Penal Code section 1118.1.)

The standard applied by a trial court in ruling upon a motion for judgment of acquittal is the same as the standard applied by an appellate court in reviewing the sufficiency of the evidence to support a conviction, that is, whether from the evidence, including all reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged. (*People v. Dement* (2011) 53 Cal. $4^{th}$ 1.)

1

**A. Count 1, Penal Code section 459 1st**

There was insufficient evidence presented to show that Mr. Leyva entered the home on Paradise Meadows with the intent to commit theft or another felony therein, which is a required element of the charge. In order to be guilty of theft, the defendant must take property without the owner's consent. Here, there is no evidence whatsoever that Mr. Leyva took property belonging to Jennifer Jimenez without the owner's consent, or that he intended to do so. In fact, the evidence shows quite clearly that Mr. Leyva was living in the home at Paradise Meadows and staying in an upstairs room for the month preceding the incident. He had personal belongings in that residence. Since there was no "owner" of the property to testify in this matter, the prosecution has failed to provide any evidence that Mr. Leyva took any items without the owner's consent, or that he intended to do so.

**B. Count 2, Vehicle Code section 10851**

There was insufficient evidence to show that Mr. Leyva took or drove the truck in question without the owner's consent, which is a required element of the charge. According to Logan Thompson, Mr. Leyva would regularly drive the truck during the time that he was staying at the residence. Since she did not testify, there is no evidence that the registered owner of the vehicle, Ms. Jimenez, did not consent to the taking of the truck. This lack of consent is a required element that the prosecution has failed to prove.

**C. Count 8, Child Endangerment**

There was insufficient evidence to show that Mr. Leyva acted with criminal negligence when he drove home with his daughter in the backseat of the car. The only percipient witness to the incident, Logan Thompson, described only minor traffic violations. In addition, there was no evidence of verbal or physical aggression directed at the minor in question.

///
///
///

2

1  Date: 8/13/20

2                                          Respectfully Submitted,

3                                          STEVEN L. HARMON
                                           Public Defender
4
5                                   by: _____
6                                          MARK C. DAVIS
                                           Deputy Public Defender
7
                                           Attorneys for Defendant
8                                          ONRE LEYVA

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    3